# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINNA CHEA, | Case No. 1:23-cv-00647-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING DEFENDANTS' MOTIONS TO DISMISS IN ALL REGARDS EXCEPT FOR RECOMMENDATION TO GRANT THE HAGEN DEFENDANTS' MOTION TO DISMISS SEVENTH CAUSE OF ACTION AS TIME-BARRED |
| v. | |
| LITE STAR ESOP COMMITTEE, et al., | |
| Defendants. | |
| | (ECF Nos. 23, 24, 25, 33, 34, 35, 36, 37, 38) |
| | **OBJECTIONS DUE IN 14 DAYS** |

## I.

## INTRODUCTION

Currently before the Court are three motions to dismiss brought by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 13.)  For the reasons explained below, the Court recommends denying the Defendants' motions to dismiss.

## II.

## BACKGROUND

Plaintiff Linna Chea filed this action on April 27, 2023.  (ECF No. 1.)  Plaintiff is a former employee of B-K Lighting, Inc. ("B-K" or the "Company") and brings this action on behalf of the Lite Star Employee Stock Ownership Plan ("ESOP" or the "Plan").  (Compl. ¶¶ 1,

3, 15.)  Plaintiff's complaint names the following Defendants: (1) B-K, as the Plan Sponsor; (2) ESOP Committee;[1] (3) Estate of Douglas W. Hagen ("Hagen Estate"); (4) Kathleen Hagen, individually ("Ms. Hagen"); (5) Kathleen Hagen, as legal successor to Douglas Hagen ("Kathleen Hagen Successor"); (6) Nathan Sloan ("Sloan"); (7) Prudent Fiduciary Services, LLC ("PFS"); and (8) Miguel Paredes ("Paredes").

Plaintiff maintains this civil enforcement action pursuant to Sections 502(a)(2) and 502 (a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3).  (Compl. ¶ 2.)  Plaintiff alleges, inter alia, that Defendants violated ERISA through the ESOP's purchase of stock from Douglas W. Hagen in December 2017 (the "ESOP Transaction"), the failure of the Plan's fiduciaries to remedy fiduciary violations in the ESOP Transaction, and the resulting loss of millions of dollars by the ESOP and its participants.  (Compl. ¶ 4.)

The first cause of action is for prohibited transaction in violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a), brought against Defendants Paredes, PFS, Hagen Estate, and Kathleen Hagen Successor.  (Compl. ¶¶ 56-69.)

The second cause of action is for prohibited transaction in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), brought against Defendants Hagen Estate, and Kathleen Hagen Successor. (Compl. ¶¶ 70-81.)

The third cause of action is for breach of fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a)(1), brought against Defendants Paredes and PFS.  (Compl. ¶ 82-91.)

The fourth cause of action is for failure to monitor in violation of ERISA §§ 404(a)(1)(A) and (B); 29 U.S.C. §§ 1104(a)(1)(A) and (B), brought against Defendants Sloan, Hagen Estate, Ms. Hagen, Kathleen Hagen Successor, B-K, and the ESOP Committee.  (Compl. ¶¶ 92-101.)

The fifth cause of action is for co-fiduciary liability under ERISA, §§ 405(a)(1) and

---

[1]  Plaintiff states B-K is the Plan Sponsor with the meaning of ERISA § 3(16)(B), § 1002(16)(B), however, states the Plan's governing instruments include conflicting information about the identity of the Plan Administrator within the meaning of ERISA § 3(16)(A), § 1002(16)(A).  (Compl. ¶ 16.)  Plaintiff proffers that alternatively, Defendant ESOP Committee is a designated Plan Administrator of the ESOP within the meaning of the ESOP within the meaning of ERISA § 3(16)(A), § 1002(16)(A); a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102; and that the ESOP Committee is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  (Compl. ¶ 17.)

(a)(3); 29 U.S.C. §§ 1105(a)(1) and (a)(3), brought against Defendants Sloan, Hagen Estate, Ms. Hagen, and Kathleen Hagen Successor.  (Compl. ¶¶ 102-106.)

The sixth cause of action is for equitable relief under ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3), brought against Defendants Sloan, Hagen Estate, Kathleen Hagen, and Kathleen Hagen Successor.  (Compl. ¶¶ 107-113.)

The seventh cause of action is for violation of ERISA § 410 & breach under ERISA §§ 404(a); 29 U.S.C. §§ 1110, 1104(a), brought against all Defendants.  (Compl. ¶¶ 114-122.)

On July 6, 2023, Defendants Paredes and PFS (the "PFS Defendants" or "Trustee Defendants") filed a motion to dismiss.  (PFS Defs.' Mot. Dismiss ("PFS Mot."), ECF No. 23.) On August 8, 2023, Plaintiff filed an opposition to the PFS Defendants' motion.  (Pl.'s Opp'n PFS Mot. ("PFS Opp'n"), ECF No. 34.)  On August 22, 2023, the PFS Defendants filed a reply. (PFS Defs.' Reply PFS Opp'n ("PFS Reply"), ECF No. 36.)

On July 6, 2023, Defendants ESOP Committee, Sloan, Ms. Hagen, Kathleen Hagen Successor, and Hagen Estate (the "Hagen Defendants"),[2] filed a motion to dismiss.  (Hagen Defs.' Mot. Dismiss ("Hagen Mot."), ECF No. 24.)   On August 8, 2023, Plaintiff filed an opposition to the Hagen Defendants' motion.  (Pl.'s Opp'n Hagen Mot. ("Hagen Opp'n"), ECF No. 35.)  On August 22, 2023, the Hagen Defendants filed a reply.  (Hagen Defs.' Reply Hagen Opp'n ("Hagen Reply"), ECF No. 38.)

On July 6, 2023, Defendant B-K filed a motion to dismiss.  (Def. B-K's Mot. Dismiss ("B-K Mot."), ECF No. 25.)  On August 8, 2023, Plaintiff filed an opposition the B-K motion to dismiss.  (Pl.'s Opp'n B-K Mot. ("B-K Opp'n"), ECF No. 33.)  On August 22, 2023, Defendant B-K filed a reply.  (B-K's Reply B-K Opp'n ("B-K Reply"), ECF No. 37.)

The Court held a hearing on October 18, 2023.  (ECF No. 42.)  Daniel Feinberg, Michelle Yau, Anne Weis, Caroline Bressman, and Ryan Wheeler appeared on behalf of Plaintiff. Chelsea McCarthy appeared on behalf of the PFS Defendants.  Mark Nebrig appeared on behalf of the Hagen Defendants.  Richard Pearl appeared on behalf of Defendant B-K.

---

[2]  The Court may also refer to the "Hagen Family Defendants" when referencing arguments regarding this group of Defendants that do not pertain to Defendant ESOP Committee.

1

## III.

2

## LEGAL STANDARD

3

### A.    Rule 12(b)(1)

4        Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to file a motion to

5 dismiss based upon lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A jurisdictional

6 attack under Rule 12(b)(1) may be either facial or factual.  Safe Air for Everyone v. Meyer, 373

7 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack challenges the allegations in the complaint,

8 asserting they are insufficient on their face to invoke federal jurisdiction.  Id.  A factual attack

9 challenges the truth of the allegations that would otherwise invoke federal jurisdiction.  Id.

10        "In [] a facial challenge to jurisdiction, the Court must presume the truth of the plaintiff's

11 factual allegations 'and draw all reasonable inferences in his favor.' "  In re Sutter Health ERISA

12 Litig., No. 1:20-CV-01007-JLT, 2023 WL 1868865, at *5 (E.D. Cal. Feb. 9, 2023) (quoting Doe

13 v. Holy, 557 F.3d 1066, 1073 (9th Cir. 2009)).  "In resolving a factual attack on jurisdiction, the

14 district court may review evidence beyond the complaint without converting the motion to

15 dismiss into a motion for summary judgment."  Safe Air, 373 F.3d at 1039; see also St. Clair v.

16 City of Chico, 880 F.2d 199, 201 (1989) ("Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1)

17 motion can attack the substance of a complaint's jurisdictional allegations despite their formal

18 sufficiency, and in so doing rely on affidavits or any other evidence properly before the court.");

19 Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009) ("A district court may "hear

20 evidence regarding jurisdiction" and "resolv[e] factual disputes where necessary." (quoting

21 Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983))).

22        "When subject matter jurisdiction is challenged under Federal Rule of Procedure

23 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."

24 Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001) (citing Stock

25 West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989)); see also Robinson v.

26 United States, 586 F.3d 683, 685 (9th Cir. 2009) (same); Castillo v. Cartier, No.

27 118CV01139LJOSAB, 2018 WL 6603864, at *2 (E.D. Cal. Dec. 17, 2018) (same).  Further, "[i]f

28 the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss

1 the action." Fed. R. Civ. P. 12(h)(3).

2      **B.**       **Rule 12(b)(6)**

3      Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

4 the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."   A

5 motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.   Navarro

6 v. Block, 250 F.3d 729, 732 (9th Cir. 2001).   In deciding a motion to dismiss, "[a]ll allegations

7 of material fact are taken as true and construed in the light most favorable to the nonmoving

8 party."   Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).   The pleading

9 standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual

10 allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me

11 accusation."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

12 Twombly, 550 U.S. 544, 555 (2007)).   In assessing the sufficiency of a complaint, all well-

13 pleaded factual allegations must be accepted as true.   Iqbal, 556 U.S. at 678-79.   However,

14 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

15 statements, do not suffice."   Id. at 678.   To avoid a dismissal under Rule 12(b)(6), a complaint

16 must plead "enough facts to state a claim to relief that is plausible on its face."   Twombly, 550

17 U.S. at 570.

18      In deciding whether a complaint states a claim, the Ninth Circuit has found that two

19 principles apply.   First, to be entitled to the presumption of truth the allegations in the complaint

20 "may not simply recite the elements of a cause of action, but must contain sufficient allegations

21 of underlying facts to give fair notice and to enable the opposing party to defend itself

22 effectively."   Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).   Second, so that it is not unfair

23 to require the defendant to be subjected to the expenses associated with discovery and continued

24 litigation, the factual allegations of the complaint, which are taken as true, must plausibly

25 suggest an entitlement to relief.   Starr, 652 F.3d at 1216.   "Dismissal is proper only where there

26 is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable

27 legal theory."   Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696,

28 699 (9th Cir.1988)).

Courts freely grant leave to amend a complaint which has been dismissed.  See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (same).

## IV.

## DISCUSSION

The PFS Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) for an order: (i) dismissing all claims because Plaintiff has not alleged any injury and therefore lacks standing; (ii) dismissing all claims against PFS because only Paredes was authorized to act as the ESOP trustee; and (iii) dismissing the first cause of action (as to the claims under 29 U.S.C. §§ 1106(a)(1)(B) and (D)), the third cause of action, and the seventh cause of action against Paredes and PFS because for failure to state a claim and satisfy minimum pleading requirements.

The Hagen Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) for an order: dismissing: (1) the fourth, fifth, sixth, and seventh causes of action against Ms. Hagen and Sloan; (2) the first, second, fourth, fifth, sixth, and seventh causes of action against Kathleen Hagen Legal Successor; (3) the fourth and seventh causes of action against the ESOP Committee; and (4) the first, second, fourth, fifth, sixth, and seventh causes of action against the Hagen Estate, for failure to state a claim and satisfy minimum pleading requirements.

Defendant B-K moves pursuant to Rule 12(b)(6) for an order of dismissal of the complaint against it with prejudice, specifically the fourth and seventh causes of action.[3]

---

[3]  B-K does devote considerable briefing discussing general principles underlying ERISA, before reaching the two pointed direct challenges underlying the motion to dismiss.  (See B-K Mot. 1-16.)  Plaintiff responds that it is telling that the "argument" section of the motion consists of only four pages; the rest of the brief is padded with irrelevant material.  In reply, B-K states: Plaintiff does not contest that her claims against B-K are derivative, and additionally that B-K adopts arguments made by all co-defendants in their separately filed motions to dismiss and related briefs.  (B-K Reply 2 n.1.)  Thus, while the Court directly discusses the two pointed challenges in B-K's motion in separate sections below, to the extent B-K has adopted arguments contained in the other Defendants' motions to dismiss, such arguments should be rejected based on the recommendations as to those motions.  However, the Court does recommend granting Defendant Hagen's motion to dismiss the seventh cause of action as time-barred, and additionally recommends that if the District Judge declines to adopt that recommendation, B-K's motion to dismiss the seventh cause of action should be denied.

**A.    The Court Recommends Denying the Defendants' Motions to Dismiss that Challenge the Complaint for Lack of Standing**

The PFS Defendants and Hagen Defendants move for dismissal based on lack of standing.  (Hagen Mot. 11-13; PFS Mot. 11-13.)[4]  B-K only passingly mentions Plaintiff does not have standing to bring other types of claims and thus chose to bring certain claims against B-K, but does not appear to bring a direct constitutional standing challenge  (See B-K Mot. 7, 16-20.)

1.    General Legal Standards

"[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); see also Spokeo, Inc. v. Robins, 578 U.S. 330, 338, (2016) (affirming "[o]ur cases have established" these three elements).  "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not conjectural or hypothetical.' " 504 U.S. at 560 (citations omitted).  "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' " Id. at 560-61 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41–42 (1976)).  "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Id. at 51 (quoting Simon, 426 U.S. at 38, 43).

"Plaintiffs bear the burden of establishing each of the three "irreducible" elements of Article III standing." Winsor v. Sequoia Benefits & Ins. Servs., LLC, 62 F.4th 517, 523 (9th Cir. 2023) (citations omitted).  "At the pleading stage, plaintiffs must 'clearly ... allege facts

---

[4]  As a preliminary issue, Plaintiff focuses some attention in briefing on whether Defendants are, through their arguments, wrongly suggesting that she must present evidence, such as declarations and testimony, to establish subject matter jurisdiction, and thus whether they mount a facial or factual 12(b)(1) challenge.  Plaintiff proffers that if the Court treats the PFS Defendants' motion as a factual attack and conducts an evidentiary hearing, Plaintiff requests the opportunity for jurisdictional discovery, including production of the valuation and due diligence reports, a copy of the transaction binder, copies of any agreements between the Company and the Hagen Defendants or their investment companies (e.g., relating to the purchase or leasing of airplanes), and the life insurance policy for Douglas Hagen.  In reply, PFS Defendants confirm they are not demanding Plaintiff submit evidence, but emphasize that although reasonable inferences are drawn in Plaintiff's favor on a motion to dismiss, Plaintiff is not relieved of her burden to allege an injury in fact.  (PFS Reply 6.)

1  demonstrating each element.' " Winsor, 62 F.4th at 523 (quoting Spokeo, 578 U.S. at 338).

2  The Supreme Court has held that meeting the elements of a statutory cause of action

3  under ERISA, standing alone, does not constitute an injury for purposes of Article III standing.

4  See Thole v. U.S. Bank N.A., 140 S. Ct. 1615, 1620 (2020).  In the ERISA context generally,

5  "[t]hough the Ninth Circuit has not addressed the issue directly, other courts have found that

6  plaintiffs bringing claims regarding underperforming funds can demonstrate the requisite injury

7  where they either (i) invested in *at least one* of the challenged funds or (ii) challenge a 'plan-

8  wide' decision-making process that injures all plan participants."  In re Sutter Health ERISA

9  Litig., No. 1:20-CV-01007-JLT, 2023 WL 1868865, at *5 (E.D. Cal. Feb. 9, 2023) (citations

10  omitted).  Winsor is a recent Ninth Circuit decision finding a lack of standing in the ERISA

11  context, wherein, the attenuated nature of the connection between the plan and the named

12  defendant impacted the foundation of the standing analysis.  See Winsor, 62 F.4th at 523 ("In

13  many ERISA cases, the plaintiffs are suing the ERISA plan itself or their employer, parties who

14  have a direct role in designing and administering the plan [however] [t]his case is less typical

15  because the plaintiffs are leapfrogging the RingCentral plan and seeking to recover directly from

16  Sequoia, a management and insurance brokerage company that is a step removed from the

17  contributions plaintiffs pay and the benefits they receive [and] this structural feature . . .

18  contributes to plaintiffs' failure to sufficiently allege Article III standing.").

19  2.  Defendants' Primary Arguments

20  Related to the principle underlying Thole, PFS Defendants argue Plaintiff "cannot claim

21  that either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of her

22  entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for

23  constitutional standing."  Draney v. Westco Chemicals, Inc., No. 219CV01405ODWAGRX,

24  2019 WL 6465510, at *3 (C.D. Cal. Dec. 2, 2019) (quoting Slack v. Int'l Union of Operating

25  Engineers, No. 13-cv-5001 EMC, 2014 WL 4090383, at *13 (N.D. Cal. Aug. 19, 2014)).  Thus,

26  Plaintiff must "allege some injury or deprivation of a specific right that arose from a violation of

27  that duty in order to meet the injury-in-fact requirement."  Id.; Anderson v. Intel Corp., 19-CV-

28  04618- LHK, 2021 WL 229235, at *14 (N.D. Cal. Jan. 21, 2021) ("Plaintiffs cite [cases] for the

1   proposition that ERISA provides statutory standing for certain violations, even absent an alleged
2   injury traceable to the ERISA violation . . . [a]s Defendants point out, however, the United States
3   Supreme Court's recent decision in [Thole] clarified that statutory standing under ERISA does
4   not absolve a plaintiff of the requirement to demonstrate Article III standing.") (citations
5   omitted).

6          PFS Defendants contend that while Plaintiff references various reasons why she believes
7   the valuation of B-K Lighting was inaccurate, she fails to substantiate her conclusory allegation
8   that various events referenced in the complaint were not taken into account in the valuation of
9   the Company such that the transaction price would be impacted, and Plaintiff has not seen the
10  valuation and thus, has no knowledge of its contents.  (PFS Mot. 11-12.)  While Plaintiff's
11  complaint alleges that she is likely to obtain evidence that the due diligence for the ESOP
12  Transaction was not adequate, (Compl. ¶ 46), PFS Defendants argue such a conclusory allegation
13  is not sufficient to confer standing.  (PFS Mot. 12, citing, e.g., Plutzer on behalf of Tharanco
14  Grp., Inc. Emp. Stock Ownership Plan v. Bankers Tr. Co. of S. Dakota, No. 1:21-CV-3632
15  (MKV), 2022 WL 596356 (S.D.N.Y. Feb. 28, 2022) ("Plutzer I"), aff'd sub nom. Plutzer on
16  behalf of Tharanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota, No. 22-561-CV, 2022 WL
17  17086483 (2d Cir. Nov. 21, 2022) ("Plutzer II"); Draney, 2019 WL 6465510, at *3; Anderson,
18  2021 WL 229235, at *14.  PFS Defendants submit that Plaintiff has not alleged any injury at all;
19  that Plaintiff has not alleged any facts to support an inference that she has been injured or how
20  the alleged business issues B-K faced *caused* the ESOP to overpay for B-K's stock, thereby
21  causing any such injury; and only alleges that certain business issues existed and, therefore, the
22  ESOP must have overpaid.

23         The Hagen Defendants argue Plaintiff not only fails her threshold showing of injury in
24  fact, but also fails to adequately connect any injury to the alleged violations by any Defendant;
25  and instead, relies solely on conclusory statements of overpayment by the ESOP and fiduciary
26  breaches by the Defendants with the hope that discovery will reveal an actual claim.  (Hagen
27  Mot. 11-13, citing, e.g., Lee v. Argent Tr. Co., No. 5:19-CV-156-BO, 2019 WL 3729721, at *3–
28  4 (E.D.N.C. Aug. 7, 2019); Plutzer I, 2022 WL 596356; Plutzer II, 2022 WL 17086483.

1        3.        The Court Recommends Denying the Motions to Dismiss Challenging Standing

2        Based on the allegations here and review of all of the caselaw provided to the Court, the

3 Court finds in favor of Plaintiff and recommends denying the motions to dismiss to the extent

4 they are based on standing challenges.  While both sides rely on cases out of the Ninth Circuit,

5 the Court finds in greater accord with Plaintiff that many of the cases relied on by Defendants are

6 distinguishable in the standing analysis and not highly persuasive to the type of allegations here,

7 as other courts have found.  The allegations here are more closely aligned with cases where

8 courts found the allegations sufficient.  Although the Court has concerns of where to draw line,

9 in that some of the allegations here border on allegations that could be commonly levied against

10 any company, and recognizing Plaintiff has the burden to prove standing but taking the

11 allegations as true and drawing all reasonable inferences in favor of Plaintiff, the allegations

12 sufficiently state a concrete injury traceable to the Defendants that is redressable by a favorable

13 decision.  See In re Sutter Health ERISA Litig., 2023 WL 1868865, at *5 ("In [] a facial

14 challenge to jurisdiction, the Court must presume the truth of the plaintiff's factual allegations

15 'and draw all reasonable inferences in his favor.' " (quoting Doe v. Holy, 557 F.3d at 1073));

16 Kong v. Trader Joe's Co., No. 20-56415, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022)

17 ("Taking the allegations as true, as we must at this stage of the litigation . . . Defendants'

18 explanation for the more expensive choice is unavailing at the pleading stage.").

19        Specifically, Plaintiff alleges because the price was inflated because the Trustee

20 Defendants failed to account for specific problems with the Company, relied on inflated

21 projections of future profitability, caused the ESOP to buy a Company when the ESOP would

22 not actually control it, failed to conduct adequate due diligence, and that Plaintiff and other

23 ESOP participants suffered a resultant economic loss.  (See Compl. ¶¶ 23-35.)  For example,

24 Plaintiff alleges the ESOP Transaction price was based on financial projections that were

25 unrealistic because they did not account for, *inter alia*, the Company's declining sales and failure

26 to adapt its operations to technology changes in the lighting industry, inexperienced

27 management, and turnover among management and sales team members.  (Compl. ¶¶ 24–25, 27,

28 29–30.)  The Complaint further identifies financial reporting problems, such as the fact that

1  unsold obsolete products were included on the Company's financial statements as "valuable"

2  inventory worth hundreds of thousands of dollars right before the ESOP Transaction.  (Compl. ¶

3  31.)

4          While Defendants argue there are "no facts to support her claim that the ESOP paid a

5  control premium without actually getting control," (PFS Mot 13), the Court finds, at this stage,

6  sufficient factual allegations in that Plaintiff alleges the Hagen Defendants kept control of the

7  Company, as shown by (i) their purchase of a second corporate plane used almost exclusively for

8  their personal travel; (ii) their hiring of a full-time pilot on the Company's dime, again used

9  primarily for their personal travel; (iii) the Company's payments to Mr. Hagen for a "no-work"

10 consulting agreement entered into the day after the ESOP Transaction closed; and (iv) the

11 Company's willingness to continue a leasing agreement which paid Mr. Hagen's children for the

12 Company to lease a forklift that did not exist.  (Compl. ¶¶ 32-35.)

13         Having set forth the factual allegations and primary arguments regarding such, the Court

14 now turns to discuss the various caselaw cited by the parties, and which the Court determines

15 supports Plaintiff overall as to the standing challenges.

16         PFS Defendants argue the Second Circuit's decision in Plutzer is rightly applicable to the

17 allegations here, framing the decision as reasoning the post-transaction stock values did not

18 support any injury, that Plutzer failed to allege any facts suggesting the ESOP actually paid a

19 control premium, and that allegations about the trustee's reliance on unreasonable financial

20 projections, inappropriate valuation methods, and insufficient due diligence did not state an

21 overpayment injury because they were speculative and conclusory.  (PFS Mot. 12-13, citing

22 Plutzer II, 2022 WL 17086483, at *2.)  While Defendants are correct the complaint here does

23 note that discovery would provide evidentiary support for the allegations (Compl. ¶¶ 1, 46), the

24 trial court in Plutzer focused on the conceded need for discovery in a specific manner

25 distinguishable from here.  While Plutzer averred discovery would be helpful in supporting the

26 claims based on valuation fluctuations, the plaintiff essentially stated the publicly available

27 valuations that would be produced in discovery were not reliable and thus would not have

28 ultimately supported the plaintiff's allegations even if provided.  Plutzer I, 2022 WL 596356, at

*6 ("As to any actual harm, Plaintiff here has walked back any contention that any of the values he cites for Tharanco stock actually reflect the value of the stock, and rests solely on his belief that pleading the elements of an ERISA claim are sufficient [. . .] [i]f the values are unreliable, and in any event professedly *unneeded*, Plaintiff has not alleged a concrete injury.").

Specifically, the trial court stated that while "[a]t this stage, Plaintiff contends he needs discovery in essence to generate standing," "it [was] unclear why discovery should be necessary to make a threshold showing of injury [as] [p]laintiff snubs the 'valuations' of the Tharanco stock as it is listed in the Plan's 'Form 5500' each year [ . . . ] [which as] [p]laintiff acknowledge[d], that document is *publicly filed* and 'reported to the Department of Labor.' " Id. (emphasis in original).  The trial court found it significant that plaintiff did "not include the Form 5500s as exhibits to his Complaint or ask the Court to take judicial notice of them [but] [i]nstead, he declines to use publicly available documents that might underscore any allegation that the value of the Plan has dropped year-over-year, instead declaring them inaccurate and unnecessary for his claims." Id. ("Without a showing that any harm flowed from the transaction, the Court cannot conclude that Plaintiff has suffered a constitutionally cognizable injury.").  The trial court stated that: "It defies credulity, and bedrock constitutional principles, that Congress could sidestep Article III in providing an individual right to sue for a violation of ERISA simply because a company engaged in an ESOP transaction." Plutzer, 2022 WL 596356, at *5.

The decision was affirmed by the Second Circuit, which similarly found Plutzer's disavowal of the arguments based on the public valuations significant.  The Court finds this central aspect of the Plutzer decisions distinguishable from the overall allegations here.  See Plutzer II, 2022 WL 17086483, at *2 ("In defense of his complaint, Plutzer points to three sets of allegations[:] [f]irst, he contends that the post-transaction equity valuations of Tharanco, published in the Plan's Annual Returns (known as Form 5500s), support an inference that the Plan overpaid for the company . . . [however,] [c]ontrary to Plutzer's contention, these post-Transaction values lend no factual support to Plutzer's theory of injury [and] Plutzer has expressly disavowed any argument that the 2015 valuation gives rise to an inference of overpayment.").

1    The Court further finds there are more plausible factual allegations here based on the

2    valuation at purchase, than in Plutzer.  For example, while Plutzer argued "that his overpayment

3    allegation is supported by an allegation that the Plan paid a 'control premium' for Tharanco,

4    even though it did not initially obtain control over the company," the Second Circuit stated "[b]ut

5    Plutzer does not allege any facts suggesting that the Plan actually paid a control premium; all he

6    actually alleges is that the Plan did not obtain control over Tharanco[,] . . . so his allegation

7    regarding a control premium amounts to little more than a rephrasing of his conclusory allegation

8    that the Plan overpaid for the company."   2022 WL 17086483, at *2.   Additionally, the

9    allegations regarding unreasonable financial projections, inappropriate valuation methods, and

10   insufficient diligence, that the Second Circuit found speculative and conclusory, overall were

11   vague and conclusory to an extent distinguishable from the allegations here.  See Plutzer II, 2022

12   WL 17086483, at *2 ("[T]hese allegations do not adequately state an overpayment injury

13   because they are speculative and conclusory [as] Plutzer provides only a generic list of potential

14   valuation errors, failing to specify what errors the company actually committed . . . alleging that,

15   in addition to conducting insufficient due diligence, Banker's Trust erred in its 'reliance on

16   unrealistic growth projections, unreliable or out-of-date financials, improper discount rates,

17   inappropriate comparable companies, and/or its failure to test assumptions, failure to question or

18   challenge underlying assumptions, and/or other factors.").   While the Court again states it

19   maintains some concerns that some of the allegations are somewhat generalized, at this stage,

20   there are enough sufficiently specific and detailed enough allegations to establish standing.  The

21   allegations here are more specifically tailored to the company here than the cited generalized

22   allegations in Plutzer II.  See id.

23        In Anderson, the court held those plaintiffs failed to allege an injury-in-fact because they

24   did not actually claim to have read or relied upon any of the documents regarding 401k plan

25   investments that the complaint alleged were defective, nor alleged they had been injured as a

26   result of such reliance on the documents.  Anderson, 2021 WL 229235, at *13–14 (finding

27   allegation "insufficient to plausibly allege an injury-in-fact that is traceable to Defendants'

28   conduct because Plaintiffs do not allege that Plaintiffs read any of the allegedly defective

1   documents or relied upon those documents [and] [a]bsent allegations that Plaintiffs read or relied

2   upon the allegedly defective documents, Plaintiffs have failed to allege an injury-in-fact that is

3   traceable to Defendants' conduct.").   The Court therefore essentially finds the analysis and

4   reasoning in Anderson confined to the type of allegations, and specific deficiencies in the

5   complaint as to those type of allegations pertaining to specifically alleged deficient documents.

6        Plaintiff argues that in, Draney, the plaintiff alleged he was not given any information

7   about the retirement plans when he retired, but the complaint was "utterly silent as to what

8   injuries-in-fact he suffered."   2019 WL 6465510, at *4.   To be clear, there were multiple

9   plaintiffs with somewhat different allegations that the court found to be deficient:

> [I]t is alleged that Ibarra questioned Steven about his retirement
> accounts and the plans, however, Steven rebuffed Ibarra . . .
> Accordingly, Plaintiffs assert that Ibarra was denied his benefits
> according to the Defined Benefit Plan . . . It is also alleged that
> "[w]hen [Ibarra] retired he was not given any information about
> the Plans or his account status in the Plans," effectively denying
> Plaintiff Ibarra even the knowledge of or the means to apply for the
> Defined Benefit Plan . . . However, as to Plaintiff Draney the FAC
> is utterly silent as to what injuries-in-fact he suffered . . . The FAC
> merely states "[o]n multiple occasions, Plaintiff Draney requested
> a copy of the Plan document but such a document was never
> provided to Plaintiff by Defendants."

17  Draney, 2019 WL 6465510, at *4.   As to both those plaintiffs, the court found the complaint

18  failed to meet the applicable "clear-notice standard," because it did "not allege adequate facts to

19  demonstrate that Ibarra or Draney provided clear-notice to Defendants, instead the FAC only

20  ma[de] vague and abstract allegations of denial of benefits."   Id. ("Under the clear-notice

21  standard, claimants seeking documents pursuant to [section] 1024(b)(4) must provide clear

22  notice to the plan administrator of the information they desire." (quoting Michael v. La Jolla

23  Learning Inst., Inc., No. 17-CV-934 JLS (MDD), 2019 WL 4747658, at *6 (S.D. Cal. Sept. 30,

24  2019))).   Because they did not allege providing clear notice of the requested information on

25  retirement benefits, the court thus found they "failed to adequately plead an injury-in-fact."   Id.

26  The Court does not find Draney convincing as to the types of allegations here, given the clear-

27  notice standard that was required to have been met as to establish an injury-in fact, and the direct

28  failure to plead such specific requirement.

Turning to Lee, aside from the specific type of valuation allegations and analysis being different there, the court there based its standing decision on the straightforward determination that, based on Plaintiff's own allegations, "[p]ut simply, Choate's December 2016 transaction did not injure her; it benefited her." Lee, 2019 WL 3729721, at *3–4 ("As the Choate ESOP actually purchased the 8 million shares in 2016 at a discount, and an immediate equitable benefit inured to the Choate ESOP and its members, plaintiff has not plausibly alleged that she suffered any concrete and particularized injury . . . Plaintiff's mere allegation, contradicted by her own complaint, that the Choate ESOP overpaid for Choate shares is insufficient to support Article III standing in this case.").

To reach this straightforward determination of a benefit, the Lee court employed an analysis that compared the ESOP transaction there, which financed the stock transfer through a loan, to a mortgage. The Court reproduces much of the discussion given its reasoning is important to other cases relied on by the parties:

> On the basis of that appraisal, Choate and the Choate ESOP (through Argent) agreed on a purchase price of $198 million. But the members of the Choate ESOP—Choate's employees—quite reasonably did not have $198 million in cash. Instead, the Choate ESOP effectively took on $198 million in debt to finance the purchase. First, Choate borrowed $57 million from a bank, and then loaned the $57 million to the Choate ESOP. Second, the Choate ESOP issued $141 million in notes to the selling shareholders. Then, a few weeks later, the Choate ESOP's 8 million shares were valued at $64.8 million. Plaintiff has divided the $198 million purchase price by 8 million shares and arrived at an initial share value of $24.75. [DE 1, ¶ 52]. Plaintiff reasons that, on the basis of the $64.8 million valuation a few weeks later, the per-share value dropped to $8.10 in such a short period of time that the first purchase could not have been at fair-market value.

> But it is better to conceive of this transaction, as defendants have argued, as being comparable to the purchase of a mortgage-financed house. Suppose that a buyer finds a house that is listed at $198,000. The buyer has no money for a down payment, however, so she obtains a $198,000 mortgage loan in order to buy the house. The buyer has taken on a $198,000 debt (the mortgage) and, in return, obtained a $198,000 asset (the home). As a result, she has experienced no change in equity; her asset and her corresponding obligation result in $0 in new equity. But now suppose that the $198,000 house is actually worth $262,800, and our buyer was able to purchase the house at a discount. She still has her $198,000 mortgage, but now she also has $64,800 in equity; if she were to turn around and sell the house at its $262,800 value, after paying

off her mortgage, she would be left with a tidy profit of $64,800.

Like the hypothetical buyer, the Choate ESOP obtained its 8 million shares of Choate at a discount. The purchase price was $198 million and the Choate ESOP took on $198 million in debt to obtain the stock. The expected value of the Choate ESOP's shares—at least in the short term—would be $0. Instead, the $64.8 million valuation at the end of December 2016 reflects the fact that the Choate ESOP, like the hypothetical buyer, realized an immediate equitable benefit. That benefit has only grown since, as the Choate ESOP's value was pegged at $107.2 million by the end of 2017. [DE 31-3, p. 25]. In other words, the Choate ESOP actually bought the 8 million Choate shares in December 2016 at a discount (or the shares actually *appreciated* in value, approximately 33%, in less than a month).

As the Choate ESOP actually purchased the 8 million shares in 2016 at a discount, and an immediate equitable benefit inured to the Choate ESOP and its members, plaintiff has not plausibly alleged that she suffered any concrete and particularized injury.

Lee, 2019 WL 3729721, at *3–4.

However, the Court does not find the analogy employed in Lee to be properly applied to the allegations here, and generally agrees with courts that have found the application of the analogy problematic.  See Placht on behalf of Symbria Inc. Emp. Stock Ownership Plan v. Argent Tr. Co., No. 21 C 5783, 2022 WL 3226809, at *3 (N.D. Ill. Aug. 10, 2022) ("The Lee court did not explain the consequences of a negative post-sale house valuation, and a purchase of privately held stock in any event differs from that of a home in material respects."); Laidig v. GreatBanc Tr. Co., No. 22-CV-1296, 2023 WL 1319624, at *6 (N.D. Ill. Jan. 31, 2023) ("[A]s another court in this district recognized in distinguishing Lee and Plutzer, the Lee court's analogy to real estate deals is flawed: 'Unlike real estate, for which valuation estimations are widely publicly available and mortgages are secured by outside providers, privately held stock valuations typically are not public, and the transaction is financed by parties to the transaction.' " (quoting Placht, 2022 WL 3226809, at *3)).  Instead, "[i]n the context of a privately held stock sale, there 'is no objective price of the stock to serve as a baseline [and] [r]ather than the price of the stock being set by the wisdom of the crowd, the price is simply what the buyer ultimately pays.' "  Id. (quoting Zavala v. Kruse-W., Inc., 398 F. Supp. 3d 731, 745 (E.D. Cal. 2019) ("Zavala I")).  Thus, "[i]t follows that ESOP transactions like the one at issue here are more

1   susceptible to overvaluation and manipulation, resulting in harm to Plan participants."  Laidig,

2   2023 WL 1319624, at *6.

3         The Court thus finds the Lee analysis not persuasive in this regard.  See Lloyd v. Argent

4   Tr. Co., No. 22CV4129 (DLC), 2022 WL 17542071, at *2 (S.D.N.Y. Dec. 6, 2022) (finding

5   Plutzer and Lee as "easily distinguished" because "[i]n both cases, the only damage alleged was

6   the decline in the stock's value immediately after the plan took on debt to purchase it . . . by

7   contrast, the FAC pleads a number of other facts to support its allegation of damages[,] [f]or

8   example, the plaintiffs allege that the purchase price of WBBQ stock was greater than its market

9   price was even before it took on the debt, and that the Seller Loan was offered at an

10  unreasonably high interest rate." (citations omitted)); Placht, 2022 WL 3226809, at *3 ("The Lee

11  court did not explain the consequences of a negative post-sale house valuation, and a purchase of

12  privately held stock in any event differs from that of a home in material respects."); Laidig, 2023

13  WL 1319624, at *5–6 ("Plaintiffs have pled concrete financial harm to their shares in the Plan as

14  a result of the company's inflated sale price . . . [t]his alleged monetary harm readily qualifies as

15  a concrete injury." (citations omitted)).[5]

16        Unlike in Lee and Plutzer where the plaintiffs asked the court to presume injury from the

17  decline in stock value immediately following the ESOP purchase, Plaintiff here does not ask to

18  infer injury based on a post-transaction decline in value, but rather mounts specific allegations

19  about why the ESOP overpaid for the Company, including, *inter alia*, inexperienced

20

21  [5]  The Laidig and Placht courts also rejected reliance on out of circuit decisions based on the standard for standing in
    the Seventh Circuit.  Laidig, 2023 WL 1319624, at *5 ("First, the Seventh Circuit emphasizes that at 'the pleading

22  stage, general factual allegations of [Article III] injury resulting from the defendant's conduct may suffice, for on a
    motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the
    claim[,]' [and] . . . [i]njury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery . .

23  . [g][iven this liberal pleading standard in the Seventh Circuit, this Court cannot find the absence of a concrete
    injury, where Plaintiffs expressly plead pecuniary harm resulting from the overvaluation of the company." (citations

24  omitted)); Placht, 2022 WL 3226809, at *3 ("The Court declines to follow Lee for two reasons[,] [f]irst, the Seventh
    Circuit has rebuffed similar arguments at the pleading stage, because '[i]njury-in-fact for standing purposes is not

25  the same thing as the ultimate measure of recovery.' " (citation omitted)).  The Court notes the language regarding
    embracing specific facts, is utilized in the Ninth Circuit as stemming from the Supreme Court.  See Maya v. Centex

26  Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) ("At the pleading stage, general factual allegations of injury resulting
    from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace

27  those specific facts that are necessary to support the claim." (quoting Lujan, 504 U.S. at 561)).  However, the Court
    has not found discussion in the Ninth Circuit of the statement injury-in-fact for standing purposes is not the same

28  thing as the ultimate measure of recovery.  Nonetheless, this recognized pleading standard supports finding adequate
    allegations to establish standing here.  See Maya, 658 F.3d at 1068.

management, inaccurate financial reporting, declining sales, out-of-date products, and operational problems, as summarized above.   In addition to that distinction, the Court additionally finds the allegations and reasoning in Laidig, Lloyd, and other cases cited herein, more applicable than Lee and Plutzer.   See Laidig, 2023 WL 1319624, at *6 (finding "more allegations than in the Lee and Plutzer complaints, where the plaintiffs asked the court to presume injury from the mere decline in stock value immediately following the purchase," as the "allegations lend plausibility to their overvaluation theory," in that they "allege that as early as 2012, Berkshire faced challenges finding a buyer to pay its asking price for Vi-Jon of $400 million, due to the company's high debt load and lack of pricing flexibility, which Moody's recognized in 2014 when it downgraded Vi-Jon's credit rating [and] additionally allege that Defendants ignored the reality that, when finalizing the ESOP Transaction, Vi-Jon's surge in profits during the early part of the pandemic was temporary and that multiple publicly available articles and studies put Defendants on notice that they should have expected a lower demand for hand sanitizer after the first few months of the pandemic."); see also Lloyd, 2022 WL 17542071, at *1 ("The plaintiffs allege that Argent's valuation process was flawed . . . allege that Argent inappropriately relied on financial projections from the Seller Defendants, who had a personal stake in inflating them, and that Argent failed to anticipate foreseeable financial headwinds in the form of rising labor and property costs . . . allege that the WBBQ shares were overvalued because the Seller Defendants had warrants allowing them to generate more shares, thereby diluting the value of existing ones[,] [a]nd the plaintiffs allege that the Seller Loan's higher interest rate made no sense, as those loans were guaranteed by WBBQ.").

PFS Defendants reply Plaintiff fails to allege how the price was too much, even considering the business problems Plaintiff alleges B-K faced, as for example, Plaintiff does not allege that the transaction should not have occurred at all, it should not have occurred for any price above a certain dollar amount, or that the transaction should only have occurred at some other price, and without such allegations, Defendants argue, Plaintiff has failed to plead she suffered an injury in fact caused by Defendants' alleged conduct.   (PFS Reply 8.)

While the Court does find some merit to the argument the complaint does not sufficiently

1    allege the Trustee Defendants did not adequately account for these factors or consider such in the

2    valuation report, and while Defendants emphasize Plaintiff has not seen the valuation report

3    opinion relied on for the ESOP Transaction, Plaintiff is correct that courts adjudicating ESOP

4    cases have rejected the argument that an ERISA plaintiff must plead specifics about how the

5    Plan's fiduciaries operated behind closed doors, recognizing that "ERISA plaintiffs generally

6    lack the inside information necessary to make out their claims in detail unless and until discovery

7    commences." Allen v. GreatBanc Tr. Co., 835 F.3d 670, 678 (7th Cir. 2016) (agreeing with the

8    Eighth Circuit that "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead

9    details to which she has no access, as long as the facts alleged tell a plausible story." (quoting

10   Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009))).  The Court maintains

11   concerns that these are the type of allegations that could be levied against many small businesses

12   or family companies that may engage an ESOP, however, there are sufficient factual allegations

13   to tell a plausible story at this stage.  Allen, 835 F.3d at 678–79 (plaintiffs adequately "alleged

14   that the stock value dropped dramatically after the sale (implying that the sale price was

15   inflated), that the loan came from the employer-seller rather than from an outside entity

16   (indicating that outside funding was not available), and that the interest rate was uncommonly

17   high (implying that the sale was risky, or that the shareholders executed the deal in order to

18   siphon money from the Plan to themselves) [ . . .] facts [that] support an inference that

19   GreatBanc breached its fiduciary duty, either by failing to conduct an adequate inquiry into the

20   proper valuation of the shares or by intentionally facilitating an improper transaction.").

21        While Plaintiff relies on cases that distinguish or decline to follow Lee or Plutzer,

22   Defendants reply that in each of the cases Plaintiff cites, the underlying plaintiff had alleged facts

23   to support that there had been an overpayment in light of the facts alleged.  See Gamino, 2021

24   WL 162643, at *2 (alleging transaction occurred at a price between 891% and 1,484% of the

25   value implied by the price the company's predecessor traded on the market); Placht, 2022 WL

26   3226809, at *3 (alleging stock significantly dropped in value after the stock purchase transaction

27   as a result of defendants' misconduct).

28        The Court acknowledges the allegations in Gamino allowed for relation to specific

valuation numbers relating to a decline in value and an industry publication.  2021 WL 162643, at *2 ("[C]omplaint alleges that 2015 transaction's price was exorbitant and the product of a lack of prudent investigation because it failed to 'take into account the fact that less than two years before the transaction the selling shareholder had valued the Company at less than a quarter of the sale price[,]' [and . . . ] [t]he 2015 transaction allegedly occurred at a price that was 'between 891% and 1,484%' of the value "implied by the prices at which Integrated Health [KPC Healthcare's predecessor] traded on the public market in early 2013.' ").  However, the <u>Gamino</u> court, relied on <u>Zavala I</u>, for its denial of a "motion to dismiss where complaint contained allegations that a 'prudent investigation would have concluded that ESOP was paying more than fair market value' for stock because price failed to account for business and liability problems within the company."  <u>Gamino</u>, 2021 WL 162643, at *2 (quoting <u>Zavala I</u>, 398 F. Supp. 3d at 746).

While Defendants argue that <u>Gamino</u> and <u>Placht</u> plaintiffs had alleged underlying facts to support there had been an overpayment that are not sufficient here, the Court finds the allegations and decisions in <u>Placht</u>, discussed above, and <u>Gamino</u>,[6] overall favor Plaintiff's allegations being sufficient here.  Overall, in accord with the allegations here, the complaint in <u>Gamino</u> contained various allegations pertaining to the purchase value not taking into account a number of alleged problems with the company and the transaction.  2021 WL 162643, at *2 ("The complaint goes on to allege that the company's value was unlikely to have improved to the 2015 transaction price because 'during the intervening period the Company had experienced substantial financial distress, instability, layoffs, and persistent inability to make budgets[,]' . . . [that] [b]etween 2013 and 2015, the Company's performance was allegedly characterized by 'financial difficulties and related layoffs[,]' [and] [t]he complaint also notes an industry publication's interview of KPC Healthcare's former CEO, who stated the Company was 'not even close to making budget' in that intervening time.").

Again, while the Court accepts Defendants' concerns and arguments that the complaint

---

[6]  The Court notes that Gamino did not discuss a standing challenge in the opinion, but rather the opinion was based on Rule 12(b)(6).  <u>Gamino</u>, 2021 WL 162643, at *2.

1   inadequately alleges information concerning the due diligence and valuation process by the
2   trustee, a similar argument was considered in <u>Gamino</u>.  2021 WL 162643, at *2 ("Defendant
3   Alerus argues that the complaint is faulty because 'Plaintiff offers no information concerning
4   Alerus's due diligence process whatsoever, much less factual allegations from which this Court
5   could infer it was deficient in some respect.' ").  Ultimately, like <u>Gamino</u>, the Court finds the
6   allegations are sufficient when considered as a whole and taken as true.  <u>Gamino</u>, 2021 WL
7   162643, at *2 ("Taken together, these allegations are sufficient to allege a claim for breach of
8   fiduciary duty due to a lack of prudent investigation.").  The Court finds in accord with <u>Gamino</u>
9   and others, based on the overall factual allegations contained in the complaint here, that "such
10  facts detailing the investigative process are likely within the sole control of the trustee and other
11  ERISA defendants and, consequently, 'an ERISA plaintiff alleging breach of fiduciary duty does
12  not need to plead details to which she has no access.' "  <u>Gamino</u>, 2021 WL 162643, at *2
13  ("Rather it is enough to allege facts—as the complaint does—which 'support an inference' that
14  the defendant 'fail[ed] to conduct an adequate inquiry.' " (quoting <u>Allen</u>, 835 F.3d at 678; citing
15  <u>Zavala I</u>, 398 F.Supp.3d at 745-46)).

16          Finally, as Plaintiff highlights, the ESOP here is "an ERISA-protected, defined
17  contribution plan under which the employer makes contributions on behalf of employee-
18  participants and the contributions are invested in the employer's stock."  <u>Harrison v. Envision</u>
19  <u>Mgmt. Holding, Inc. Bd. of Directors</u>, 59 F.4th 1090, 1094 (10th Cir. 2023).  Thus, as noted in
20  <u>Thole</u>, in cases involving defined contribution plans, "the ultimate amount of money received by
21  the beneficiaries will typically depend on how well the trust is managed, so every penny of gain
22  or loss is at the beneficiaries' risk."  <u>Thole</u>, 140 S. Ct. at 1619 ("[T]he participants in a defined-
23  benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants
24  in a defined-contribution plan . . . [i]n the private trust context, the value of the trust property and
25  the ultimate amount of money received by the beneficiaries will typically depend on how well
26  the trust is managed, so every penny of gain or loss is at the beneficiaries' risk.").[7]

27  _____

28  [7] "By contrast, a defined-benefit plan is more in the nature of a contract.  The plan participants' benefits are fixed
    and will not change, regardless of how well or poorly the plan is managed . . . The trust-law analogy therefore does

Here, Plaintiff argues " 'the loss [] to the plan' is the amount that the ESOP overpaid for [Company] stock [and] [c]onsequently, the losses suffered by the participants in the ESOP are coterminous with those of the plan." Perez v. Bruister, 823 F.3d 250, 258 (5th Cir. 2016). Thus, "[i]n the context of ERISA claims regarding defined contribution plans, plaintiffs can establish Article III standing by pleading injury to their own plan account." In re Sutter Health ERISA Litig., 2023 WL 1868865, at *5 (citing In re LinkedIn ERISA Litig., No. 5:20-CV-05704-EJD, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021)). These holdings reinforce the Court's findings above regarding the various caselaw cited by the parties, and ultimate recommendation to deny the motions based on the standing challenge.

Acknowledging it is Plaintiff's burden to plead standing, and accepting the allegations as true and drawing all reasonable inferences in favor of Plaintiff, the allegations sufficiently state a concrete injury traceable to the Defendants that is redressable by a favorable decision. In re Sutter Health ERISA Litig., 2023 WL 1868865, at *5; Kong, 2022 WL 1125667, at *1. The Court finds the Plaintiff adequately pleads that her (and the ESOP's) economic injury is the direct result of the Defendants' failure to properly evaluate and take into account problems with the Company's operations, management, and financial reporting. Lloyd, 2022 WL 17542071, at *2 ("When considering a Rule 12(b)(1) motion on the pleadings, a district court must accept as true all material factual allegations of the complaint and draw all reasonable inferences of favor of the plaintiff . . . [and] [t]he plaintiffs allege that WBBQ's shares were overvalued when purchased, and that this harmed their financial interest in the ESOP [and] [t]his kind of traditional monetary harm is sufficient to support Article III standing." (citation and quotation marks omitted)); Gamino, 2021 WL 162643, at *2; Allen, 835 F.3d at 678; Laidig, 2023 WL 1319624, at *6; Innis v. Bankers Tr. Co. of S. Dakota, No. 416CV00650RGESBJ, 2017 WL 4876240, at *4 (S.D. Iowa Oct. 13, 2017) ("Innis alleges an actual injury to her own Plan account: the purchase of 1 million shares at $37.50 per share—allegedly more than fair market value.").

---

not fit this case and does not support Article III standing for plaintiffs who allege mismanagement of a defined-benefit plan." Thole, 140 S. Ct. at 1619–20.

1    Accordingly, for the above explained reasons, the Court recommends denying

2  Defendants' motions to dismiss based on lack of standing.

3       **B.      The Court Recommends Denying Hagen *Legal Successor* Challenge**

4    In a footnote, the Hagen Defendants move to dismiss the first, second, fourth, fifth, sixth,

5  and seventh causes of action on the grounds that Plaintiff improperly seeks to impose liability on

6  Kathleen Hagen as a legal successor.  (Hagen Mot. 11 n. 1.)  Hagen Defendants proffer counsel

7  has found no authority stating that generally being a "legal successor" to a deceased individual is

8  sufficient to impute liability under ERISA, and even if it were, the complaint does not contain

9  allegations about any actions Kathleen Hagen Legal Successor took in her capacity as "legal

10  successor"—let alone actions that could give rise to claims under ERISA.  (Id.)  Hagen

11  Defendants argue the lack of any factual basis for Kathleen Hagen Legal Successor to be

12  included in lawsuit as the legal successor to Mr. Hagen warrants her dismissal from the lawsuit

13  in that capacity.  (Id.)

14    Plaintiff responds that she does not sue Kathleen Hagen Legal Successor for any actions

15  she took in her capacity as legal successor, but rather, seeks to impose liability on Mr. Hagen's

16  estate, and the way to do so under either California or Nevada law is to sue the administrator or

17  personal representative of his estate, Kathleen Hagen Legal Successor.  See 4 Witkin, Cal. Proc.

18  6th Plead § 136 (2023) ("The general rule . . . is that the executor or administrator is the proper

19  party to sue on behalf of the estate. . .");  Evanson v. Price, 2006 WL 2829789, at *1 (E.D. Cal.

20  Sept. 29, 2006) (ERISA lawsuit brought against the personal representative of the estate of the

21  deceased defendant);  Jacobson v. Est. of Clayton, 121 Nev. 518, 519, 119 P.3d 132, 132 (2005)

22  (non-ERISA claims brought against deceased defendant's estate and administrator of the estate);

23  Nev. Rev. Stat. § 147.100 (an action or proceeding pending against a decedent at the time of the

24  decedent's death may be continued against the decedent's personal representative if certain

25  conditions are met).   Based on these authorities, Plaintiff argues Kathleen Hagen Legal

26  Successor, as legal successor to Mr. Hagen's estate, is a proper defendant and the claims against

27  her are timely.  (Hagen Opp'n 8 n.2.)

28    It appears that Hagen Defendants do not directly address Plaintiff's arguments in the

1  reply.  While Plaintiff's authorities are not overly convincing nor contain discussion of the

2  precise issue in the ERISA context, given no argument in reply and no authority provided by the

3  Hagen Defendants, the Court recommends that the motion to dismiss Kathleen Hagen Legal

4  Successor on this ground be denied.

5        **C.**    **The Court Recommends Denying Defendants' Motion to Dismiss Based on**

6                    **Challenge to Allegations of Fiduciary Status**

7        The PFS Defendants move to dismiss the first, third, and seventh causes of action against

8  Defendant PFS, arguing PFS is not a fiduciary of the Plan under ERISA.  (PFS Mot. 13.)  Hagen

9  Defendants similarly move for dismissal arguing that Plaintiff fails to plead Mr. Hagen, Sloan,

10  Ms. Hagen, or the ESOP Committee were acting as fiduciaries when committing the alleged

11  ERISA violations.  (Hagen Mot. 13-18.)  The Court discusses the general legal standards

12  concerning fiduciaries, before turning to PFS's challenge, then the Hagen Defendants' challenge.

13        1.    <u>General Legal Standards</u>

14        "As a threshold matter, to state a claim for breach of fiduciary duty, co-fiduciary liability,

15  or participation in a prohibited transaction in violation of ERISA, the plaintiff must first allege

16  that the defendant was acting as an ERISA fiduciary when committing the alleged ERISA

17  violation."  <u>Carter v. San Pasqual Fiduciary Tr. Co.</u>, No. SACV1501507JVSJCGX, 2016 WL

18  6803768, at *3 (C.D. Cal. Apr. 18, 2016) (citing <u>Pegram v. Herdrich</u>, 530 U.S. 211, 226 (2000);

19  29 U.S.C. §§ 1109 (breach of fiduciary duty), 1106(a) (prohibited transactions), 1195(a) (co-

20  fiduciary liability)).  "There are two types of fiduciaries under ERISA."  <u>Depot, Inc. v. Caring</u>

21  <u>for Montanans, Inc.</u>, 915 F.3d 643, 653 (9th Cir. 2019).

22        "First, a party that is designated 'in the plan instrument' as a fiduciary is a 'named

23  fiduciary.' "  <u>Id.</u> (quoting 29 U.S.C. § 1102(a)(2)); <u>see also</u> <u>DeFazio v. Hollister, Inc.</u>, 854 F.

24  Supp. 2d 770, 801 (E.D. Cal. 2012), <u>aff'd sub nom.</u> <u>DeFazio v. Hollister Emp. Share Ownership</u>

25  <u>Tr.</u>, 612 F. App'x 439 (9th Cir. 2015).  ERISA also provides for "what is sometimes referred to

26  as a 'functional' fiduciary."  <u>Depot</u>, 915 F.3d at 653 (citing 29 U.S.C.§ 1002(21)(A)); <u>see also</u>

27  <u>DeFazio</u>, 854 F. Supp. 2d at 801 ("[Individual or entity may . . . act as a functional or *de*

28  *facto* fiduciary by exercising discretionary control over the management or administration of the

1  plan or its assets."). The "functional" or "*de* facto" fiduciary, while not named as such, is

2  defined in ERISA as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

9  29 U.S.C. § 1002(21)(A).[8] Thus, an individual or entity can acquire functional fiduciary status

10  by (1) exercising discretionary authority or control over management of the plan or disposition of

11  its assets; (2) rendering or having authority to provide investment advice for a fee or other

12  compensation; or (3) exercising discretionary authority in the administration of the plan. Id.;

13  Carter, 2016 WL 6803768, at *3.

14       If a named fiduciary, the scope of the fiduciary's liabilities and responsibilities may be

15  limited by the terms of the plan instrument. DeFazio, 854 F. Supp. 2d at 801; Carter, 2016 WL

16  6803768, at *3. A person is a functional fiduciary "only 'to the extent' the person engages in the

17  listed conduct, [and therefore] a person may be a fiduciary with respect to some actions but not

18  others." Depot, 915 F.3d at 654 (quoting Pegram, 530 U.S. at 225–26). "The central question is

19  'whether that person was acting as a fiduciary (that is, was performing a fiduciary function)

20  when taking the action subject to complaint.' " Depot, 915 F.3d at 654 (quoting Pegram, 530

21  U.S. at 226). "Simply put, 'ERISA's definition of fiduciary is functional rather than formal.' "

22  Acosta v. Brain, 910 F.3d 502, 518 (9th Cir. 2018) (quoting Santomenno v. Transamerica Life

23  Ins. Co., 883 F.3d 833, 841 (9th Cir. 2018)).

---

[8]  21(A) provides an exception that does not appear relevant here for the following category: "If any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 such investment shall not by itself cause such investment company or such investment company's investment adviser or principal underwriter to be deemed to be a fiduciary or a party in interest as those terms are defined in this subchapter, except insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter. Nothing contained in this subparagraph shall limit the duties imposed on such investment company, investment adviser, or principal underwriter by any other law."  29 U.S.C. § 1002(21)(B).

A fiduciary may wear "two hats," however, "ERISA does require [] that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions. Pegram, 530 U.S. at 225.  ERISA "does not describe fiduciaries simply as administrators of the plan, or managers or advisers [but] [i]nstead it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." Id. at 225-26 (quoting 29 U.S.C. § 1002(21)(A)).  "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Id. at 226.

"This threshold 'two-hats' inquiry is important '[b]ecause virtually every business decision an employer makes can have an adverse impact on an employee benefit plan.' " Acosta, 910 F.3d at 518 (quoting In re Luna, 406 F.3d 1192, 1207 (10th Cir. 2005)).  "[C]ourts must examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties." Id. ("This is so even where some of the decisions personally benefitted the employer....").

The Ninth Circuit "construe[s] ERISA fiduciary status 'liberally, consistent with ERISA's policies and objectives.' " Johnson v. Couturier, 572 F.3d 1067, 1076 (9th Cir. 2009) (quoting Arizona State Carpenters Pension Tr. Fund v. Citibank (Arizona), 125 F.3d 715, 720 (9th Cir. 1997)).  "ERISA 'defines fiduciary not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan.' " Johnson, 572 F.3d at 1076 (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993)).  "[T]he Ninth Circuit has recognized that under this definition of a fiduciary, 'where members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those directors are themselves subject to ERISA fiduciary duties, albeit only with respect to trustee selection and retention.' " Zavala I, 398 F. Supp. 3d at 743 (quoting Johnson, 572 F.3d at 1076).  "Thus, where a board member is not a 'named fiduciary,' that board member's fiduciary duties under ERISA are

1  limited." <u>Zavala I</u>, 398 F. Supp. 3d at 743.

2          2.      <u>The Court Finds Weight of Authority in Favor of Denying PFS Defendants'</u>
3                  <u>Request for Judicial Notice of Engagement Agreement but Even Considering the</u>
                   <u>Engagement Agreement Recommends Denying PFS Defendants' Motion to</u>
4                  <u>Dismiss Based on Lack of Fiduciary Status</u>

5          PFS Defendants argue that only Defendant Paredes was engaged as Trustee and only he

6  had the sole fiduciary authority to act as Trustee under the Plan, and PFS—which is simply

7  Paredes's operating company—did not.  PFS Defendants proffer the engagement agreement

8  between Paredes and B-K Lighting, grants discretionary authority to cause the ESOP to enter

9  into the Transaction only to Paredes.  PFS Defendants argue the engagement agreement is

10  incorporated by reference in the complaint (Compl. ¶¶ 5, 22, 49), and request judicial notice of

11  the document (hereinafter the "Engagement Agreement").  (PFS Defs.' RJN, ECF No. 23-2 at 1,

12  Ex. A, ECF No. 23-2 at 6.)

13          PFS requests judicial notice arguing the court is "not required to accept as true

14  conclusory allegations which are contradicted by documents referred to in the complaint."

15  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.) (quoting <u>Steckman v. Hart</u>

16  <u>Brewing, Inc.</u>, 143 F.3d 1293, 1295–96 (9th Cir. 1998)); <u>Makua v. Gates</u>, No. CIV. 09-

17  00369SOM/LEK, 2009 WL 3923327, at *3 (D. Haw. Nov. 18, 2009) ("[C]ourt need not accept

18  as true allegations that contradict matters properly subject to judicial notice or allegations

19  contradicting the exhibits attached to the complaint." (citing <u>Sprewell</u>, 266 F.3d at 988)).  PFS

20  contends Plaintiff's allegations are contradicted by other documents and matter relied on, or

21  incorporated by reference.  <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003); <u>Van</u>

22  <u>Buskirk v. CNN</u>, 284 F.3d 977, 980 (9th Cir. 2002).  In addition to arguing the Engagement

23  Agreement itself contradicts the allegations in the complaint, PFS Defendants suggest the

24  complaint is contradictory in that at one point it refers to the Trustee in the singular "him."  (<u>See</u>

25  Compl., relief prayer ¶ G.)

26          Plaintiff responds that the Engagement Agreement is not incorporated by reference in the

27  complaint and is an improper document for judicial notice at the motion to dismiss stage, but

28  even if considered, the Engagement Agreement does not disprove Plaintiff's allegations related

1    to PFS's fiduciary status.  Plaintiff argues the Engagement Agreement's contents are not alleged

2    in the Complaint, as Plaintiff had no access to this document prior to Defendants' motion; and

3    the Engagement Agreement does not implicate adjudicative facts generally known to the Court

4    or whose contents cannot be reasonably questioned, because even were the court to consider

5    these documents, they do not disprove PFS's fiduciary status.   Plaintiff emphasizes the

6    Complaint does not reference the Engagement Agreement at all, but simply alleges that Paredes

7    and PFS had the authority as Trustee to represent the ESOP, that the Hagen Family Defendants

8    appointed them, and that they exercised the discretionary authority or discretionary control

9    respecting the ESOP's assets, and/or administration.  (Compl. ¶¶ 5, 21-22, 49.)  Plaintiff argues

10   the Engagement Agreement does not form the basis for any of these allegations.  Plaintiff also

11   argues the Engagement Agreement is not a proper subject for judicial notice, which only applies

12   to exhibits attached to the complaint, authenticated documents whose contents are alleged in the

13   complaint, or matters that are proper subjects of Federal Rule of Evidence 201.

14         The Court finds greater weight supports Plaintiff's position that the document is an

15   improper subject of judicial notice at this stage.  Additionally, even if the Court considered the

16   document, it does not end the analysis and thus does not indicate the motion should be granted as

17   to PFS simply for the proffer that it shows PFS is not a fiduciary or trustee.

18         "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence

19   outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

20   summary judgment, and it must give the nonmoving party an opportunity to respond."  Ritchie,

21   342 F.3d at 907.  "A court may, however, consider certain materials—documents attached to the

22   complaint, documents incorporated by reference in the complaint, or matters of judicial notice—

23   without converting the motion to dismiss into a motion for summary judgment."  Id. at 908.

24   "The defendant may offer such a document, and the district court may treat such a document as

25   part of the complaint, and thus may assume that its contents are true for purposes of a motion to

26   dismiss under Rule 12(b)(6)."  Id.

27         "Even if a document is not attached to a complaint, it may be incorporated by reference

28   into a complaint if the plaintiff refers extensively to the document or the document forms the

basis of the plaintiff's claim.  Id. ("The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan, . . . or when a plaintiff's claim about stock fraud is based on the contents of SEC filings.").  "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) ("The court may also have had the authority to do so because plaintiffs' First Amended Complaint repeatedly refers to the extradition process that Kerry Sanders underwent, and arguably incorporates the fact of the extradition hearing and the waiver by reference." (quoting Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998))).  "[U]nder Fed.R.Evid. 201, a court may take judicial notice of 'matters of public record.' "  Lee, 250 F.3d at 689.

On one hand, the Court does agree with Plaintiff that the cases relied on by Defendants are distinguishable in many regards.  For example, in Sprewell, the plaintiff had in fact attached the document to his complaint, that undermined the claims.  See Sprewell, 266 F.3d at 988 ("[T]he arbitration award was attached to Sprewell's complaint and [] contained extensive factual allegations that fatally undermined Sprewell's section 1981 claim . . . examination of the pleadings confirms that Sprewell's attachment of the arbitration award to his complaint justified both the district court's consideration in connection with a Rule 12(b)(6) motion of the factual findings contained therein as well as the conclusion the court drew from it.").  It appears Plaintiff is correct that the parties in the Makua did not contest the court's review of documents attached to the complaint, as there is little to any discussion of the doctrines aside from in the general legal standard section.  Makua, 2009 WL 3923327, at *2-3.  In Van Buskirk, the parties did not contest the court's review of documents attached to the complaint, or they incorporated the document by reference, respectively.  Van Buskirk, 284 F.3d at 980 ("The district court, without objection, concluded that it could properly consider the complete interview transcripts and tapes under the incorporation by reference doctrine . . . [n]either party challenges this decision to review the complete transcripts and tapes.").  Plaintiff submits the document was not incorporated by reference.  See Ritchie, 342 F.3d at 908 ("The government's contention that the

district court could have considered some or all of the attachments under the incorporation by reference doctrine is unpersuasive . . . [as the] declaration, prepared in response to [the] motion, was obviously not mentioned in the motion . . . [and such] declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint.").

PFS Defendants respond that the Engagement Agreement *is* incorporated by reference in the complaint and the proper subject of judicial notice (Compl. ¶¶ 5, 22, 49); and that the Engagement Agreement clearly serves as the basis for Plaintiff's allegations that Paredes and PFS had authority as Trustee, that the Hagen Family Defendants appointed them as Trustee, and held discretionary authority over the ESOP's assets and administration (Compl. ¶¶ 21–22). Defendants argue Plaintiff's claims against Paredes and PFS depend upon these allegations (Compl. ¶¶ 65–66, 90–91). While PFS Defendants cite these sections of the complaint, they do not describe why it forms the basis of the complaint at this stage as to justify incorporation by reference.

On the other hand, some of PFS Defendants' authority supports the position that the Engagement Agreement could form the basis of certain allegations and could be judicially noticeable, and the Court agrees with PFS Defendants that Plaintiff's argument that she did not have access to the document before filing the complaint is not necessarily determinative. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint."); Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1161 (9th Cir. 2012) ("Even assuming these copies were not personally reviewed by Davis, that does not address, much less cast doubt on, whether the copies are accurate reproductions of the original disclosure documents . . . We therefore hold that where the party opposing incorporation by reference argues only that he did not review or have access to the proffered copies, this does not amount to a challenge to those documents' authenticity."). However, the Court does find the reliance by the plaintiff in Davis on the particular content of

1   the documents in the complaint was clearly greater.  See id. ("In particular, having based his

2   allegations on the contents and appearance of the Important Terms & Disclosure Statement,

3   '[Davis] can hardly complain when [Defendants] refer to the same information in their defense.'

4   " (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999))).

5          PFS Defendants argue that the Engagement Agreement, as judicially noticed, contradicts

6   Plaintiff's allegation that PFS also served as a trustee to the ESOP and those allegations should

7   therefore be disregarded.  However, in cases that relied on contradictions highlighted between

8   certain complaint allegations and judicially noticeable facts, the contradictions were more clear

9   than between the allegations and the content of the Engagement Agreement here.  See Morgan v.

10  Aurora Loan Servs., LLC, No. CV124350CASMRWX, 2012 WL 12952304, at *8 (C.D. Cal.

11  Aug. 13, 2012) ("Plaintiff alleges that no additional notice of default or sale was ever recorded

12  after the original August 19, 2009 notice, but this is contradicted by the February 23, 2011 notice

13  of which the Court takes judicial notice."); Eng v. JPMorgan Chase Bank, N.A., No. C 14-04626

14  JSW, 2015 WL 12781214, at *1 (N.D. Cal. May 4, 2015) ("Plaintiff alleges that he purchased

15  the home in June 2003 . . . [h]owever, this allegation contradicts the deed of trust of which the

16  Court takes judicial notice.").

17         Moving beyond the caselaw to the complaint and Engagement Agreement, the Court does

18  not find the Engagement Agreement is referenced in the complaint, and further, the Engagement

19  Agreement does not necessarily form the basis of the complaint, nor even necessarily a

20  determinative document as to trustee status.  See Johnson, 572 F.3d at 1076 ("ERISA 'defines

21  fiduciary not in terms of formal trusteeship, but in functional terms of control and authority over

22  the plan.' " (quoting Mertens., 508 U.S. at 262)).  Based on the arguments presented, the Court

23  would recommend denying taking judicial notice of the Engagement Agreement at this point.

24  However, even if the Court were to consider the Engagement Agreement, the same authority

25  weighs toward finding it not determinative to the issue at this stage.  See Johnson, 572 F.3d at

26  1076.

27         The Court turns to the content of the engagement letter, which if the District Judge takes

28  judicial notice of, the Court further recommends denying the motion to dismiss based on the

threshold fiduciary status issue, even considering the contents of the document.

The Engagement Agreement's introduction states the following, stating Paredes is the Trustee, and PFS is the Trustee's operating company:

> This Engagement Agreement (Agreement) is made and entered into by B-K Lighting, Inc. (Company), Business Transition Advisors, Inc. (BTA), and Miguel Paredes (Trustee or Independent Trustee), a professional ERISA Fiduciary. Prudent Fiduciary Services, LLC is the Independent Trustee's operating company.
> [ . . . ]
> The Company desires to retain Miguel Paredes as Independent Trustee for the Plan in connection with the proposed purchase of shares of stock of the Company from selling shareholder(s) to the ESOP (ESOP Transaction). Miguel Paredes agrees to serve as Independent Trustee of the ESOP subject to the terms and conditions set forth in this Agreement and in the Plan Trust Agreement.

(ECF No. 23-2 at 6.) Under the heading pertaining to appointment and duties, the Engagement Agreement states the following, referring to Paredes as Trustee:

> The Company hereby appoints Miguel Paredes to serve as Independent Trustee of the Plan, pursuant to the provisions of the Plan, and Paredes hereby accepts this appointment. Paredes shall adopt all the powers, authority, and obligations of a trustee under the Employee Retirement Income Security Act of 1974 as amended (ERISA) and the terms of the Plan. Paredes shall be authorized to take all actions reasonably necessary to carry out his duties under this Agreement.

(ECF No. 23-2 at 6.)

PFS Defendants take some issue with reference to "him" in the complaint. PFS Defendants argue Plaintiff "does not deny that her own allegations contradict themselves," based on Defendants' argument raised in the motion to dismiss regarding the reference to Trustee in the singular "him." The Court does not find this passing mention to the term "him" in the request for relief of the complaint, to be a sufficient contradiction as to realistically support an independent basis for invoking the doctrine. The Court notes the Engagement Agreement itself is contradictory in the very same fashion. On one hand, the Engagement Agreement refers to the Trustee as "him": "The Company hereby agrees to fully indemnify the Trustee and hold him harmless from any and all loss or liability, including reasonable legal fees, which the Trustee sustains in discharging his duties and responsibilities under this Agreement." (Engagement

1   Agreement ¶ 7, ECF No. 23-2 at 7; see also id. at ¶¶ 11, 12, 13.)  However, the Engagement
2   Agreement itself contains a similar "contradiction" in that it refers to the Trustee as "it" in one of
3   the paragraphs.  (See Engagement Agreement ¶ 8, ECF No. 23-2 at 7.)

4           The resignation or removal provision refers to Paredes, stating: "Miguel Paredes will
5   continue to serve as the Independent Trustee of the Plan until Paredes resigns or is removed by
6   the Company.  The Company may remove Paredes as the Independent Trustee of the Plan at any
7   time by providing Paredes with 30 days advance written notice." (Engagement Agreement ¶ 14,
8   ECF No. 23-2 at 8.)

9           In the first signature space, Paredes includes a reference to PFS in the signature block,
10  signing above the following signature block language:

11                  Miguel Paredes, MBA, CPFA
                    Prudent Fiduciary Services, LLC
12

13  (ECF No. 23-2 at 9.)  On the following page, however, where Paredes signs under the space
14  entitled "Independent Trustee," the signature only appears above the name "Miguel Paredes."
15  (ECF No. 23-2 at 10.)

16          The Court finds the above aspects of the Engagement Agreement do, as PFS Defendants
17  argue, largely refer to Paredes as the Trustee, not PFS.  However, in addition to the inclusion of
18  PFS in the signature block, as Plaintiff highlights, the engagement letter: (i) is on PFS letterhead;
19  (ii) states that PFS is the "operating company" of the "Independent Trustee" Paredes; and (iii)
20  states that B-K Lighting's retainer to be paid to the Trustee, "shall be payable to Prudent
21  Fiduciary Services, LLC."  Thus, overall, even if the Court were to consider the Engagement
22  Agreement, the Court does not find the content therein would allow the Court to resolve the issue
23  at this stage.  Most importantly, aside from the text of the letter, the engagement letter says
24  nothing about whether PFS acted as a functional fiduciary in practice.  The Court agrees with
25  Plaintiff that the Trustee Defendants' proffer of the engagement letter does not rebut Plaintiff's
26  allegations of PFS's fiduciary status.  See Johnson, 572 F.3d at 1076 (courts are to construe
27  fiduciary status liberally consistent with ERISA policies and objectives, and ERISA defines
28  fiduciary in functional terms of control and authority, not formal trusteeship); see also Ahrendsen

v. Prudent Fiduciary Servs., LLC, No. CV 21-2157, 2022 WL 294394, at *4 n.4 (E.D. Pa. Feb. 1, 2022) ("PFS disputes that it was a fiduciary.  The court at this pleading stage takes the facts in the light most favorable to plaintiffs and will therefore not reach the merits of this claim on a motion to dismiss.").[9]

PFS Defendants further argue that even Plaintiff's own attachments to her opposition brief support that only Paredes was the fiduciary, specifically, as the ESOP Plan and Trust Agreement, is signed by Mr. Paredes "solely in his capacity as Trustee of the Lite Star ESOP." (See ECF No. 33-2 at 11.)  The Court notes that the signature block states "Miguel Paredes, MBA, CPFA, Prudential Fiduciary Services, not in his individual capacity, but solely in his capacity as Trustee of the Lite Star ESOP."  (Id.)  Thus, like the Engagement Letter, this document references Paredes signing in some connection with PFS.  PFS Defendants also proffer that the Plan's SPD, also attached to the opposition, similarly lists Paredes as the Trustee.  (See ECF No. 33-3 at 22.)  However, the Court notes that similarly here, the document states:

> **Trustee(s) of the Plan:**
> Miguel Paredes, MBA, CPFA, Prudential Fiduciary Services

(Id.)  In addition to Paredes signature block referencing PFS, the Court finds signing solely in the capacity as trustee, does not mean that PFS cannot also be considered a Trustee, and although these various documents are potentially relevant to the ultimate determination, the Court finds the facts presented are not determinative or inappropriately determinative at this stage, even if the Court took judicial notice of the Engagement Letter.  Johnson, 572 F.3d at 1076; Ahrendsen v. PFS, 2022 WL 294394, at *4 n.4.

PFS Defendants additionally argue that while Plaintiff asserts the engagement agreement does not disprove PFS's fiduciary status, it is Plaintiff who bears the burden of pleading *facts* that give rise to a colorable claim that PFS was a plan fiduciary.  See Parsons v. Bd. of Trustees of the Nevada Resort Ass'n - I.A.T.S.E. Loc. 702 Ret. Plan, No. 2:12-CV-00299-LDG, 2013 WL

---

[9]  Defendants argue Plaintiff inaccurately asserts that the court in Ahrendsen rejected the argument that PFS is not a fiduciary, as the court did not consider whether the trustee engagement letter was incorporated by reference into the complaint.  The Court nonetheless finds the case supports Plaintiff's position at this stage of the litigation.

5324946, at *3 (D. Nev. Sept. 20, 2013) ("Parsons has the burden of showing that Zenith was acting as a Plan fiduciary or delegated agent of the Trustees when Dobbs communicated with Parsons regarding retirement eligibility and that the Trustees breached a fiduciary duty by not interpreting ambiguous language."). This case does generally mention the "Ninth Circuit requires ERISA misrepresentation claims to be pleaded with particularity," before in a different paragraph stating a plaintiff has such burden to plead both fiduciary status and breach. Parsons, 2013 WL 5324946, at *3 (citing Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995)).

A review of the underlying discussion in Concha leads the Court to find the Defendants' reliance on Parsons to be unpersuasive here. In Concha, the plaintiff pled state law fraud and misrepresentation claims, as well as an ERISA breach of fiduciary claim. 62 F.3d at 1498. The Ninth Circuit noted the "reasons for requiring compliance with Rule 9(b) in fraud claims, but not in breach of fiduciary duty claims generally, can be understood by considering the differences between the respective causes of action," that "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage," and "therefore h[e]ld that Rule 9(b) is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake." Id. at 1502 ("Complaints in such cases need contain only a "short and plain statement of the claim," as required by Rule 8(a)."). Although fraud or misrepresentation could potentially be read into the allegations regarding, for example the duty to disclose,[10] Plaintiff's complaint does not allege a claim for fraud or mention fraud or misrepresentation. See id. at 1502-03 ("Cases from other jurisdiction confirm that Rule 9(b) is applicable where the plaintiffs allege fraud, but not where they simply allege breaches of ERISA fiduciary duties . . . the Seventh Circuit applied Rule 9(b) to the

---

[10] Courts have recognized that there is a distinction between misrepresentation and failure to disclose under ERISA. See Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 459 (3d Cir. 2003) ("Horvath's counsel struggled mightily, both in their briefs and at oral argument, to persuade us that her breach of fiduciary duty claim is based on allegations of affirmative misrepresentation rather than on a failure to disclose material facts . . . In order to state a claim for misrepresentation by an ERISA fiduciary, Horvath must allege (1) that Keystone was acting as a fiduciary, (2) that Keystone made a misrepresentation, (3) that the misrepresentation was material, and (4) that Horvath relied on the misrepresentation to her detriment.");. In Wilson, the court noted a failure to disclose claim could be based on a misrepresentation theory. Wilson v. Venture Fin. Grp., Inc., No. C09-5768BHS, 2010 WL 2028088, at *10 (W.D. Wash. May 18, 2010) (stating same elements for ERISA misrepresentation claim, and also finding "[b]ecause Plaintiffs do not plead any facts that would establish detrimental reliance, their claim of failure to disclose to the extent it relies on a misrepresentation theory is foreclosed.").

plaintiffs' claims of fraud under state common law, but did not apply the rule to the plaintiff's allegation that defendants had breached their fiduciary duties under *1503 ERISA . . . [and] [i]n another ERISA case . . . the District of Columbia Circuit vacated the district court's grant of summary judgment which had been based on the plaintiff's failure to comply with Rule 9(b) [as] [a]bsent an allegation of fraud in the pleadings, the District of Columbia Circuit held, Rule 9(b) is inapplicable." (citations omitted)).

Setting aside the Engagement Agreement and considering the standards applicable to functional fiduciaries, PFS Defendants argue the complaint contains no facts to support that PFS, as opposed to Paredes, exercised any discretion or control over the ESOP.  The Court finds some merit to this argument, however, based on the complaint's allegations collectively,[11] and the appropriate legal standards, the Court finds at this stage of litigation, Plaintiff has sufficiently alleged the fiduciary status of PFS.  See Concha, 62 F.3d at 1503 ("We do not decide whether the London and Southland Defendants were in fact fiduciaries nor, of course, whether they actually breached any duties owed [and] hold only that because the Conchas have sufficiently alleged that the London and Southland Defendants were given and accepted discretionary authority over the Plan and that they breached the fiduciary duties owed to the Plan under ERISA section 1104, the complaint states a claim on which relief may be granted."); Johnson, 572 F.3d at 1076; Ahrendsen v. PFS, 2022 WL 294394, at *4 n.4.

>    3.    The Court Recommends Denying the Hagen Defendants' Motion to Dismiss
>           Based on Element of Fiduciary Status

The Hagen Defendants argue Plaintiff does not allege that any of Mr. Hagen, Ms. Hagen,

---

[11]  (See Compl. ¶ 5 ("The ESOP Trustee, Prudent Fiduciary Services, LLC ('Prudent') and its owner Miguel Paredes (together, 'the Trustee'), represented the ESOP and its participants in the ESOP Transaction. The Trustee had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the ESOP's behalf and has continued to serve as Trustee following the ESOP Transaction."); Compl. ¶ 21 ("Prudent is the trustee of the Lite Star ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  Prudent holds, manages and controls the ESOP's assets.  Prudent is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP.  Prudent authorized the ESOP's purchase of B-K Lighting stock from Mr. Hagen."); Compl. ¶ 22 ("Mr. Paredes authorized the ESOP's purchase of B-K Lighting stock from Mr. Hagen.  Prudent and Mr. Paredes are referred to together as 'the Trustee.' "); Compl. ¶ 49 ("The Hagen Family Defendants, acting on behalf of the Company, appointed Mr. Paredes and Prudent to be the Trustee of the ESOP.").)

Sloan individually "exercis[ed] any discretionary authority or . . . control" over "management" of an ERISA plan or "disposition of its assets", "render[ed] investment advice for a fee or other compensation" with respect to a plan, or "ha[d] any discretionary authority . . . or responsibility in the administration of such plan." See 29 U.S.C. § 1002(21)(A); Zavala I, 398 F. Supp. 3d at 743–44; Foster v. Adams & Assocs., Inc., No. 18-CV-02723-JSC, 2020 WL 3639648 (N.D. Cal. July 6, 2020); Vang v. Geil Enterprises Inc., No. 123CV00447ADASKO, 2023 WL 3168513 (E.D. Cal. Apr. 28, 2023).  Hagen Defendants emphasize Plaintiff does not allege that any Hagen Family Defendant was a named fiduciary under the Plan document but instead argue Mr. Hagen, Ms. Hagen, and Mr. Sloan were fiduciaries of the ESOP solely based on their membership on the Board of Directors for B-K Lighting.  (Compl. ¶¶ 18-20.)  Hagen Defendants argue Plaintiff summarily asks the Court to believe that the Hagen Family Defendants "orchestrated the sale of [B- K Lighting] to the ESOP for greater than fair market value" based solely on their positions within B-K Lighting and their appointment of the Trustee, (Compl. ¶ 6), but argue nowhere in the Complaint, however, does Plaintiff allege that any of Mr. Hagen, Ms. Hagen, or Mr. Sloan individually "exercis[ed] any discretionary authority or . . . control" over "management" of an ERISA plan or "disposition of its assets", "render[ed] investment advice for a fee or other compensation" with respect to a plan, or "ha[d] any discretionary authority . . . or responsibility in the administration of such plan." *See* 29 U.S.C. § 1002(21)(A).

The Hagen Defendants also submit separate arguments concerning Defendant ESOP Committee.  (Hagen Mot. 17-18.)  Here, Defendants emphasize that while Plaintiff alleges that the ESOP Committee is a "named fiduciary" because it was designated as Plan Administrator of the ESOP and "exercised discretionary authority or discretionary control respecting the management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP, (Compl. ¶ 17), Plaintiff also alleges that (1) "the Board of Directors, acting for the Company, appoints the Trustee of the ESOP", and (2) the Trustee "had ***sole and exclusive authority*** to negotiate the terms of the ESOP Transaction on the ESOP's behalf and has continued to serve as Trustee following the ESOP Transaction."  (Compl. ¶¶ 5, 19, 20 (emphasis added).)  Defendants emphasize that in Zavala II, after dismissal of the

1    prohibited transaction claim against certain members of the Board of Directors, the plaintiff

2    amended his complaint to bring the same claim against the Administration Committee, the plan

3    administrator of the ESOP, that the Administration Committee moved to dismiss the claim on the

4    grounds that its members were not ERISA fiduciaries with respect to the alleged ERISA

5    violations, and Hagen Defendants state "[t]his Court held that 'even if the Administration

6    Committee individual defendants were functional fiduciaries of the ESOP,' the amended

7    complaint 'do[es] not address or explain how the Administration Committee *caused* the purchase

8    of Kruse-Western stock to occur such that the purchase of the stock constituted an act of self-

9    interest by the ESOP fiduciaries' and dismissed the claim."  (Hagen Mot. 18, quoting Zavala v.

10   Kruse-W., Inc., No. 119CV00239DADSKO, 2021 WL 5883125, at *9 (E.D. Cal. Dec. 13, 2021)

11   ("Zavala II")).  Hagen Defendants argue that similarly, here Plaintiff fails to address or explain

12   how the ESOP Committee caused the Trustee to enter into the Transaction where the complaint

13   alleges the Trustee "had **sole and exclusive authority** to negotiate the terms of the ESOP

14   Transaction on the ESOP's behalf . . . ." (Compl. ¶ 5 (emphasis added).)  Defendants also argue

15   that Plaintiff's contradictory and conclusory allegations regarding the ESOP Committee's

16   "discretionary authority or discretionary control" are insufficient to establish that the ESOP

17   Committee was an ERISA fiduciary with respect to the Transaction, and this Court should

18   dismiss Counts IV and VII against the ESOP Committee.

19          Preliminarily, the Court does not find the majority of cases cited by the Hagen

20   Defendants to be overly persuasive or helpful, Foster, and Vang.  The holdings in Zavala are

21   more analogous to the allegations here and helpful, however, the ESOP Committee's omission of

22   some language in a quoted portion caused some confusion, as explained below.

23          Foster involved a motion for summary judgment not a motion to dismiss, and as Plaintiff

24   highlights, considered "whether a reasonable trier of fact could find that [the director defendants]

25   were functional fiduciaries based on their duty to monitor" the trustee, whereas here the

26   complaint alleges, for example, that Mr. Hagen was a named fiduciary by virtue of his

27   membership on the ESOP Committee as well as his role on the Board of Directors.  Foster, 2020

28   WL 3639648 at *6.  In Foster, the court held that "a reasonable trier of fact could not find that

1  the Director Defendants caused [the trustee] to engage in the transaction", as "[a]mong other

2  omissions, there is no evidence that the Director Defendants exercised 'authority or control' over

3  [the trustee's] decision to engage in the ESOP transaction; the lack of evidence instead supports

4  an inference that he made an independent decision." Id. at *7.

5      The Court does not find Vang particularly helpful as it was a *pro se* screening order that

6  contained no specific facts even barely alleging how the individual defendants were fiduciaries.

7  See Vang, 2023 WL 3168513, at *3 ("Plaintiff alleges only that Defendant Chelberg is the Chief

8  Financial Officer, and Defendant Skiles is an accountant, employed by Geil Enterprises Inc. . . .

9  but does not allege any facts suggesting that they had control or authority over ESOP assets . . .

10  [w]ith respect to Defendant Dubois, Plaintiff alleges that she is 'an attorney ... representing [Geil

11  Enterprises Inc.] and stepped in briefly as an administrator to the Plan to answer Plaintiff's

12  appeal/questions/requests regarding the Plan' . . . but these allegations do not suggest the

13  exercise of discretionary control over the ESOP."); see also id. at *3 n.2 ("Plaintiff attaches to

14  his complaint over 30 pages of correspondence between him and the individual defendants . . .

15  but does not explain in his complaint how this correspondence demonstrates Defendants

16  Chelberg, Skiles, and/or Dubois were functioning as ERISA fiduciaries under 29 U.S.C. §

17  1002(21)(A).").

18      In Zavala I, the court dismissed the plaintiff's cause of action alleging that members of a

19  company's board of directors engaged in a prohibited transaction by selling the company's stock

20  to the ESOP.  398 F. Supp. 3d at 744.  The court noted the complaint alleged the board members

21  appointed GreatBanc to act as a trustee of the ESOP in 2015, and thus the board member

22  defendants were "subject to ERISA fiduciary duties insofar as those duties related to the

23  appointment of GreatBanc." Id. at 743.  Hagen Defendants emphasize that with respect to the

24  prohibited transaction claim, however, the court reasoned that because that claim related to the

25  sale of the company's stock (and not the trustee's appointment), "[s]uch an allegation is not

26  cognizable under [29 U.S.C.] § 1106(b) unless the complaint plausibly alleges that the Board

27  defendants exercised control over the ESOP and caused it to buy [the company's stock]." Id. at

28  744.  The court rejected the plaintiff's attempt to "fill in the gaps" through the opposition as the

court could not look beyond the complaint at the motion to dismiss stage.  Id.  The court found that even if were to consider the outside material, "the allegation that the Board defendants 'orchestrated' the purchase of Kruse-Western stock is conclusory, and therefore not entitled to the presumption of truth," noting "[s]uch language gives the reader no indication of what it is the Board defendants did that caused the transaction to occur [and therefore] . . . the complaint contains insufficient factual allegations to state a claim against the Board defendants for violation of 29 U.S.C. § 1106(b)."  Id. at 744.

It is true that in Zavala II, the "plaintiff filed his FAC, in which he added the Kruse-Western Board of Directors and the Administration Committee as defendants, and removed Kruse-Western, Inc. as a defendant."  Id. at *3.  It is noteworthy that the Administrative Committee was identified in the first amended complaint as encompassing doe defendants as follows: "**Defendants John and Jane Does 11-20** are the persons serving on the Administration Committee of the ESOP from before the 2015 ESOP Transaction to the present.  The identities of the members of the Administration Committee are currently are unknown to Plaintiff.  Once their identities are ascertained, Plaintiff will substitute their names."  (See Case No. 1:19-cv-00239-NODJ-SKO, ECF No. 34 at ¶ 22.)  As stated in the opinion, "Count two allege[d] a violation of 29 U.S.C. § 1106(b) against the Administration Committee defendants who sold Kruse-Western stock to the ESOP, and also asserts that these individuals engaged in a transaction prohibited by ERISA."  Zavala II, 2021 WL 5883125, at *3.  "Count five allege[d] a claim for co-fiduciary liability in violation of 29 U.S.C. §§ 1105(a)(1), (a)(3) against defendants Kruse, the Administration Committee, the Board of Directors, and the selling shareholders."  Id. ("the Board defendants and the Administration Committee moved to dismiss counts two and five of the FAC.").

There, the defendants contended "that in amending his complaint plaintiff merely substituted the Administration Committee defendants in place of the Board defendants from plaintiff's original complaint, which was dismissed in this court's prior order because the original complaint gave 'the reader no indication of what it is the Board defendants did that caused the transaction to occur.' "  Id. at *8.  "In opposing dismissal, plaintiff argue[d] both that the

Administration Committee and the individual committee members were named fiduciaries and that the Administration Committee defendants [were] also functional fiduciaries because they 'ha[ve] exercised discretionary authority and control over ESOP management[.]' " <u>Id.</u>

The <u>Zavala II</u> court actually made the preliminary finding that "[b]y asserting that the selling shareholders are 'the persons serving on the Administration Committee of the ESOP' (the 'Administration Committee defendants'), plaintiff has sufficiently alleged that the Administration Committee defendants are at least functional fiduciaries of the ESOP," and "[t]he FAC therefore contains sufficient allegations that defendant Kruse is a named fiduciary and the Administration Committee defendants are functional fiduciaries of the ESOP with limited fiduciary duties." <u>Id.</u> at *5.

The Court notes Hagen Defendants omit the word "defendants" that comes at a somewhat important point of the court's statement, in that the omission caused some difficulty in understanding the significance of the holding, as it was a bit unclear if the term was omitted to make the finding by the court more favorable, or simply understandable of the underlying meaning, in relation to the form of the Defendant ESOP Committee here, and the form of the defendants taken in <u>Zavala II</u>, as the Court just summarized.  (<u>See</u> Opp'n 18.)  The <u>Zavala II</u> court stated, with emphasis added to the word "defendants" omitted from Hagen Defendants' briefing (Hagen Mot. 18), the following:

> [E]ven if the Administration Committee individual defendants were functional fiduciaries of the ESOP, the FAC's allegations do not address or explain how the Administration Committee **defendants** *caused* the purchase of Kruse-Western stock to occur such that the purchase of the stock constituted an act of self-interest by the ESOP fiduciaries. An allegation of causation is essential to support plaintiff's claim that the Administration Committee subsequently engaged in self-dealing by fulfilling their duties laid out in the Plan documents to determine what portion of stock dividends and employer contributions are directed to loan repayments. Because no such allegation of facts to, if proven, establish causation appears in the FAC, plaintiff has failed to sufficiently allege facts stating a claim against the Administration Committee defendants for violation of 29 U.S.C. § 1106(b). Therefore, defendants' motion to dismiss will be granted as to plaintiff's second cause of action.

2021 WL 5883125, at *9 (emphasis added).  Thus, the court dismissed the second cause of

action which was, as stated in the opinion, for "a violation of 29 U.S.C. § 1106(b) against the Administration Committee **defendants** who sold Kruse-Western stock to the ESOP, and also asserts that these individuals engaged in a transaction prohibited by ERISA." Id. at *3.

As to the fifth cause of action for co-fiduciary liability in violation of 29 U.S.C. §§ 1105(a)(1), (a)(3), "against defendants Kruse, the Administration Committee, the Board of Directors, and the selling shareholders," id., the court denied dismissal, stating "[a]lthough the FAC does not allege that the Administration Committee defendants were individually named fiduciaries of the ESOP, it does sufficiently allege that the Administration Committee defendants, by virtue of serving on the Administration Committee, are 'functional fiduciar[ies]' pursuant to ERISA by exercising some 'discretionary authority or discretionary control over plan management.' " Id. at *11 (quoting 29 U.S.C. § 1002(21)(A)).

Having preliminarily discussed the principal cases cited by the Hagen Defendants, the Court now turns to more pointed discussion of Plaintiff's response, the facts of the case here in relation to such cases, and the overall applicable legal standards of ERISA fiduciary status. Citing Zavala, Foster, and Vang, Hagen Defendants proffer the development in this case law makes sense because countenancing such thin allegations—while at the same time disregarding the procedural safeguards put in place by hiring an independent trustee with discretion to refuse an ESOP transaction—essentially dooms anyone who sells their shares in an ESOP Transaction to litigating the transaction *at least* through discovery. The Court agrees this prospect can be troubling as this is a close case where the Court questions where a line *could* be drawn if the allegations are sufficient here, as many of the allegations could generally be applied to many ESOP transactions involving a family business and allegations of misusing company assets or funds, for example here regarding the use of the airplanes, or hiring family members for lucrative contracts. However, Zavala is distinguishable from the facts here in that there are more specific allegations involving control and authority, Foster involved a motion for summary judgment and lack of any evidence obtained in discovery, and Vang was a *pro se* screening order that lacked any plausible factual allegations pertaining to the individual defendants. Given the above caselaw and the overall applicable legal standards to fiduciary status generally, and for the

reasons discussed below, the Court finds in favor of Plaintiff as to the Hagen Defendants' preliminary challenge to the element of fiduciary status for all causes of action.

Plaintiff first responds that Defendant ESOP Committee is the Plan Administrator and thus a named fiduciary of the ESOP.[12]  The court finds sufficient support for this argument.  See Depot, 915 F.3d at 653 ("[A] party that is designated 'in the plan instrument' as a fiduciary is a 'named fiduciary.' " (quoting 29 U.S.C. § 1102(a)(2)); Schonbak v. Minnesota Life, No. 16-CV-0295 DMS (JMA), 2018 WL 11422693, at *1 (S.D. Cal. Apr. 10, 2018) ("Defendant is a named fiduciary pursuant to § 1102(a), as it is the 'Plan Sponsor' and 'Plan Administrator' of the Tribune Plan."); Tamrazian v. UNUM Life Ins. Co. of Am., No. 219CV05583SVWJPR, 2020 WL 4288441, at *2–3 (C.D. Cal. Apr. 14, 2020) ("Crane is both a named fiduciary and administrator of the Plan, and Plaintiff alleges Crane had significant control over the operation of the Policy [and] is therefore a proper defendant under ERISA at this stage.").

Plaintiff also responds that the complaint further alleges that the Hagen Family Defendants are on the ESOP Committee and hence are named fiduciaries too.  Specifically, Plaintiff argues that contrary to Defendants' argument,[13] that because the complaint alleges the ESOP Committee is a named fiduciary and that the Hagens and Sloan are members of the ESOP

---

[12]  Plaintiff proffers the Plan's governing instruments include conflicting information about the identity of the Plan Administrator (Compl. ¶ 16).  (Opp'n Hagen 9 n.3.)  Plaintiff notes the Summary Plan Description ("SPD") states that the Company is the Plan Administrator, but that if an ESOP Committee is formed, many of the functions of the Plan Administrator will be performed by the ESOP Committee.  Id.; see also SPD, Decl. Dan Feinberg, Ex. B, ECF No. 33-3 at 6 ("If an ESOP Committee is later established, many of the functions described above will be performed by the ESOP Committee.").  The Court agrees with Plaintiff that the Court may consider this document under the doctrine of incorporation by reference, as the complaint refers to the Plan (Compl. ¶¶ 16, 50-52, 118-121), and forms the basis of the complaint because it establishes the ESOP and sets for the Defendants' duties with respect to the ESOP, and because similar reasons support considering the SPD given no direct persons who shall serve in the reply briefs.  See Horan v. Goal Structured Sols., Inc. Emp. Stock Ownership Plan, 2021 WL 5177459, at *3 (S.D. Cal. Nov. 2, 2021); Clark v. Provident Life, 2016 WL 11744945, at *3 (C.D. Cal. Mar. 30, 2016).  Plaintiff argues the SPD also names Douglas Hagen, Kathleen Hagen, and Nathan Sloan as ESOP Committee members, suggesting that an ESOP Committee was formed.  (Compl. ¶ 16; SPD at Information Index.)  Plaintiff further proffers the Plan document states that the Plan Administrator shall consist of a committee of one or more persons who shall serve at the pleasure of the Board of Directors, and that if no person has been appointed to the committee, the Company is the Plan Administrator.  (Lite Star ESOP Plan § 13.1, Decl. Dan Feinberg, Ex. A, ECF No. 33-2 at 68.)  In light of the foregoing, the Court agrees with Plaintiff that the complaint alleges that the Company served as the Plan Administrator and, in the alternative, the ESOP Committee served as Plan Administrator.

[13]  There, Hagen Defendants argue "Plaintiff does not allege that any defendant was a named fiduciary under the Plan document.  Rather, Plaintiff alleges that Mr. Hagen, Ms. Hagen, and Mr. Sloan were fiduciaries of the ESOP solely by dint of their membership on the Board of Directors for B-K Lighting."  (Hagen Mot. 15.)

Committee, (Compl. ¶ 17), Plaintiff sufficiently alleges the ESOP Committee's and its members' fiduciary status (Opp'n Hagen 9 n.4).  Cf. Zavala II, 2021 WL 5883125, at *11 ("Although the FAC does not allege that the Administration Committee defendants were individually named fiduciaries of the ESOP, it does sufficiently allege that the Administration Committee defendants, by virtue of serving on the Administration Committee, are 'functional fiduciar[ies]' pursuant to ERISA by exercising some 'discretionary authority or discretionary control over plan management.' " (quoting 29 U.S.C. § 1002(21)(A))).

The Court finds additional support for this argument in favor of Plaintiff, at least as to functional fiduciary status.  See In re Moxley, No. 08-46685EDJ7, 2009 WL 4017298, at *2 (Bankr. N.D. Cal. Nov. 18, 2009), ("In Hemmeter, the Ninth Circuit held that the debtor was an ERISA fiduciary by virtue of his membership on the board of directors of the corporation that employed the beneficiaries of the plan, coupled with the fact that the board was a named fiduciary of such plan." (citing In re Hemmeter, 242 F.3d 1186, 1190 (9th Cir. 2001)), aff'd sub nom. Carpenters Pension Tr. Fund for N. California v. Moxley, No. C 10-0756 RS, 2011 WL 1225572 (N.D. Cal. Mar. 31, 2011), aff'd, 734 F.3d 864 (9th Cir. 2013).  The Ninth Circuit held as follows:

> The Plan Participants allege sufficient facts in their complaint that Hemmeter was a fiduciary within the provisions of ERISA. The complaint alleges that Hemmeter was a member of the MK Board of Directors, which was a named fiduciary of the ESOP plan. Thus, the Plan Participants' allegations concerning Hemmeter's ERISA fiduciary duties as to the ESOP Plan are sufficient to withstand Rule 12(b)(6) scrutiny. While Hemmeter was not a named fiduciary of the 401K Plan, the Plan Participants allege that he was a member of the MK board of directors when it wrongfully terminated and transferred the assets of the 401K Plan. Construing this allegation in the light most favorable to the plaintiffs, which we must, it sufficiently alleges an ERISA fiduciary duty to pass muster under a Rule 12(b)(6) analysis.

In re Hemmeter, 242 F.3d at1190.  The Court finds this holding significantly persuasive as to the Plaintiff's arguments, and in contrast to some of the more questionable authority discussed above.

The Court finds sufficient allegations to consider the Hagen Family Defendants, and the ESOP Committee, either named or functional fiduciaries, at this stage of the litigation.  See

<u>Kayes v. Pac. Lumber Co.</u>, 51 F.3d 1449, 1459-60 (9th Cir. 1995) ("PLC's proffered ground for error rests on the contention that where a corporation is the named fiduciary, the persons who act on behalf of the corporation do not become individual fiduciaries by virtue of those acts, even under the functional definition of fiduciary set forth in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)[,] [but] PLC's argument lacks merit . . . [and] [i]nsofar as <u>Confer</u> holds that a corporate officer or director acting on behalf of a corporation is not acting in a fiduciary capacity if the corporation is the named plan fiduciary, we disagree with the Third Circuit's . . . holding [that] is undermined by the decision of this court . . . the text of ERISA, and the agency interpretations of ERISA[;] [t]his court has held corporate officers to be liable as fiduciaries on the basis of their conduct and authority with respect to ERISA plans." (citations omitted))[14]; <u>Walsh v. Reliance Tr. Co.</u>, No. CV-19-03178-PHX-ROS, 2023 WL 1966921, at *18 (D. Ariz. Feb. 13, 2023) ("The Ninth Circuit [in <u>Kayes</u>] rejected this argument in straightforward terms: if an individual 'exercises any authority or control respecting management or disposition of [a plan's] assets,' he will be a fiduciary, regardless whether he was 'exercising discretion on behalf of a corporation' or if he had an 'individual discretionary role[ ].' " (quoting <u>Kayes</u>, 51 F.3d at 1459)).

As Plaintiff highlights, as Plan Administrator, the ESOP Committee's duties include, *inter alia*, "to provide directions to the Trustee with respect to . . . all other matters where called for in the Plan or requested by the Trustee[.]"  (Lite Star ESOP Plan § 13.4(e), ECF No. 33-2 at 69.)  Plaintiff also alleges the ESOP Committee exercises discretionary authority or discretionary control respecting the management and administration of the ESOP.  (Compl. ¶ 17.)

Further, Plaintiff argues "the Hagen Family Defendants were **named** fiduciaries by virtue of their membership on the Board of Directors.  Compl. ¶¶ 18-20."  (Opp'n Hagen 10, citing <u>Zavala I</u>, 398 F. Supp. 3d at 743.)  While Plaintiff appears to argue they are named fiduciaries by

---

[14]  Plaintiff cites <u>Kayes</u>, with a parenthetical indicating it stands for the "holding that 'where a corporation is the named fiduciary, the persons who act on behalf of the corporation' are also fiduciaries."  (Opp'n Hagen 9, quoting <u>Kayes</u>, 51 F.3d at 1459.)  The Court reproduces a greater portion of the holding above that indicates the reasoning flows partly from the functional fiduciary analysis.  While it appears some of these holdings flow from a functional fiduciary consideration, the Court finds sufficient allegations and legal authority to support Plaintiff's positions, and in light of the totality of the legal authority cited by both sides, as discussed above, to find in favor of Plaintiff as to the challenges to the foundational element of fiduciary status of the Defendants at this stage of litigation.

1    membership on both the ESOP Committee and the Board of Directors, like <u>Kayes</u>, the authority

2    cited by Plaintiff is more directly flowing from the functional fiduciary analysis.  In fact, in

3    <u>Zavala I</u>, the court stated "the Ninth Circuit has recognized that under this definition of a

4    [functional] fiduciary, 'where members of an employer's board of directors have responsibility

5    for the appointment and removal of ERISA trustees, those directors are themselves subject to

6    ERISA fiduciary duties, albeit only with respect to trustee selection and retention.' " <u>Zavala I</u>,

7    398 F. Supp. 3d at 743 (quoting <u>Johnson</u>, 572 F.3d at 1076).  "Thus, where a board member is

8    not a 'named fiduciary,' that board member's fiduciary duties under ERISA are limited." <u>Zavala</u>

9    <u>I</u>, 398 F. Supp. 3d at 743.

10          Thus, the Court agrees with Plaintiff that given the allegation the Board of Directors,

11   acting for the Company, appoints the ESOP's Trustee and Plan Administrator (Compl. ¶¶ 19-21),

12   "the Hagen Family Defendants, as Board members, were fiduciaries of the ESOP with respect to

13   the appointment and retention of the Trustee Defendants."   (Opp'n Hagen 10.)   Hagen

14   Defendants respond that, despite trying to obfuscate matters in her brief, Plaintiff recognizes that

15   the Hagen Family Defendants' fiduciary duties to ESOP participants extended *at most* to the

16   appointment and retention of the independent ESOP Trustee.  Hagen Defendants argue that even

17   assuming the Hagen Family Defendants were acting as fiduciaries when appointing the Trustee,

18   the sole question for the dismissal of Count IV is whether the Complaint contains non-

19   conclusory allegations to support a valid claim that any Defendant breached their duty in the

20   appointment and retention of the Trustee.

21          However, flowing from that fiduciary duty, the Court agrees that the Hagen Family

22   Defendants' role as appointing fiduciaries created an obligation to disclose to the Trustee

23   Defendants all facts relevant to the Company's valuation.  The "duty of loyalty is one of the

24   common law trust principles that apply to ERISA fiduciaries, and it encompasses a duty to

25   disclose." <u>Guenther v. Lockheed Martin Corp.</u>, 972 F.3d 1043, 1051 (9th Cir. 2020) (quoting

26   <u>Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan</u>, 504 F.3d 818, 823 (9th Cir. 2007)); <u>Wool</u>

27   <u>v. Sitrick</u>, No. 210CV02741JHNPJWX, 2010 WL 11597947, at *6 (C.D. Cal. Nov. 30, 2010)

28   ("An appointing fiduciary's duties with respect to the appointed fiduciary also logically includes

1  a duty to fully inform the appointed fiduciary so that it may meet its responsibilities under

2  ERISA.").  As Plaintiff highlights, this duty is made explicit in the Plan – the Company (and

3  therefore its Board) has the duty "to communicate such information … to the Trustee as [the

4  Trustee] needs for proper performance of its duties."  (Lite Star ESOP Plan § 14.1(c), ECF No.

5  33-2 at 72.)

6       In turn, as appointing fiduciaries, the Hagen Family Defendants had a duty to monitor

7  their appointees, including the Trustee.  See Solis v. Webb, 931 F. Supp. 2d 936, 953 (N.D. Cal.

8  2012) ("Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their

9  performance."); *see also Questions and answers relating to fiduciary responsibility under the*

10  *Employee Retirement Income Security Act of 1974*, 29 C.F.R. § 2509.75-8 ("Members of the

11  board of directors of an employer which maintains an employee benefit plan will be fiduciaries

12  only to the extent that they have responsibility for the functions described in section 3(21)(A) of

13  the Act.  For example, the board of directors may be responsible for the selection and retention

14  of plan fiduciaries."); see also Zavala II, 2021 WL 5883125, at *11 ("Despite defendants'

15  arguments to the contrary, a review of the applicable caselaw does not establish that co-fiduciary

16  liability is limited only to instances when the actions underlying the fiduciary's participation in or

17  concealing of the breach or the inaction to remedy the breach themselves amount to fiduciary

18  conduct.") (collecting cases).

19       Accordingly, at this stage of the litigation, the Court recommends denying the Hagen

20  Defendants' motion to dismiss based on the underlying fiduciary status.  See Johnson, 572 F.3d

21  at 1076 (courts are to construe ERISA fiduciary status liberally, consistent with ERISA's policies

22  and objectives); In re Hemmeter, 242 F.3d at1190; Guenther, 972 F.3d at 1051; Solis, 931 F.

23  Supp. 2d at 953; Kayes, 51 F.3d at 1459-60;  Ahrensdem, 2022 WL 294394, at *4 n.4.

24       Having established the parameters regarding fiduciary status generally, and having made

25  a recommendation as to the PFS Defendants' and Hagen Defendants' foundation fiduciary status

26  challenges, the Court now turns to the individual causes of action that Defendants make more

27  pointed challenges to.  See Zavala I, 398 F. Supp. 3d at 743 ("[W]here a board member is not a

28  'named fiduciary,' that board member's fiduciary duties under ERISA are limited.").

1      **D.**     **PFS Defendants' Motion to Dismiss the First Cause of Action**

2      The first cause of action is for prohibited transactions in violation of ERISA § 406(a), 29

3 U.S.C. §§ 1106(a), against Defendants Paredes, PFS, Hagen Estate, and Kathleen Hagen

4 Successor.  (Compl. ¶¶ 56-69.)  Section 1106(a) provides in relevant part:

5              **(a) Transactions between plan and party in interest**

6              Except as provided in section 1108 of this title:

7              (1) A fiduciary with respect to a plan shall not cause the plan to
             engage in a transaction, if he knows or should know that such
8              transaction constitutes a direct or indirect—

9                     (A) sale or exchange, or leasing, of any property between
                    the plan and a party in interest;
10

11                     (B) lending of money or other extension of credit between
                    the plan and a party in interest; . . .

12                     (D) transfer to, or use by or for the benefit of a party in
                    interest, of any assets of the plan; or . . .
13

14 29 U.S.C. § 1106(a).  "ERISA § 406(a) begins with the premise that virtually all transactions

15 *between a plan and a party in interest* are prohibited, unless a statutory or administrative

16 exemption applies."  <u>Kanawi v. Bechtel Corp.</u>, 590 F. Supp. 2d 1213, 1222 (N.D. Cal. 2008)

17 (emphasis in original); <u>Gamino</u>, 2021 WL 5104382, at *1 (same).  "A fiduciary who engages in a

18 self-dealing transaction pursuant to 29 U.S.C. § 1108(e) has the burden of proving that he

19 fulfilled his duties of care and loyalty and that the ESOP received adequate consideration . . .

20 [and] [t]his burden is a heavy one."  <u>Howard v. Shay</u>, 100 F.3d 1484, 1488 (9th Cir. 1996).

21 Section 1108 provides a conditional exemption from the prohibited transaction rules for sale of

22 employer securities to or from a plan, if a sale is made for adequate consideration:

23                   Sections 1106 and 1107 of this title shall not apply to the
                  acquisition or sale by a plan of qualifying employer securities . . .
24

25                   (1) if such acquisition, sale, or lease is for adequate consideration
                  (or in the case of a marketable obligation, at a price not less
                  favorable to the plan than the price determined under section
26                   1107(e)(1) of this title) . . .

27 29 U.S.C. § 1108(e).  Adequate consideration is defined as "the fair market of the asset as

28 determined in good faith by the trustee or named fiduciary."  29 U.S.C. § 1002(18)(B).  Section

1108 further provides a conditional exemption for loans that meet the following conditions:

> **(3)** A loan to an employee stock ownership plan (as defined in section 1107(d)(6) of this title), if—
>
>> **(A)** such loan is primarily for the benefit of participants and beneficiaries of the plan, and
>>
>> **(B)** such loan is at an interest rate which is not in excess of a reasonable rate.
>
> If the plan gives collateral to a party in interest for such loan, such collateral may consist only of qualifying employer securities (as defined in section 1107(d)(5) of this title).

29 U.S.C. § 1108(b)(3).  Thus, (b)(3) provides an exemption where the underlying loan is "at an interest rate which is not in excess of a reasonable rate" and is "primarily for the benefit of participants and beneficiaries of the plan."  Id.  "A loan will be considered to bear a reasonable rate of interest if such loan provides the plan with a return commensurate with the interest rates charged by persons in the business of lending money for loans which would be made under similar circumstances."  29 C.F.R. § 2550.408b-1(e).

   In the first cause of action, Plaintiff claims that Mr. Hagen was a party in interest and a fiduciary as to the 2017 ESOP transaction, § 1002(14)(A)(H), and when the stock was sold, had actual or constructive knowledge that the 2017 ESOP Transaction constituted a direct or indirect sale of property between the ESOP and himself as a party in interest, and that the 2017 ESOP Transaction was for more than fair market value and not in the best interests of the ESOP.  (Compl. ¶¶ 59-61.)  Plaintiff claims Mr. Hagen, his estate, and his successors in interest are liable for the violations of § 1106(a)(1)(A) and (D).[15]  Plaintiff alleges "[t]he Trustee caused the ESOP to engage in prohibited transactions in the ESOP Transaction," in violation of § 1106(a)(1)(A), (B), and (D).

   The PFS Defendants move to dismiss the subsection (B) and (D) claims via their Rule 12(b)(6) motion, however, state the remaining subsection (A) claim should also be disposed via their standing challenge, and PFS's challenge that it was not plan fiduciary.  (PFS Mot. 15 n.1.)

---

[15]  To be clear, the Hagen Estate and Kathleen Hagen Successor are the named Hagen Defendants named as to this cause of action.  The Court found in favor of Plaintiff as to the legal successor issue above.

1   However, the Court has already ruled in favor of Plaintiff as to both these challenges, and thus

2   the remaining issues as to the first cause of action is to subsections (B) and (D).  As to the

3   12(b)(6) challenge, PFS Defendants argue that while Plaintiff claims the ESOP financed its

4   purchase of Company stock through a loan from the Company and evidenced by a promissory

5   note with B-K Lighting, (Compl. ¶ 38.)[16], the complaint contains no other facts to support how

6   Defendants violated ERISA § 406(a)(1)(B) by entering into this loan.

7           PFS Defendants, state in their motion that "Although the Ninth Circuit has held that 'an

8   ERISA plaintiff need not plead the absence of exemptions to prohibited transactions,' . . . a court

9   may nonetheless dismiss a cause of action where the defense is apparent from the face of the

10  complaint, . . . or where exhibits attached to the complaint or matters properly subject to judicial

11  notice contradict allegations in the complaint."  (PFS Mot. 15-16.)  To be clear, the Court is

12  unable to locate the "need not plead the absence" language in the cited Ninth Circuit opinion.

13  See Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996).  The closest the Court could find in

14  the Ninth Circuit in relation to Howard, is the following reference to Howard and a citation to the

15  Seventh Circuit as follows:

16              These exemptions are affirmative defenses on which Defendants
                bear the burden of proof. Howard v. Shay, 100 F.3d 1484, 1488-89
17              (9th Cir. 1996). Thus, Dorman "need not plead the absence of
                exemptions to prohibited transactions" and a motion to dismiss
18              may not be granted on this basis unless the defense is obvious from
                the face of the pleadings. See Allen v. GreatBanc Tr. Co., 835 F.3d
19              670, 676 (7th Cir. 2016).

20  Dorman v. Charles Schwab Corp., No. 17-CV-00285-CW, 2018 WL 6803738, at *6 (N.D. Cal.

21  Sept. 20, 2018).  Looking at Allen, the language does appear to derive from the Seventh Circuit's

22  opinion, not from the Ninth Circuit's opinion in Howard.  See Allen v. GreatBanc Tr. Co., 835

23  F.3d 670, 676 (7th Cir. 2016) ("More fundamentally, an ERISA plaintiff need not plead the

24  absence of exemptions to prohibited transactions.  It is the defendant who bears the burden of

25  proving a section 408 exemption.").

26          As noted by the court in Allen, "Five of our sister circuits agree with the position that

---

16  Here, Plaintiff specifically alleges: "The ESOP Transaction was financed primarily through a loan from Mr.
Hagen to B-K Lighting and a corresponding promissory note from the ESOP to B-K Lighting.  Mr. Hagen received
cash and warrants as part of the consideration for the 2015 ESOP Transaction."  (Compl. ¶ 38.)

section 408 exemptions are affirmative defenses, or that the defendant bears the burden of proof, or both." Allen, 835 F.3d at 676 (citing Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 601 n.10 (8th Cir. 2009); Harris v. Amgen, Inc., 788 F.3d 916, 943 (9th Cir. 2015), rev'd on other grounds, 577 U.S. 308, 136 S. Ct. 758, 193 L. Ed. 2d 696 (2016); Elmore v. Cone Mills Corp., 23 F.3d 855, 864 (4th Cir. 1994); Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1215 (2d Cir. 1987) (burden on fiduciary to prove exemption); Donovan v. Cunningham, 716 F.2d 1455, 1467–68 (5th Cir. 1983)).  Although reversed on other grounds, the Ninth Circuit in Harris, stated that "[b]ecause the existence of an exemption under § 1108(e) is an affirmative defense, we can dismiss . . . only if the defense is 'clearly indicated' and 'appear[s] on the face of the pleading.' "  Harris, 788 F.3d at 943 (citations omitted).

Nonetheless, the principle is underlying the holding in Howard, as discussed in Harris. Harris, 788 F.3d at 943 ("In [Howard] we held that because § 1108(e) is an affirmative defense, a defendant has the burden to prove its applicability . . . [c]iting Howard, the Eighth Circuit has held that a plaintiff need not plead in his complaint that a transaction was not exempt under § 1108(e)."); see also Howard, 100 F.3d at 1488 ("A fiduciary who engages in a self-dealing transaction pursuant to 29 U.S.C. § 1108(e) has the burden of proving that he fulfilled his duties of care and loyalty and that the ESOP received adequate consideration . . . [and] [t]his burden is a heavy one."); Robert Lauderdale v. NFP Ret., Inc., No. SACV21301JVSKESX, 2021 WL 3828646, at *10 (C.D. Cal. Aug. 18, 2021) ("The Ninth Circuit has indicated that the exemption codified at 29 U.S.C. § 1108(e) is an affirmative defense . . . [and] [o]ther circuits have also found that the exemptions codified in § 1108 are generally affirmative defenses." (citing Harris, 788 F.3d at 943; Allen, 835 F.3d at 676)).

PFS Defendants note that despite this burden, a court may nonetheless dismiss a cause of action where the defense is apparent from the face of the complaint, In re Wellpoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d 880, 919 (C.D. Cal. 2012), or where exhibits attached to the complaint or matters properly subject to judicial notice contradict allegations in the complaint.  First, the Court "cannot say that the face of the complaint clearly indicates the availability of a § 1108(e) defense."  Harris, 788 F.3d at 943.  As Plaintiff argues, the complaint

contains no allegations that establish Defendants' purported affirmative defense, which requires the following conditions to be met: that the ESOP's loan provided a "reasonable" interest rate and that the loan was "primarily for the benefit of participants and beneficiaries of the plan," 29 U.S.C. § 1108(b)(3).

The In re Wellpoint court faced a particular issue of pleading an excuse or futility to exhaustion, and the particular standards for such, and thus does not find it convincing as to the allegations and sections invoked here.  See In re Wellpoint, 903 F. Supp. 2d at 919 ("Plaintiffs counter that exhaustion of remedies is typically an affirmative defense rather than a pleading requirement . . . [n]onetheless, Courts in this Circuit have placed the burden on a plaintiff seeking excuse from the exhaustion requirement [to] provide support for [the] excuse at the motion to dismiss stage.") (citations and quotation marks omitted); see also Zavala I, 398 F. Supp. 3d at 743 ("[N]o allegations appear within the complaint affirmatively demonstrating that defendant GreatBanc paid adequate consideration[,] [and] [t]o the contrary, the complaint alleges that 'the ESOP paid more than fair market value,' and that the transaction price 'was based on unrealistic management projections and did not adequately reflect the future revenue and earnings given the recurring monensin contamination in Western Milling's animal feed.' ").

Further, even if the Court grants the request for judicial notice, the Court does not find the content of any of the potentially conflicting exhibits or judicially noticeable documents, highlighted by Defendants, would sway the analysis.  See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  The Court first briefly discusses the request for judicial notice.

Plaintiff argues for the same reasons as with the Engagement Agreement, these documents are not incorporated by reference and are not proper subjects for judicial notice, arguing the Complaint: (1) does not refer to either document and (2) does not hinge on the excerpts from the documents upon which the Trustee Defendants rely; and (3) Plaintiff has not had the opportunity to test their authenticity in discovery.

The Court finds that Defendants' request for judicial notice more persuasive than the request regarding the Engagement Agreement.  While not extensively referenced, the complaint does expressly refer to the loan documents.  (See Compl. ¶ 38 ("ESOP Transaction was financed

1  primarily through a loan from Mr. Hagen to B-K Lighting and a corresponding promissory note

2  from the ESOP to B-K Lighting.").).  Further, while Plaintiff claims she has not had the chance

3  to test these documents' authenticity in discovery, as Defendants argue, this is insufficient to

4  avoid incorporation by reference where the Plaintiff has raised no "legally cognizable grounds"

5  to dispute authenticity.  See Korman v. ILWU-PMA Claims Office, No. 2:18-cv-07516- SVW-

6  JPR, 2019 WL 1324021, at *7 (C.D. Cal. Mar. 19, 2019) (quoting Davis, 691 F.3d at 1161)); see

7  also Davis, 691 F.3d at 1161 ("We therefore hold that where the party opposing incorporation by

8  reference argues only that he did not review or have access to the proffered copies, this does not

9  amount to a challenge to those documents' authenticity.").[17]

10      In either regard, the Court agrees with Plaintiff that if the Court takes judicial notice of

11  the documents, they do not establish the PFS Defendants' purported affirmative defense.  PFS

12  Defendants proffer the loan states on its face that the applicable interest rate is the "Applicable

13  Federal Rate."  (PFS Defs.' RJN, ECF No. 23-2 at 1, Ex. B, ECF No. 23-2 at 12.)   The

14  Applicable Federal Rate is what the IRS describes as the "prescribed rate" for federal income tax

15  purposes.  26 U.S.C. § 1274(d), see also Applicable Federal Rates (AFRs) Rulings, available at

16  irs.gov/applicable-federal-rates (last visited July 5, 2023) ("Each month, the IRS provides

17  various prescribed rates for federal income tax purposes . . . known as Applicable Federal Rates

18  (AFRs) . . . .").  PFS thus argues, by the face of the ESOP Note, it is clearly at a reasonable

19  interest because it is at the rate "prescribed" by the Internal Revenue Code.

20      The Court disagrees.  As Plaintiff argues, ERISA does not set a "reasonable" interest rate

21  for purposes of the interest rate exemption under 29 U.S.C. § 1108(b)(3)(B), much less

22  categorically endorse the interest rate established for the Company's loan to the ESOP.  Further,

23  the ESOP Note does not show that the loan was "primarily for the benefit of participants and

24  beneficiaries of the plan."  29 U.S.C. § 1108(b)(3)(A).  Rather, Plaintiff alleges the prohibited

25  transaction was not in the best interests of the ESOP and its participants, (Compl. ¶ 61), and the

---

26  [17]  However, as the Court noted above in discussing the Engagement Agreement, the reliance by the plaintiff in
27  Davis on the particular content of the documents in the complaint was greater.  See id. ("In particular, having based
his allegations on the contents and appearance of the Important Terms & Disclosure Statement, '[Davis] can hardly
28  complain when [Defendants] refer to the same information in their defense.' " (quoting In re Silicon Graphics Inc.
Sec. Litig., 183 F.3d at 986).

1  transaction debt was excessive, (Compl. ¶ 42).  Thus, Plaintiff submits at best, a fact issue exists

2  that cannot be resolved before discovery.  See Placht, No. 21 C 5783, 2022 WL 3226809, at *10

3  (finding that given a plaintiff need not plead the absence of an exemption, "Plaintiff thus did not

4  need to plead that any exemption did not apply[,] [a]nd her allegations do not affirmatively plead

5  that either exemption applies, i.e., that consideration was incontrovertibly adequate or that the

6  loan was at a reasonable rate of interest and primarily benefited the participants.").

7      Defendants reply they do not contend that Plaintiff bears the burden of pleading around

8  affirmative defense, but rather that the complaint and documents properly incorporated by

9  reference establish the existence of an affirmative defense to Plaintiff's claim under §

10  406(a)(1)(B).  However, Defendants provide no caselaw to support the proposition that this is

11  clearly a reasonable rate for this loan simply because it tracked the AFR.  See 29 C.F.R. §

12  2550.408b-1(e) ("A loan will be considered to bear a reasonable rate of interest if such loan

13  provides the plan with a return commensurate with the interest rates charged by persons in the

14  business of lending money for **loans which would be made under similar circumstances**.")

15  (emphasis added).  Indeed, the regulations provide examples that demonstrate the determination

16  could be very fact dependent.[18]  The Court finds this presents a fact issue, and rules in favor of

17  Plaintiff for this reason.

18      Plaintiff also argues the allegations do not hinge on the "reasonableness" of the ESOP

19  loan interest rate but rather that the ESOP incurred "excessive debt" because the ESOP

20  Transaction price was inflated (and therefore the ESOP loan required to finance the Transaction

21  was excessive) and was not in the best interest of the ESOP and its participants (Compl. ¶¶ 38–

22  39, 42, 61).  See Zavala v. Kruse-W., Inc., 562 F. Supp. 3d 1059, 1072 (E.D. Cal. 2021) ("Zavala

23

---

24  [18]  The regulations provide, among others, the following example: "Example 1: Plan P makes a participant loan to A
at the fixed interest rate of 8% for 5 years. The trustees, prior to making the loan, contacted two local banks to

25  determine under what terms the banks would make a similar loan taking into account A's creditworthiness and the
collateral offered. One bank would charge a variable rate of 10% adjusted monthly for a similar loan. The other bank

26  would charge a fixed rate of 12% under similar circumstances. Under these facts, the loan to A would not bear a
reasonable rate of interest because the loan did not provide P with a return commensurate with interest rates charged

27  by persons in the business of lending money for loans which would be made under similar circumstances. As a
result, the loan would fail to meet the requirements of section 408(b)(1)(D) and would not be covered by the relief

28  provided by section 408(b)(1) of the Act." 29 C.F.R. § 2550.408b-1(e).

1  III") ("[T]he allocation of shares released to the ESOP participants was based on the amount of

2  the transaction loan, and thus the allegedly inflated value ascribed . . . If the alleged valuations

3  prove to be accurate, plaintiff will have suffered an injury in fact by receiving fewer shares.").

4      Defendants reply that Plaintiff's focus on the excessive debt instead of the interest rate

5  misses the point, as ERISA § 406(a)(1)(B) claims stemming from a loan to an ESOP, and the

6  corresponding exemption allowing for such loans in § 408(b)(3), have nothing to do with the

7  *amount* of the loan.  See 29 U.S.C. § 1108(b)(3).  Rather, Defendants argue Plaintiff's claim that

8  the debt was excessive pertains to her claim under a different subsection of § 406(a)(1) (and the

9  corresponding exemption), that the ESOP overpaid for the stock it purchased.  See 29 U.S.C. §

10  1106(a)(1)(A), § 1108(e) (requiring that a plan's acquisition of qualified employer securities be

11  for "adequate consideration").  Defendants argue Zavala is irrelevant because that case did not

12  address whether plaintiff sufficiently pled a claim under § 406(a)(1)(B).

13      The Court finds that even accepting Defendants' arguments in this regards as to the

14  interest rate versus the amount of the loan, the excessiveness of the loan as being overvalued,

15  still touches on the second prong of the loan not being in the best interest of the ESOP and its

16  participants.  Even accepting that Plaintiff's framing of the interest rate claim as hinging on the

17  excessiveness of the loan is not directly applicable under the exemption in Zavala, the holding is

18  still relevant as to the consideration of the affirmative defense overall.  See Zavala I, 398 F.

19  Supp. 3d at 743 ("Whether these allegations are true will, presumably, be resolved during this

20  litigation.  At present, however, the court finds nothing on the face of the complaint establishing

21  that the consideration paid in the transaction at issue was adequate.").

22      Accepting this framing of the allegations as true and inferences in favor of Plaintiff at this

23  stage supports Plaintiff's position.  Accordingly, while below the Court further discusses

24  additional arguments as to Section (a)(1)(D), at this stage of the pleadings, the Court rules in

25  favor of Plaintiff as to the first cause of action.  See Gamino, 2021 WL 162643, at *4 ("[T]he

26  'prohibited transaction' exemptions are *affirmative defenses* to ERISA liability, meaning the

27  burden of proof 'rests with the defendant.' " (quoting Zavala I, 398 F. Supp. 3d at 742));

28  Marshall v. Northrop Grumman Corp., No. CV 16-06794 AB (JCX), 2017 WL 2930839, at *9

1   (C.D. Cal. Jan. 30, 2017) (Plaintiff "need not plead the absence of exemptions to the prohibited

2   transactions." (quoting Allen, 835 F.3d at 676)); Threadford v. Horizon Tr. & Inv. Mgmt., N.A.,

3   No. 2:20-CV-00750-RDP, 2021 WL 5105330, at *2 (N.D. Ala. Oct. 29, 2021) ("Plaintiffs'

4   complaint does not merely allege that consideration was paid, 29 U.S.C. § 1108(e); rather, it

5   asserts that the Plan overpaid  . . . [t]herefore, their pleading is sufficient to show at this stage

6   that the statutory exception does not apply."); Howard, 100 F.3d at 1488 (fiduciary who engages

7   in self-dealing transaction has heavy burden of proving they fulfilled duties); id. at 1488–89

8   ("Although securing an independent assessment from a financial advisor or legal counsel is

9   evidence of a thorough investigation . . . it is not a complete defense to a charge of imprudence . .

10  . [a]s Judge Friendly has explained, independent expert advice is not a 'whitewash[,]' . . . [t]he

11  fiduciary must (1) investigate the expert's qualifications, [] (2) provide the expert with complete

12  and accurate information, [] and (3) make certain that reliance on the expert's advice is

13  reasonably justified under the circumstances."). [19]

14      1.   The Court Recommends Denying Defendants' Motion to Dismiss Based on
           Argument Regarding Subjective Intent Under 29 U.S.C. § 1106(a)(1)(D)

15

16      The Court now separately addresses additional arguments as to 29 U.S.C. §

17  1106(a)(1)(D).  "To state a claim under § 406(a)(1)(D), the plaintiff must allege that the

18  defendant 'cause[d] the plan to engage in a transaction, [which he knows or should know]

19  constitutes a direct or indirect ... transfer to, or use by or for the benefit of a party in interest, of

20

21  [19]  The Court recognizes these cases deal with different exemptions, however, the principles underlying the
    affirmative defense doctrine under ERISA are clear.  Under the applicable legal standards, the Court agrees with

22  Plaintiff that the complaint sufficiently alleges the first cause of action in that it alleges the PFS Defendants violated
    ERISA's prohibited transaction rules by causing the ESOP to engage in several transactions with parties in interest

23  (Compl. ¶¶ 56–69), and Mr. Hagen was a party in interest as the sole owner of the Company.  See 29 U.S.C. §
    1002(14)(E); Kanawi, 590 F. Supp. 2d at 1222 ("ERISA § 406(a) begins with the premise that virtually all

24  transactions between a plan and a party in interest are prohibited, unless a statutory or administrative exemption
    applies.") (emphasis in original).  Thus, given the standards applicable to affirmative defenses in the Ninth Circuit,

25  Plaintiff plausibly alleges Mr. Hagen's sale of his B-K Lighting stock to the ESOP and the related loan he made to
    the ESOP violated sections 406(a)(1)(A), (B) and (D) of ERISA.  See 29 U.S.C. § 1106(a)(1)(A), (B), (D); Gamino,

26  2021 WL 162643, at *4 ("The failure to include allegations establishing the 'adequate consideration' exemption has
    been held not to warrant dismissal, [] because 'a plaintiff generally has no duty to plead around an affirmative

27  defense.' " (quoting Greene v. Greyhound Lines Inc., No. 20-CV-07613-TSH, 2020 WL 7049156, at *2 (N.D. Cal.
    Oct. 30, 2020))); id. ("[T]he complaint in this case alleges 'the ESOP paid more than fair market value' in the 2015

28  transaction . . . [t]hus, the Court concludes that Plaintiff has sufficiently alleged that Defendant [] caused the ESOP
    to engage in a prohibited transaction.").  The Court already made recommendations concerning the underlying
    fiduciary status, and the preliminary Kathleen Hagen Legal Successor challenge above.

1   any assets of the plan.' " <u>Hurtado v. Rainbow Disposal Co.</u>, No. 817CV01605JLSDFM, 2018

2   WL 3372752, at *10 (C.D. Cal. July 9, 2018) (quoting 29 U.S.C. § 1106(a)(1)(D)).

3        PFS Defendants argue this prohibited transaction provision requires more than a

4   "minimal, incidental, or fortuitous" benefit to a party in interest, rather, it requires a "subjective

5   intent to benefit a party in interest." <u>Reich v. Compton</u>, 57 F.3d 270, 279-80 (3d Cir. 1995);

6   <u>Sweda v. Univ. of Pennsylvania</u>, 923 F.3d 320, 339 (3d Cir. 2019); <u>Jordan v. Michigan Conf. of</u>

7   <u>Teamsters Welfare Fund</u>, 207 F.3d 854, 861 (6th Cir. 2000).  Defendants argue that absent such

8   a requirement, "section 406(a)(1)(D) would appear to prohibit a fiduciary from causing a plan to

9   engage in any transaction that he or she should know would result in any form or degree of

10  benefit for any party in interest, even if the transaction would be highly advantageous for the

11  plan and the benefit for the party in interest would be unintended, indirect, and slight." <u>Reich</u>, 57

12  F.3d at 279.  Defendants argue nothing in the complaint alleges any facts that Defendants

13  approved the ESOP Transaction for the purpose of benefiting a party in interest, and while the

14  Plaintiffs are critical of Defendants approving the ESOP Transaction, argue Plaintiff alleges

15  nothing to support an inference that their conduct was for some subjective intent to benefit the

16  sellers.  <u>See Jordan</u>, 207 F.3d at 861 ("If a showing of subjective intent were not required,

17  section 406(a)(1)(D) would produce unreasonable consequences that we feel confident Congress

18  could not have wanted.") (internal citations and quotations omitted).

19       Plaintiff responds this section of ERISA contains no intent element.  <u>See</u> 29 U.S.C. §

20  1106(a)(1)(D).  Plaintiff also provides caselaw from the Central District (although Plaintiff

21  mistakenly proffers the Eastern District of California), that has held a plaintiff need not allege a

22  "subjective intent" to "benefit a party in interest" to plead such prohibited transaction.  <u>See</u>

23  <u>Lauderdale v. NFP Ret., Inc.</u>, No. SACV21301JVSKESX, 2022 WL 422831, at *20 (C.D. Cal.

24  Feb. 8, 2022) ("The only authority flexPATH cites to support an intent requirement is an out of

25  circuit case that required allegations of subjective intent to benefit a party in interest to support a

26  prohibited transaction claim [<u>Sweda</u>,] [and] [t]he Court is not inclined to impose an intent

27  requirement that is not in the text of the statute."); <u>Mills v. Molina Healthcare, Inc.</u>, No. 2:22-

28  CV-01813-SB-GJS, 2022 WL 17825534, at *14 (C.D. Cal. Dec. 8, 2022) ("[Defendants] cite no

authority within the Ninth Circuit applying an intent requirement, and, like the court in Lauderdale, this Court 'is not inclined to impose an intent requirement that is not in the text of the statute.' ") (citation omitted).  Plaintiff requests this Court similarly reject the invitation to read an intent requirement into the statute where none exists, which Plaintiff argues undermines ERISA's *per se* prohibited transactions.

Even assuming, *arguendo*, this Court finds subjective intent must be pled, Plaintiff argues the complaint contains sufficient facts to create a reasonable inference that the Trustee Defendants intended to benefit the Hagen Family Defendants where they caused the prohibited transaction, directing the Court to allegations in the complaint Plaintiff proffers details unnecessary financial expenditures that benefitted the Hagen Family Defendants to the detriment of the Company and the ESOP's stake.  (See Compl. ¶¶ 26, 33–34.)

Defendants reply that Lauderdale did not conduct a sufficient analysis of the intent requirement; that moreover, the court in that case concluded the plaintiff *did* sufficiently allege the defendant's intent to benefit itself, and contrary to Plaintiff's argument (ECF No. 34 at 18), the Complaint (and paragraphs 26, 33-34 in particular) do not allege subjective intent anywhere in the Complaint.  See Lauderdale, 2022 WL 422831, at *20 ("However, even if [such requirement] did exist, the Court agrees that Plaintiffs have sufficiently alleged that flexPATH intended to benefit itself.").  Defendants further argue that the conclusion in Lauderdale is not persuasive in light of the Supreme Court's prior interpretation of § 406(a)(1)(D) in Lockheed Corp. v. Spink, 517 U.S. 882, 892–93 (1996), which rejected a hyper-literal reading of the statute because it would contravene section 406(a)(1)'s intended purpose of prohibiting deals struck with plan insiders rather than preventing permissible transactions.  See also Sweda, 923 F.3d at 337 (discussing Lockheed).  In addition, as discussed in the Third Circuit's decision in Reich, the plain text of § 406(a)(1)(D) supports the subjective intent requirement as demonstrated by the phrase "for the benefit," which is ordinary terms meaning something is done "for the purpose of benefiting."  57 F.3d at 279.

Significantly, as noted in the Defendants' reply briefing, on August 4, 2023, subsequent to the filing of the motion to dismiss, the Ninth Circuit issued the decision in Bugielski v. AT&T

1    Servs., Inc., 76 F.4th 894, 905-906 (9th Cir. 2023).  (See PFS Reply 13 n.3.)  While Defendants

2    acknowledge the Ninth Circuit declined to adopt the Third Circuit's intent requirement in Sweda,

3    Defendants contend the Ninth Circuit's analysis focused on a different subsection, §

4    406(a)(1)(C), rather than §406(a)(1)(D) at issue here, and subsection 406(a)(1)(C) does not

5    contain the language "for the benefit of a party in interest," on which the Third Circuit in Reich

6    concluded that a subjective intent requirement applied to Section 406(a)(1)(D).

7         Although Bugielski focused on a different subsection, and Defendants' arguments have

8    merit, the Ninth Circuit's decision that issued after the Defendants' motion to dismiss was filed

9    sways the Court to recommend in favor of Plaintiff as to this issue.  The Ninth Circuit not only

10   discussed the holing in Sweda, but also the Supreme Court's decision in Lockheed.  The Court

11   does not find the absence of the language in the particular subsection dispositive given the Ninth

12   Circuit considered the overall reasoning of such cases, and the Ninth Circuit's discussion as a

13   whole leads the Court to find the decision persuasive as to the relevant subsection as well.

14        The Ninth Circuit addressed the general tenor of the argument in Lockheed that

15   Defendants cite to.  Bugielski, 76 F.4th at 904-05 ("AT&T relies on Lockheed's statement that §

16   406 bars transactions 'likely to injure the pension plan,' . . . to support its argument that §

17   406(a)(1)(C) was not meant to prohibit 'the type of ubiquitous, arm's-length service transactions

18   involved here[,]' [and] [f]or several reasons, we disagree . . . [and] do not believe Lockheed

19   justifies a judicial override of § 406(a)(1)(C)'s unambiguous text.").  The Ninth Circuit rejected

20   the reasoning relied on in Sweda, and additionally cited to Lauderdale.  Bugielski, 76 F.4th at

21   905-906.  The Ninth Circuit states it found "unpersuasive the Third Circuit's decision in Sweda,"

22   and "disagree[d] with this approach, which does not follow the statutory text.  Bugielski, 76

23   F.4th at 906 ("The Supreme Court has reiterated that 'a reviewing court's task is to apply the text

24   [of the statute], not to improve upon it.' " (quoting EPA v. EME Homer City Generation, L.P.,

25   572 U.S. 489, 508–09 (2014))).  The Ninth Circuit considered that "[d]espite recognizing that

26   each recordkeeper was a 'party in interest' and that the transaction at issue fit within the terms of

27   § 406(a)(1)(C), the Third Circuit 'decline[d]' to apply the text of § 406, opting instead to create

28   an intent requirement that the statute does not demand."  Bugielski, 76 F.4th at 906 (quoting

Sweda, 923 F.3d at 336–37, 339).  The Ninth Circuit stated "[w]e believe our reading is more faithful to the text of § 406(a)(1)(C), which does not include any intent requirement."  Bugielski, 76 F.4th at 906 (citing Lauderdale, 2022 WL 422831, at *20).

Finally, while it did look at a different section, the Ninth Circuit indeed went on to further reinforce the holding and rejection of the reasoning of Sweda, relying on the more general principle applicable to Section 406 as a whole, stating it was for Congress to impose such requirement.  Bugielski, 76 F.4th at 906-07 ("Moreover, in refusing to adopt "a per se rule," . . . the [Sweda] court overlooked that the Supreme Court had already recognized that § 406 creates a per se rule." (citing Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 245 (2000))); see also 76 F.4th at 907 ("And even assuming § 408(b)(2) 'require[s] a fiduciary to plead reasonableness as an affirmative defense,' Sweda, 923 F.3d at 336, the concern 'that putting employers to the work of persuading factfinders that their choices are reasonable makes it harder and costlier to defend ... ha[s] to be directed at Congress, which set the balance where it is' . . . [and] Congress has already set the balance here." (quoting Meacham v. Knolls Atomic Power Lab'y, 554 U.S. 84, 101–02 (2008))).

While the Court shares some of the concerns of Defendants, and while there is an argument that a different decision could be made based on the different subsection involved, given the apparent split of the circuit courts on the issue, the Court finds in favor of Plaintiff given the Ninth Circuit's decision and overall reasoning in rejecting Sweda.  See Cunningham v. Cornell Univ., 86 F.4th 961, 973–74 (2d Cir. 2023) (noting "[s]everal courts," including the Third, Tenth, and Seventh Circuits, "have declined to read ERISA [in this manner] because it would prohibit fiduciaries from paying third parties to perform essential services in support of a plan," including "recordkeeping and administrative services," . . . [and that] Two circuits [the Ninth and Eighth], on the other hand, have embraced the expansive reading of the statute that these other circuits have rejected as absurd.");[20] see also Bugielski v. AT&T Services, Inc.: The

[20]  The Court notes the Second Circuit took an approach of reading some of the affirmative defenses into the statute.  See Cunningham, 86 F.4th at 975 ("While we agree that the language of § 1106(a)(1) cannot be read to demand explicit allegations of 'self-dealing or disloyal conduct,' we do not agree with the Eighth Circuit that, at the pleadings stage, the § 1108 exemptions should be understood merely as affirmative defenses to the conduct proscribed in § 1106(a).  To the contrary, we conclude that at least some of those exemptions—particularly, the

60

1  *Ninth Circuit Takes § 406 Literally*, 31 No. 3 ERISA Litig. Rep. NL 1 ("[T]he Ninth Circuit in

2  [Bugielski] . . . held that ERISA § 406(a)(1)(C) broadly prohibits even arms'-length service

3  transactions—expressly rejecting the reasoning in Sweda and minimizing and distinguishing

4  Oshkosh.  In addition to this clear circuit split, the panel interpreted the requirements of ERISA §

5  408(b)(2)—the most obvious exemption to § 406(a)(1)(C)—in a manner that, depending on how

6  the decision itself is read, could complicate efforts by defendants to take advantage of that

7  exemption.").

8          Accordingly, the Court finds the Ninth Circuit's decision, issued after the motions to

9  dismiss were filed, weighs in favor of rejecting the PFS Defendants' argument to require a

10  "subjective intent to benefit a party in interest" in § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

11  See Bugielski, 76 F.4th at 907 ("This reading is consistent with ERISA's broader aim to protect

12  plan participants, as well as §§ 406 and 408's aim to increase transparency around service

13  providers' compensation and potential conflicts of interest.").  The Court thus recommends PFS

14  Defendants' motion to dismiss the first cause of action as to 29 U.S.C. § 1106(a)(1)(D), be

15  denied.

16          **E.       Hagen Defendants' Motion to Dismiss the First and Second Causes of Action**

17          Although the Hagen Defendants' motion principally argued the failure to plead the

18  element of the fiduciary status, which the Court addressed above in favor of Plaintiff generally,

19  the Court now turns to briefly consider the issue as to the more specific challenge as to the first

20  and second cause of action.  (See Hagen Mot. 16-17.)

21          The first cause of action is brought pursuant to Section 1106(a), governing transactions

22  between a plan and a party in interest.  The Court already discussed the first cause of action and

23  the legal standards governing it above, supra Section IV(D).

24          The second cause of action is for prohibited transaction in violation of ERISA § 406(b),

25  29 U.S.C. § 1106(b), brought against Defendants Hagen Estate, and Kathleen Hagen Successor.

26  _____

27  exemption for reasonable and necessary transactions codified by § 1108(b)(2)(A)—are incorporated into § 1106(a)'s
   prohibitions.  And, accordingly, we hold that to plead a violation of § 1106(a)(1)(C), a complaint must plausibly
   allege that a fiduciary has caused the plan to engage in a transaction that constitutes the "furnishing of ... services ...

28  between the plan and a party in interest" *where that transaction was unnecessary or involved unreasonable
   compensation*. 29 U.S.C. §§ 1106(a)(1)(C), 1108(b)(2)(A).").

(Compl. ¶¶ 70-81.)   Section 1106(b) governs prohibited transactions between a plan and a fiduciary, providing:

> (b) Transactions between plan and fiduciary
>
> A fiduciary with respect to a plan shall not—
>
> (1) deal with the assets of the plan in his own interest or for his own account,
>
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
>
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).

The Court found above there are sufficient allegations to consider the Hagen Family Defendants, and the ESOP Committee, either named or functional fiduciaries, at this stage of the litigation.  See Kayes, 51 F.3d at 1459-60 (9th Cir. 1995) ("This court has held corporate officers to be liable as fiduciaries on the basis of their conduct and authority with respect to ERISA plans."); Walsh, 2023 WL 1966921, at *18 ("The Ninth Circuit [in Kayes] rejected this argument in straightforward terms: if an individual 'exercises any authority or control respecting management or disposition of [a plan's] assets,' he will be a fiduciary, regardless whether he was 'exercising discretion on behalf of a corporation' or if he had an 'individual discretionary role[].' " (quoting Kayes, 51 F.3d at 1459)).  The Court turns to consider the challenge of whether that status appropriately extends to the allegations in the first and second cause of action.

Again, under the applicable legal standards, the Court finds the complaint sufficiently alleges the first cause of action in that it alleges the PFS Defendants violated ERISA's prohibited transaction rules by causing the ESOP to engage in several transactions with parties in interest (Compl. ¶¶ 56–69), and Mr. Hagen was a party in interest as the sole owner of the Company. See 29 U.S.C. § 1002(14)(E); Kanawi, 590 F. Supp. 2d at 1222 ("ERISA § 406(a) begins with the premise that virtually all transactions *between a plan and a party in interest* are prohibited, unless a statutory or administrative exemption applies.") (emphasis in original).  Thus, given the

standards applicable to affirmative defenses in the Ninth Circuit, Plaintiff plausibly alleges Mr. Hagen's sale of his B-K Lighting stock to the ESOP and the related loan he made to the ESOP violated sections 406(a)(1)(A), (B) and (D) of ERISA.  See 29 U.S.C. § 1106(a)(1)(A), (B), (D); Gamino, 2021 WL 162643, at *4 ("The failure to include allegations establishing the 'adequate consideration' exemption has been held not to warrant dismissal, [] because 'a plaintiff generally has no duty to plead around an affirmative defense.' " (quoting Greene v. Greyhound Lines Inc., No. 20-CV-07613-TSH, 2020 WL 7049156, at *2 (N.D. Cal. Oct. 30, 2020))); id. ("[T]he complaint in this case alleges 'the ESOP paid more than fair market value" in the 2015 transaction . . . [t]hus, the Court concludes that Plaintiff has sufficiently alleged that Defendant [] caused the ESOP to engage in a prohibited transaction.").

Turning again to Defendants' reliance on Zavala I, that court found that because the complaint alleged the Board Defendants appointed the trustee, the "Board defendants are subject to ERISA fiduciary duties insofar as those duties related to the appointment of [the Trustee,]" but that the § 1106(b) claim was "unrelated to the appointment of [the Trustee]."  Zavala I, 398 F. Supp. 3d at 743-744.  The court found that as for the prohibited transaction claim under § 1106(b), "that cause of action relates to the sale of Kruse-Western's stock, contending that because the Board defendants were fiduciaries of the ESOP, any transaction between the ESOP and themselves effectively amounted to self-dealing in violation of ERISA."  Id. at 744.  The court stated, "[s]uch an allegation is not cognizable under § 1106(b) unless the complaint plausibly alleges that the Board defendants exercised control over the ESOP and caused it to buy the Kruse-Western stock."  Id. (holding complaint failed to do so, and opposition's attempt to fill in the gaps also failed, and stating "even if the court were to consider such material, the allegation that the Board defendants 'orchestrated' the purchase of Kruse-Western stock is conclusory, and therefore not entitled to the presumption of truth.").

Plaintiff argues the Zavala I decision is factually distinguishable from the present case, as unlike the board defendants there who were fiduciaries solely with respect to the appointment and retention of the trustee, Mr. Hagen was also a fiduciary as a member of the ESOP Committee, which exercises discretionary authority and control respecting the management and

1    administration of the ESOP.  (See Compl. ¶ 17.)  Citing the to the Plan documents, Plaintiff

2    argues the ESOP Committee's duties thus go beyond appointing the Trustee and include

3    "provid[ing] directions to the Trustee . . . on all other matters where called for in the Plan or

4    requested by the Trustee[.]"  (Lite Star ESOP Plan § 13.4(e), ECF No. 33-2 at 69.)  Therefore,

5    Plaintiff contends the ESOP Committee is both a named fiduciary and a functional fiduciary

6    which "exercise[s] control over the ESOP," Zavala I, 398 F. Supp. 3d at 744, and as a member of

7    the ESOP Committee, Mr. Hagen assumed those same fiduciary duties.  The Court finds this

8    supports Plaintiff's position.

9        Further, as Plaintiff highlights, although Hagen Family Defendants do not cite this

10    portion of the decision, Zavala I also dismissed a prohibited transaction claim brought under §

11    1106(a) against selling shareholder defendants.  Zavala I, 398 F. Supp. 3d at 740-41.  However,

12    unlike here, the complaint in Zavala I "contain[ed] no allegations indicating that [the selling

13    shareholder defendants] are themselves fiduciaries to the ESOP."  Id. at 740 ("Rather than

14    alleging that the selling shareholders are fiduciaries, the complaint instead defines the selling

15    shareholders as 'parties in interest' within the meaning of 29 U.S.C. § 1002(14).").  Here by

16    contrast, the Court agrees with Plaintiff, that taking the allegations as true and reasonable

17    inferences in her favor, the complaint sufficiently alleges that Mr. Hagen – the selling

18    shareholder – was also a fiduciary to the ESOP by virtue of his membership on the ESOP

19    Committee and the Board of Directors.  (Compl. ¶ 18 ("As a result of his membership on the

20    Board of Directors, Mr. Hagen was a fiduciary of the ESOP within the meaning of ERISA §

21    3(21)(A), 29 U.S.C. § 1002(21), and a 'party in interest' as to the ESOP as defined in ERISA §

22    3(14), 29 U.S.C. § 1002(14).").

23        As discussed above, Foster involved a motion for summary judgment not a motion to

24    dismiss, and as Plaintiff highlights, considered "whether a reasonable trier of fact could find that

25    [the director defendants] were functional fiduciaries based on their duty to monitor" the trustee,

26    whereas here the complaint alleges, for example, that Mr. Hagen was a named fiduciary by virtue

27    of his membership on the ESOP Committee as well as his role on the Board of Directors.  Foster,

28    2020 WL 3639648 at *6.  The Court agrees that Mr. Hagen's fiduciary duties are alleged to have

went beyond those of an appointing fiduciary.  The Court similarly found above that Vang was not helpful as it was a *pro se* screening order that contained no specific facts even barely alleging how the individual defendants were fiduciaries.  See Vang, 2023 WL 3168513, at *3.

Additionally, as Plaintiff highlights, courts in this circuit have held that "§ 406(b) does not have a causal element; it requires only that the fiduciary received consideration from a transaction involving assets of the plan."  Gamino, 2021 WL 162643, at *6 (quoting Hurtado, 2018 WL 3372752, at *11).  In Gamino, the court rejected a similar argument as here: that plaintiff's § 406(b) claim failed because the selling shareholder defendant "was not the fiduciary who caused the ESOP to purchase stock or to engage in any challenged transaction."  Id. (citation omitted).  The court found the plaintiff had sufficiently pled a § 406(b) claim because the complaint alleged the selling shareholder defendant received consideration from a transaction involving assets of the plan.  Id.  The same is true here in that the Complaint alleges that Mr. Hagen received "millions of dollars in cash, notes, and warrants for the Company stock he sold" to the ESOP.  (Compl. ¶¶ 61, 80.)  The Court finds this authority persuasive and weighs in favor of denying the Defendants' motion to dismiss.

For these reasons, taking the allegations as true and reasonable inferences in Plaintiff's favor, the Court recommends denying the Hagen Defendants' motion to dismiss as to the first and second causes of action.

### F.   PFS Defendants' Motion to Dismiss the Third Cause of Action

The third cause of action is for breach of fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a)(1), against Defendants Paredes and PFS.  (Compl. ¶ 82-91.)

Section 1104(a) provides the following parameters for fiduciary duties:

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

1

2

(ii)  defraying  reasonable  expenses  of administering the plan;

3

4

(B) with the care, skill, prudence, and diligence under  the  circumstances  then  prevailing  that  a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

5

6  29 U.S.C. § 1104(a).  Thus, the fiduciary must act "solely in the interest of the participants and

7  beneficiaries."  29 U.S.C. § 1104(a)(1) see Howard, 100 F.3d at 1488-89 (ERISA fiduciary

8  duties are the "highest known to the law"); In re Sutter Health ERISA Litig., 2023 WL 1868865

9  at *11 ("duty of loyalty requires fiduciaries to make decisions 'with an eye single toward

10  beneficiaries' interests.' " (quoting Pegram v. Herdrich, 530 U.S. 211, 235 (2000))).

11  The  third  cause  of  action  alleges  PFS  Defendants  breached  the  fiduciary  duties  of

12  prudence and loyalty under ERISA by failing to conduct "an appropriate investigation," which

13  would have revealed: (i) that the underlying valuation used for the transaction did not reflect fair

14  market value; and (ii) that the "ESOP Transaction was not in the best interest of the ESOP

15  participants.  (Compl. ¶¶ 82-91.)  Plaintiff alleges "the Trustee was required to conduct a

16  thorough and independent review of any 'independent appraisal,' to make certain that reliance on

17  any and all valuation experts' advice was reasonably justified under the circumstances of the

18  ESOP Transaction; to investigate the credibility of the management assumptions and earnings

19  projections underlying the valuation, and to make an honest, objective effort to read and

20  understand the valuation reports and opinions and question the methods and assumptions that did

21  not make sense." (Compl. ¶ 87.)  Plaintiff alleges appropriate investigation would have revealed

22  the valuation used for the ESOP Transaction and the price ultimately paid by the ESOP did not

23  reflect the fair market value.  (Compl. ¶ 88.)  Plaintiff alleges that "[a]fter the ESOP Transaction,

24  the Trustee was obligated to remedy the ESOP's overpayment, including as necessary correcting

25  the prohibited transaction by attempting to restore the amount overpaid by the ESOP back to the

26  ESOP, and also including, if necessary, by filing a lawsuit on behalf of the ESOP." (Compl. ¶

27  90.)  Plaintiff further alleges that the "Trustee was obligated to take action when the Hagen

28  Family Defendants continued to mismanage and misappropriate Company funds in the wake of

1  the ESOP Transaction, including by, *inter alia*, (i) purchasing a jet which Coarsegold leased to

2  B-K Lighting and used almost exclusively for family travel, (ii) paying Douglas Hagen $500,000

3  per year while he performed no significant services for the Company, and (iii) making monthly

4  payments to Mr. Sloan and Ms. Minard for a forklift that did not exist, and (iv) refusing to

5  distribute the proceeds of Mr. Hagen's life insurance policy—which belong to the Company—to

6  the Company."  (Id.)

7         PFS Defendants argue that Plaintiff has failed to plausibly allege Defendants acted self-

8  interestedly or to further a third party's interests rather than with an eye single to the interests of

9  the participants and beneficiaries of the plan.  PFS Defendants argue the third cause of action

10  fails to allege *how* the process undertaken by Paredes and PFS deviated from the appropriate

11  standard, thereby failing to state a claim for breach of fiduciary duties.  PFS Defendants argue a

12  "prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the

13  fiduciary's choices did not meet ERISA's requirements."  Pension Ben. Guar. Corp. ex rel. St.

14  Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 720 (2d

15  Cir. 2013) ("PBGC"); Wehner v. Genentech, Inc., No. 20-CV-06894-WHO, 2021 WL 507599,

16  at *4 (N.D. Cal. Feb. 9, 2021).

17         However, these decisions involved a prospective plaintiff's access to information

18  concerning investments, that would typically come through required disclosures.  See Wehner,

19  2021 WL 507599, at *4 ("Although details about a fiduciary's methods and actual knowledge

20  tend to be 'in the sole possession of [that fiduciary],' 'ERISA imposes extensive disclosure

21  requirements on plan administrators, thus giving plan beneficiaries (i.e., prospective plaintiffs)

22  the opportunity to find out how the fiduciary invested the plan's assets[,]' [and] . . . [a]rmed with

23  this extensive data about a fiduciary's investment decisions, a prospective plaintiff must show,

24  through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet

25  ERISA's requirements.' " (quoting PBGC, 712 F.3d at 719-720)).

26         In the Second Circuit decision cited in Wehner and by the PFS Defendants here, in

27  addition to the standards generally applying to access to investment information from

28  disclosures, the court explained that the plaintiff there, given they were a plan administrator, was

held to an even higher pleading standard, and this is where the "[a]rmed with this extensive data" language derives from.  See PBGC, 712 F.3d at 720 ("[A] plaintiff's access to this information is even more apparent where, as here, the plaintiff is the plan administrator responsible for issuing these statutorily required disclosures and statements.").  The Second Circuit stated that, "[a]rmed with this extensive data about a fiduciary's investment decisions, a prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's choices did not meet ERISA's requirements."  Id.

On the other hand, the Second Circuit also recognized that "for a plaintiff relying on inferences from circumstantial allegations, this standard generally requires the plaintiff to allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently."  Id.; see also Wehner, 2021 WL 507599, at *4 ("Courts recognize that the omission of factual allegations referring directly to a plan fiduciary's 'knowledge, methods, or investigations at the relevant times' is 'not fatal to a claim alleging a breach of fiduciary duty' because 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences[,] . . . [and] [t]hus, '[e]ven when the alleged facts do not directly address[ ] the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed.' " (quoting PBGC, 712 F.3d at 720)).

PFS Defendants argue "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan fiduciaries failed to conduct an adequate investigation [as] ERISA requires a plaintiff to plead some other indicia of imprudence."  Anderson v. Intel Corp., No. 19-CV-04618-LHK, 2021 WL 229235, at *5 (N.D. Cal. Jan. 21, 2021) (citation omitted).  PFS Defendants argue this requires nonconclusory factual content raising a plausible inference of misconduct, but the complaint contains only conclusory allegations addressing Defendants' decision-making process and therefore does not support a plausible inference that the process was flawed.  Specifically, Defendants assert the complaint vaguely states Defendants' due diligence was "far less extensive than the due diligence performed by third-party buyers in

corporate transactions of similar size and complexity," (Compl. ¶¶ 46, 63), but this statement is conclusory and provides no explanation for how the diligence process was insufficient.   For example, Defendants state Plaintiff offers no allegations about the due diligence practices in "corporate transactions of similar size and complexity," how those transactions are one "of a like character and with like aims" as this ESOP Transaction, 29 U.S.C. § 1104(a)(1)(B), or how Defendants' due diligence process differed.   To the contrary, the complaint acknowledges throughout that Defendants engaged a financial advisor and obtained a valuation report in connection with the ESOP Transaction.  (Compl. ¶¶ 39, 47.)

Defendants also argue that Plaintiff's unfounded conclusion that, "[a]n appropriate investigation would have revealed that the valuation used for the ESOP Transaction and the price ultimately paid by the ESOP did not reflect the fair market value" and that "an appropriate investigation would have revealed that the ESOP Transaction was not in the best interest of the ESOP participants" similarly fall short of the basic pleading requirements.  (Compl. ¶¶ 88–89.) Defendants argue absent is any discussion regarding what an "appropriate investigation" would look like or how it differed from the process undertaken by Defendants, and the Complaint is silent on what procedures were taken, how Defendants worked with the valuation advisor, its qualifications, or its valuation process.  Finally, Defendants argue tellingly, Plaintiff qualifies her allegations as to Paredes and PFS with the disclaimer that her claims "will likely have evidentiary support" in the future–an implicit admission that the allegation as pled is inadequate. (Compl. ¶ 46.)

Plaintiff argues she sufficiently alleges the PFS Defendants breached their duties of loyalty and prudence when they approved the imprudent ESOP Transaction, resulting in loss to the ESOP and its participants (Compl. ¶¶ 39, 42–44, 46, 82–91); that the complaint points to specific facts, such as the Company's declining sales, management failures, the improper personal use of corporate assets by the Hagen Family Defendants, and other problems with which a prudent and loyal trustee would have taken issue when evaluating the ESOP Transaction (Compl. ¶¶ 25–35); and that without discovery, Plaintiff cannot plead the details of the process— or lack thereof—that the Trustee Defendants followed in approving the ESOP's purchase of

Company stock.  See Allen, 835 F.3d at 677; Gamino, 2021 WL 162643, at *3.  Plaintiff further argues nonetheless that Trustee Defendants admit, a plaintiff may provide indirect circumstantial evidence of a flawed fiduciary process.  Plaintiff also rejects the Defendants' arguments that she presents nothing but legal conclusions, emphasizing they do not address the actual factual allegations, and are wrong because Plaintiff alleges, *inter alia*, that PFS Defendants assigned value to worthless inventory, (Compl. ¶¶ 31, 43); ignored the significant cost and risk associated with Douglas Hagen appointing his inexperienced stepson, Defendant Sloan, to run the Company for an above-market salary, (Compl. ¶¶ 25, 30); also alleges the PFS Defendants caused the ESOP to pay for a controlling interest in the Company, when in fact the Hagen Family Defendants retained control of it, which allowed them to use its corporate jet for their own personal travel and treat the Company like their piggy bank, (Compl. ¶¶ 19, 20, 32-35); and alleges that the Company's valuation was premised on unrealistic financial projections that inflated its value (Compl. ¶ 43).

Even under the standards expressed in the cases cited by Defendants, the Court finds sufficient circumstantial factual allegations by which the Court may reasonably infer the process was flawed (Compl. ¶¶ 19, 20, 25, 31-35, 43).  See Sweda, 923 F.3d at 332 ("While Sweda may not have directly alleged how Penn mismanaged the Plan, she provided substantial circumstantial evidence from which the District Court could "reasonably infer" that a breach had occurred."); Wehner, 2021 WL 507599, at *4; PBGC, 712 F.3d at 720.  Taking the allegations as true, Plaintiff has cited specific examples that plausibly present "some other indicia of imprudence." Anderson, 2021 WL 229235, at *5.

Accordingly, the Court finds the allegations sufficient at this stage of the pleadings.  See Sweda, 923 F.3d at 333 ("Although Penn may be able to demonstrate that its process was prudent, we are not permitted to accept Penn's account of the facts or draw inferences in Penn's favor at this stage of litigation."); see also id. at 332 ("In dismissing the claims in Counts III and V, the District Court erred by "ignor[ing] reasonable inferences supported by the facts alleged," and by drawing "inferences in [Defendants'] favor, faulting [Plaintiffs] for failing to plead facts tending to contradict those inferences.").

1     Although the Court has concerns that the type of allegations here may allow frivolous
2  lawsuits and discourage companies from engaging with ERISA, the Court finds the allegations
3  are sufficient under the appropriate and applicable legal standards that this Court is bound by.
4  See Sweda, 923 F.3d at 333-34 ("[W]e address Penn's argument, supported by amici  . . . that
5  allowing Sweda's complaint through the 12(b)(6) gate will overexpose plan sponsors and
6  fiduciaries to costly litigation and will discourage them from offering benefit plans at all . . . [t]he
7  Supreme Court addressed a nearly identical concern . . . [and] explained that while Congress,
8  through ERISA, sought to encourage creation of retirement plans, that purpose was not intended
9  to prevent participants with meritorious claims from gaining access to the courts . . . [and]
10  [d]espite our appreciation of Penn and amici's fear of frivolous litigation, if we were to interpret
11  Renfro to bar a complaint as detailed and specific as the complaint here, we would insulate from
12  liability every fiduciary who, although imprudent, initially selected a 'mix and range' of
13  investment options [and] [n]either the statute nor our precedent justifies such a rule." (citation
14  omitted)).

15     The Court agrees that other cases cited by Defendants in this section, are not directly
16  analogous to the type of, and amount of specific factual allegations here.  Plaintiff argues, those
17  cases involved investment choices, and in Meiners, plaintiffs alleged that the defendants
18  breached their fiduciary duties by retaining expensive and underperforming funds but failed to
19  provide a meaningful benchmark against which to measure the funds' performance.  See Meiners
20  v. Wells Fargo & Co., 898 F.3d 820, 822 (8th Cir. 2018).  The court found that without such a
21  benchmark, the court could not reasonably infer that the fiduciaries should have acted
22  differently.  Id. ("To show that "a prudent fiduciary in like circumstances" would have selected a
23  different fund based on the cost or performance of the selected fund, a plaintiff must provide a
24  sound basis for comparison—a meaningful benchmark.").  Similarly, the plaintiffs in Tobias,
25  claimed that the fiduciaries included funds in the plan lineup that were more expensive than
26  other options, but the court held that the mere fact that cheaper options existed did not create an
27  inference that the fiduciaries breached their duty, because plaintiffs had not shown the cheaper
28  funds were interchangeable with the funds in the plan.  See Tobias v. NVIDIA Corp., No. 20-

1   CV-06081-LHK, 2021 WL 4148706, at *10 (N.D. Cal. Sept. 13, 2021).

2          The Court finds Defendants' cases not persuasive given the distinctive investment

3   performance allegations that are not analogous to Plaintiff's claims that the Trustee Defendants

4   neglected to account for obvious red flags that diminished the value of the Company.  See also

5   Dorman v. Charles Schwab Corp., No. 17-CV-00285-CW, 2018 WL 6803738, at *3 (N.D. Cal.

6   Sept. 20, 2018) ("Dorman's position seems to be that it is enough to allege that Defendants

7   offered one affiliated fund with cheaper, better performing alternatives.  This cannot be correct.

8   To so hold would mean that almost every plan administrator who offered an affiliated fund

9   would be subject to an ERISA suit.  Standing alone, offering and retaining funds that have

10  underperformed modestly and have somewhat higher fees is not enough to show malfeasance.");

11  White v. Chevron Corp., No. 16-CV-0793-PJH, 2017 WL 2352137, at *21 (N.D. Cal. May 31,

12  2017) ("[P]oor performance, standing alone, is not sufficient to create a reasonable inference that

13  plan fiduciaries failed to conduct an adequate investigation—either when the investment was

14  selected or as its underperformance emerged—and that ERISA requires a plaintiff to plead some

15  other indicia of imprudence . . . The court previously held that to state a viable claim, plaintiffs

16  must plead some other objective indicia of imprudence . . . The court agrees with defendants that

17  the fifth cause of action fails to state a claim that the Plan fiduciaries were imprudent in failing to

18  remove the ARTVX Fund from the Plan lineup sooner than they did.  Plaintiffs continue to base

19  this claim solely on the fact that the Fund did not perform well, which approach the court has

20  already rejected."), aff'd, 752 F. App'x 453 (9th Cir. 2018).

21         PFS Defendants also argue that as with the duty of prudence allegations, Plaintiff has

22  failed to allege any facts to support a claim that Defendants acted to benefit their own interest

23  over those of plan participants and beneficiaries, and argue the complaint contains no allegations

24  that Defendants' conduct was driven by anything but a duty to the participants and beneficiaries,

25  and the claim that Defendants breached their duty of loyalty under 29 U.S.C. § 1104(a)(1)(A)

26  should be dismissed.

27         Plaintiff responds that Defendants' challenge to her breach of fiduciary duty claims based

28  on the lack of specific allegations related to the Trustee Defendants' process, imposes an

1  impossible standard for ERISA plaintiffs that federal courts across the country have routinely

2  rejected.  The Court finds these cases support Plaintiff's position.  <u>See</u> <u>Soo Park v. Thompson</u>,

3  851 F.3d 910, 928–29 (9th Cir. 2017) (" 'The <u>Twombly</u> plausibility standard ... does not prevent

4  a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly

5  within the possession and control of the defendant or where the belief is based on factual

6  information that makes the inference of culpability plausible[,]' [and] [b]ecause many of the

7  relevant facts here are known only to the defendant, and in light of the additional facts alleged by

8  Park, we conclude that she has pleaded sufficient facts to state a plausible claim for civil

9  conspiracy under Section 1983." (quoting <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d

10  Cir. 2010))); <u>Kryzhanovskiy v. Amazon.com Servs., Inc.</u>, No. 221CV01292DADBAM, 2022

11  WL 2345677, at *8 (E.D. Cal. June 29, 2022) ("Notably, the Ninth Circuit has held that because

12  many relevant facts are often known only to the defendant, a plaintiff can plead sufficient facts

13  on information and belief to state a plausible claim so long as there are additional facts alleged

14  by plaintiff that support her belief . . . the fact that plaintiff's FAC contains allegations that are

15  based upon information and belief does not, in and of itself, mean that plaintiff has failed to state

16  a claim against defendants for retaliation—especially because plaintiff's information and belief

17  allegations are supported by other facts she has alleged." (citing <u>Soo Park</u>, 851 F.3d at 928–

18  29))[21]; <u>Gamino</u>, 2021 WL 162643, at *2 (noting "facts detailing the investigative process are

19  likely within the sole control of the trustee and other ERISA defendants and, consequently, 'an

20  ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has

21  no access[,]' [and] [r]ather it is enough to allege facts—as the complaint does—which 'support

22  an inference' that the defendant 'fail[ed] to conduct an adequate inquiry.' " (quoting <u>Allen</u>, 835

23  F.3d at 678; citing <u>Zavala I</u>, 398 F.Supp.3d at 745-46)).

24       Other cases relied on by Plaintiff from other circuits in the ERISA context provide

25  additional support to the Court's decision in favor of Plaintiff.  <u>See</u> <u>Braden, Inc.</u>, 588 F.3d at 595

26  (8th Cir. 2009) ("Rule 8 does not, however, require a plaintiff to plead 'specific facts' explaining

27

28  [21] Although <u>Soo Park</u> and <u>Kryzhanovskiy</u> s are not ERISA cases, the cases do support finding in favor of Plaintiff given the pleading standards applicable in the Ninth Circuit.

precisely how the defendant's conduct was unlawful . . . [r]ather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled 'give the defendant fair notice of what the claim is and the grounds upon which it rests[.]' "  (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007))); Allen, 835 F.3d at 678 ("This is particularly true in ERISA cases because 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences[,]' [and] [w]e agree with the Eighth Circuit: an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." (quoting Braden, 588 F.3d at 598)).  As summarized above, Plaintiff adequately highlights sufficient specific factual allegations to counter Defendants' argument that she presents nothing but unsupported legal conclusions.  (See Compl. ¶¶ 19, 20, 25, 31-35, 43.)

Additionally, as for the PFS Defendants' argument that Plaintiff fails to adequately allege facts to support a claim for breach of loyalty separate from the facts supporting a breach of the duty of prudence, the Court finds in accord with Plaintiff that caselaw supports the proposition that allegations that a fiduciary's process was deficient suffices to state a breach of loyalty claim. See Howard, 100 F.3d at 1488 ("Like the inquiry into whether a fiduciary acted with loyalty and care, the inquiry into whether the ESOP received adequate consideration focuses on the thoroughness of the fiduciary's investigation."); Lauderdale, 2022 WL 422831, at *6 ("This is especially true here given the overlapping duties of loyalty and prudence . . . [t]he cases cited by Defendants only support the proposition that there must be facts alleged to support a duty of loyalty claim, not that they must be alleged separately [and] [t]he Court agrees with the Plaintiffs that [a] conflicted fiduciary may fail to use the level of care, skill, prudence, and diligence (thereby violating the duty of prudence codified in § 1104(a)(1)(B)) precisely because it intends to act for the purpose of furthering its own interests (thereby violating the duty of loyalty codified in § 1104(a)(1)(A))." (internal citations and quotation marks omitted)).

Here, Plaintiff alleges the PFS Defendants failed to undertake an appropriate and independent investigation of the fair market value of Company stock, and this inadequate investigation was not in the best interest of ESOP participants.  (Compl. ¶¶ 87, 89.)  The Court

1    agrees the reasonable inference from these allegations is that the PFS Defendants approved the

2    ESOP Transaction without adequate and appropriate investigation because of their loyalties to

3    the Hagen Family Defendants, who hand-picked the PFS Defendants and continued to control

4    the Company, (Compl. ¶¶ 44–46, 49, 82–91), and thus failed to act "solely in the interest of the

5    participants and beneficiaries," 29 U.S.C. § 1104(a)(1).  See Lauderdale, 2022 WL 422831, at

6    *12 ("The Court has already found that the allegations of SAC are sufficient to support a claim

7    for breach of the duty of prudence against NFP.  For the same reasons, they also support a claim

8    for the breach of the duty of loyalty."); Zavala I, 398 F. Supp. 3d at 746 ("The complaint here

9    alleges that the price paid by the ESOP for Kruse-Western's stock was based on unrealistic

10    management projections and did not adequately reflect the future revenue and earnings given the

11    recurring monensin contamination  . . . [i]t then alleges that [a] prudent fiduciary who had

12    conducted a prudent investigation would have concluded that ESOP was paying more than fair

13    market value for the Kruse-Western stock and/or the debt incurred in connection with the

14    Transaction was excessive[,]  . . . allegations [that] are essentially indistinguishable from those in

15    Allen . . . Defendants will be free to argue that the amount paid was in fact an accurate reflection

16    of the value of Kruse-Western's stock, and that they are therefore entitled to summary judgment

17    [but] [s]uch a factual dispute, however, cannot be resolved at the motion to dismiss stage of this

18    litigation." (internal citations and quotation marks omitted)).

19       Accordingly, the Court recommends the PFS Defendants' motion to dismiss the third

20    cause of action be denied.

### G.    Defendants' Motions to Dismiss the Fourth Cause of Action

22       The fourth cause of action is for failure to monitor in violation of ERISA §§ 404(a)(1)(A)

23    and (B); 29 U.S.C. §§ 1104(a)(1)(A) and (B),[22] against Defendants Sloan, Hagen Estate,

24    Kathleen Hagen, Kathleen Hagen as Legal Successor, B-K Lighting, and the ESOP Committee.

25    (Compl. ¶¶ 92-101.)  Hagen Defendants argue Plaintiff's failure to monitor claim also should be

26    dismissed where she alleges no facts showing the deficiencies in the monitoring process.

27

28    _____
[22] The Court summarized the legal standards applicable to claims under Section 1104(a)(1) supra, Section IV(E).

1    Defendant B-K also moves to dismiss the fourth cause of action.

2           Plaintiff alleges that under Section 1104(a)(1)(A) and (B), any fiduciary with the power

3    to appoint or remove other fiduciaries has an obligation to undertake an appropriate investigation

4    to make certain that the appointed fiduciary is qualified to serve in the position as fiduciary, and

5    to monitor the appointed fiduciary to ensure they remain qualified to act as fiduciary and acting

6    in compliance with the terms of the Plan and in accordance with ERISA.  (Compl. ¶ 95.)  If not,

7    the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses.

8    (Id.)  Plaintiff alleges the Hagen Family had a duty to monitor the Trustee after they appointed it,

9    the Plan provides that the Plan Administrator is appointed by the Board of Directors, that at the

10   time of the ESOP Transaction, the Board of Directors was comprised of the Hagen Family

11   Defendants, and therefore the Hagen Family Defendants also had a duty to monitor the Plan

12   Administrator.  (Compl. ¶¶ 96-97.)

13          Plaintiff alleges Plan further confers power over the Trustee on the Plan Administrator, as

14   for example, the Trustee votes shares of Company stock at the written direction of the Plan

15   Administrator, the Plan Administrator directs the Trustee to invest employer contributions in

16   Company stock, and thus, the Plan Administrator had a duty to monitor the Trustee.  (Compl. ¶

17   98.)   Plaintiff alleges the Hagen Family Defendants breached their duties under Section

18   1104(a)(1)(A) and (B), "because they failed monitor the Trustee and the Plan Administrator to

19   ensure that the ESOP did not engage in the ESOP Transaction given the inflated stock price,

20   and/or that the ESOP paid no more than fair market value for the Company stock in the

21   Transaction, and/or that the Trustee took remedial action after the ESOP Transaction.  (Compl. ¶

22   99.)  Plaintiff alleges Sloan, Ms. Hagen, and Mr. Hagen's successors in interest are liable for

23   these breaches.  (Compl. ¶ 99.)

24          Plaintiff also alleges B-K Lighting breached duties under Section 1104 because, as Plan

25   Administrator, the Company failed to monitor the Trustee and ensure the Trustee took remedial

26   action after the ESOP Transaction.  Plaintiff alleges that in the alternative, the ESOP Committee

27   breached duties under ERISA § 1104(a)(1)(A) & (B) because, as Plan Administrator, the ESOP

28   Committee failed to monitor the Trustee and ensure the Trustee took remedial action.  (Compl.

¶¶ 100-101.)

1.      The Court Recommends Denying the Hagen Defendants' Motion to Dismiss

Hagen Defendants argue the "duty of an ERISA fiduciary to review the performance of its appointees is a limited one," and that "[t]o defeat a motion to dismiss for failure to monitor, the nonmovant must point to allegations of specific facts about the extent a fiduciary did not monitor its appointee." Gleason v. Orth, No. 2:22-CV-00305-JHC, 2022 WL 4534405, at *8 (W.D. Wash. Sept. 28, 2022) (quoting In re Calpine Corp., No. C-03-1685 SBA, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005)).  Hagen Defendants argue there are insufficient facts as to the specific defendants, and additionally argue that if the third cause of action for breach of fiduciary duties fails, the fourth cause of faction for failure to monitor, and fifth cause of action for co-fiduciary liability also fail as derivative, given there is no underlying duty violation and so no failure to monitor (Hagen Mot. 23).[23] White v. Chevron Corp., No. 16-CV-0793-PJH, 2016 WL 4502808, at *19 (N.D. Cal. Aug. 29, 2016) ("plaintiffs allege no facts showing how the monitoring process was deficient."); Carter, 2016 U.S. Dist. LEXIS 163017, at *15 ("Plaintiffs allege no facts regarding whether, when, and to what extent Defendants monitored either the San Pasqual Fiduciary Trust or other Defendants."); Foster, 2020 WL 3639648 at *2 ("While the Ninth Circuit has not squarely addressed this issue, district courts within this circuit and the Second Circuit Court of Appeals have all held that a breach of the duty to monitor is a derivative claim.").

Hagen Defendants argue Plaintiff dedicates only one conclusory sentence in support of her claim, alleging that the Hagen Family Defendants failed "to ensure that the ESOP did not engage in the ESOP Transaction given the inflated stock price, and/or that the ESOP paid no more than fair market value for the Company stock in the Transaction, and/or that the Trustee took remedial action after the ESOP Transaction." (Compl. ¶ 99.)  Hagen Defendants argue it is unclear from the complaint (1) why Plaintiff singled out the Hagen Family Defendants from the other unnamed members of the Board of Directors, and (2) how the ESOP Committee and Hagen

---

[23]  However, the Court already recommended denying the motion to dismiss the third cause of action above, supra Section IV(E), which is brought against the PFS Defendants only.  Accordingly, these derivative arguments must also be rejected in accord with the above recommendation.

1   Family Defendants specifically failed to monitor the Trustee and the Plan Administrator.  Hagen

2   Defendants also argue that while the complaint alleges the Hagen Family Defendants had an

3   "ongoing obligation to monitor the Trustee" it also alleges that the Plan Administrator—whether

4   that be B-K Lighting or the ESOP Committee—simultaneously failed to monitor the Trustee.

5   (Compl. ¶¶ 49, 98–100.)

6          Plaintiff argues the complaint alleges that the Hagen Family Defendants were aware of

7   information about the Company that was material to the ESOP Transaction and illegally failed to

8   disclose this information to the Trustee.  The Court agrees with Plaintiff that the complaint

9   alleges more specific facts than the Defendants' framing, when looking beyond the paragraphs

10  confined to the cause of action.  For example, Plaintiff alleges the Hagen Family Defendants

11  knew of obsolete products in the Company's warehouse that were not saleable and should have

12  been written off rather than counted as valuable inventory on the Company's financial

13  statements, (Compl. ¶ 31); alleges they knew the Company's sales were declining due to its

14  failure to adopt technological advances, such as LED and Bluetooth controlled lighting, (Compl.

15  ¶ 27); alleges they knew they would keep control over the Company after the ESOP Transaction

16  and use their control to have the Company enter into a consulting agreement with Mr. Hagen the

17  day after the ESOP Transaction to pay him $2 million for no actual work, (Compl. ¶ 32); alleges

18  they knew the family planned to purchase a jet airplane shortly after the ESOP Transaction with

19  money loaned from the Company and to lease the jet back to the Company, even though they

20  used it primarily for personal travel, (Compl. ¶¶ 33-34, 44); and alleges they failed to disclose

21  any of this material information to the Trustee (e.g., Compl. ¶ 43).

22         The Court finds Plaintiff plausibly alleges the Hagen Family Defendants breached their

23  duty to monitor the Trustee Defendants.  While Hagen Family Defendants contend that the

24  monitoring claim fails because Plaintiff "alleges no facts showing the deficiencies in the

25  monitoring process[,]" at the pleading stage "plaintiff is not required to plead specific facts about

26  the fiduciary's internal processes because such information is typically in the exclusive

27  possession of a defendant."  Hurtado, 2018 WL 3372752, at *13.  In Hurtado, defendants argued

28  the failure to monitor claim "should be dismissed because Plaintiffs have not plausibly alleged

1  the underlying breaches of fiduciary duty [and] . . . failed to allege facts to demonstrate a

2  deficient monitoring process." Hurtado, 2018 WL 3372752, at *13.  The court rejected the first

3  argument because the court found sufficient allegations supporting the underlying breaches. Id.

4  Above, this Court recommended the motion to dismiss the underlying third cause of action

5  should be denied, supra Section IV(E), and thus, like Hurtado, rejects the derivative argument

6  outlined above. Id.

7       The Hurtado court also rejected the second argument because a "plaintiff is not required

8  to plead specific facts about the fiduciary's internal processes because such information is

9  typically in the exclusive possession of a defendant." Id. (quoting Fernandez v. Franklin Res.,

10 Inc., No. 17-CV-06409-CW, 2018 WL 1697089, at *7 (N.D. Cal. Apr. 6, 2018)).  The Hurtado

11 court noted that "[r]ather, the plaintiff need allege facts to show only 'that the fiduciary knew or

12 should have known about the trustee's misconduct and failed to take steps to remedy the

13 situation.' " (quoting Solis v. Couturier, No. 2:08-CV-02732-RRB (GGH), 2009 WL 1748724, at

14 *7 (E.D. Cal. June 19, 2009))); see also Gamino, 2021 WL 162643, at *4 ("[T]he complaint

15 alleges: (1) Defendant KPC Healthcare had the power to appoint and remove Defendant Alerus

16 as trustee, giving rising to a duty to monitor, (2) Defendant KPC Healthcare had knowledge,

17 through Defendant Kali Pradip Chaudhuri, that the trustee had undergone an unlawful

18 transaction for more than fair market value, and (3) despite this knowledge, Defendant KPC

19 Healthcare took no steps to protect ESOP participants or remove the trustee . . . [t]hese

20 allegations are sufficient to state a claim for breach of the failure to monitor by Defendant KPC

21 Healthcare." (citing Hurtado, 2018 WL 3372752, at *14)); Acosta v. Saakvitne, 355 F. Supp. 3d

22 908, 923 (D. Haw. 2019) (finding sufficient allegations to state claim for failure to monitor

23 where the complaint alleged defendants "failed to monitor Saakvitne by knowingly providing

24 him with flawed information about the Company, permitting him to overstate the value of the

25 Company's shares, and permitting him to direct the ESOP to purchase the shares for more than

26 they were worth.").

27      Here, similar to the facts in these cases, Plaintiff alleges the following facts that the Court

28 must accept true and accept all reasonable inferences flowing from: (1) the Hagen Family

1  Defendants, as Board and ESOP Committee members, and the ESOP Committee, as a named

2  fiduciary, had the power to appoint and remove the Trustee, giving rise to the duty to monitor,

3  (Compl. ¶¶ 17-20); (2) the Hagen Family Defendants and the ESOP Committee had knowledge

4  that the ESOP Transaction was based upon inaccurate and incomplete projections, (Compl. ¶¶

5  25-35, 43, 48- 49); and (3) despite this knowledge, neither the Hagen Family Defendants nor the

6  ESOP Committee took steps to remove the Trustee or remedy his breaches, (Compl. ¶¶ 48-49,

7  92-101).  Even setting aside the lack of access to information at this stage, the Court agrees with

8  Plaintiff that there are sufficient allegations as to the duty to monitor.  See Gamino, 2021 WL

9  162643, at *4; Hurtado, 2018 WL 3372752, at *14; Saakvitne, 355 F. Supp. at 923.

10        Further, the Court finds merit to Plaintiff's argument that White and In re Calpine

11  Corp.—are inapposite, and notes that Zavala I rejected reliance on White because that court had

12  already dismissed the underlying fiduciary breach claims.  See Zavala I, 398 F. Supp. 3d at 746–

13  47 (finding reliance on White "unavailing" as there, "the court dismissed plaintiffs' failure to

14  monitor claim because, as pleaded, that claim was 'wholly dependent on the breaches of duty

15  alleged' in previous causes of action, which the court had already dismissed . . . [and] [t]here is

16  no suggestion in this case that plaintiffs' failure to monitor claim is derivative . . . [in addition to

17  the court in White] not[ing] that the complaint before it was deficient because it failed to allege

18  'some ... signal of a problem requiring closer attention' by the fiduciaries." (quoting White, 2016

19  WL 4502808, at *19)).  Additionally, Zavala I distinguished In re Calpine Corp. because the

20  plaintiff failed to plead any facts in support of a monitoring claim; on the other hand, the Zavala

21  I complaint was found to have sufficiently alleged that the board defendants failed to conduct

22  any investigation following the relevant ESOP transaction.  See Zavala I, 398 F. Supp. 3d at 747

23  ("The court in that case dismissed plaintiff's claim after finding that plaintiff 'ha[d] not alleged

24  any facts that support his claim that Calpine and the Director Defendants failed to periodically

25  review the performance of the Committee members or the Employee Defendant[,]' [but] . . .

26  [t]hose concerns are absent here [because] [a]s noted already, the complaint alleges that the

27  Board defendants utterly failed to conduct any investigation following the sale of Kruse-

28  Western's stock [and] [t]hese allegations are sufficient to survive a motion to dismiss." (quoting

In re Calpine Corp., 2005 WL 1431506, at *6)).

Similarly, Plaintiff here alleges that the Hagen Family Defendants and the ESOP Committee did not fulfill their fiduciary duty to monitor the Trustee Defendants because they knew the Trustee Defendants received inadequate and incomplete information but took no remedial action when the Trustee caused the ESOP to purchase Company stock for more than fair market value.  (Compl. ¶¶ 25-35, 43, 48-49, 92-101.)  This weighs in favor of denying the motion to dismiss the fourth cause of action.

Plaintiff also emphasizes the allegations in the complaint focus on fiduciary actions, not corporate actions.  In re WorldCom, Inc., 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity [and] [the] allegation that Ebbers failed to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock is sufficient to state a claim."); Carter, 2016 WL 6803768, at *4 ("[I]n the Ninth Circuit, an individual that has both fiduciary and business functions is liable for breach of fiduciary duty under ERISA for business decisions affecting the value of plan assets when the individual could directly profit from the business decisions."); see also id. ("[A]n ESOP fiduciary also serves as a corporate director or officer, imposing ERISA duties on business decisions from which that individual could directly profit does not to us seem an unworkable rule [and] [a]s the Ninth Circuit explains, this rule is necessary to protect plan participants from 'obvious self-dealing' by ERISA fiduciaries and to preserve ERISA fiduciary duties as 'the highest known to law.' " (quoting Johnson, 572 F.3d at 1077)).  Thus, the Court agrees that while the Hagen Family Defendants' knowledge about the Company may have arisen from their roles as Board members and management, their failure to disclose material information to the Trustee Defendants implicates their fiduciary duty to disclose under the Plan and ERISA.

Plaintiff argues that because Mr. Hagen directly profited from the ESOP Transaction by selling 100% of his B-K Lighting stock for $25,270,000 and warrants, (Compl. ¶¶ 18, 36, 38), his ERISA duties extended "to all business decisions" affecting the ESOP Transaction.  See

1   Hurtado, 2018 WL 3372752, at *11 ("When an ESOP fiduciary also serves as a corporate

2   director or officer, his ERISA duties extend to all business decisions from which he could

3   directly profit." (citing Johnson, 572 F.3d at 1077)).  Thus, Plaintiff submits that *at minimum*, the

4   Estate of Mr. Hagen (and Kathleen Hagen Legal Successor) are liable under ERISA for those

5   actions.  Carter, 2016 WL 6803768, at *4 ("Plaintiffs have adequately alleged that Defendants

6   were acting as fiduciaries under Johnson: Plaintiffs allege that (1) at all relevant times,

7   Defendants were either named or functional fiduciaries regarding the operation and

8   administration of the Plan and its assets.").

9       Further, the Court agrees sufficient allegations support finding it plausible that the ESOP

10  Committee was likewise an ERISA fiduciary when it took the acts alleged in the Complaint, as

11  the ESOP Committee is the Plan Administrator of the ESOP and a named fiduciary (Compl. ¶

12  17).  Donovan v. Mercer, 747 F.2d 304, 309 (5th Cir. 1984) ("The courts and commentators

13  agree that certain positions, such as trustee or plan administrator, inherently require fiduciary

14  responsibilities.").  As Plan Administrator, the ESOP Committee's sole function was to oversee

15  and administer the Plan, which is a fiduciary role.  (Lite Star ESOP Plan § 13.4, ECF No. 33-2 at

16  69.)  Further, the Complaint alleges the ESOP Committee breached its fiduciary duties by failing

17  to monitor the Trustee and following the Plan's indemnification provision, which is void against

18  public policy.[24]   (Compl. ¶¶ 92-101; 114-122.)   Therefore, Plaintiff contends Defendants'

19  argument that the ESOP Committee was not acting as an ERISA fiduciary when it took the acts

20  alleged in the Complaint must fail.  For these reasons, and based on the findings the Court made

21  above as to the underlying fiduciary status challenges, supra Section IV(C), the Court agrees

22  with Plaintiff as to these arguments.

23      Hagen Defendants reply that despite trying to obfuscate matters in her brief, Plaintiff

24  recognizes that the Hagen Defendants' fiduciary duties to ESOP participants extended *at most* to

25  the appointment and retention of the independent ESOP Trustee, and thus even assuming the

26  _____

27  [24]  However, as the Court finds below, the Court agrees with Hagen Defendants that the seventh cause of action
     should be dismissed as time-barred, based on the allegations in the complaint.  However, such ruling does not
28  change the Court's recommendation as to the fourth cause of action for the ESOP Committee in a dispositive
     manner.

1   Hagen Defendants were acting as fiduciaries when appointing the Trustee, the sole question for

2   the dismissal of the monitoring claim is whether the complaint contains non-conclusory

3   allegations to support a valid claim against any Defendant for breaching their duty in the

4   appointment and retention of the Trustee.  The Court finds the complaint contains sufficient

5   factual allegations taken as true, for the reasons expressed above.  See Solis, 931 F. Supp. 2d at

6   953 ("Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their

7   performance.").

8          Hagen Defendants also argue Plaintiff raises a new theory in Opposition—that the Hagen

9   Family Defendants owed a "duty to disclose" and breached that duty, and yet the Complaint does

10  not even mention, let alone plead, a breach of disclosure obligations.  It is true the complaint

11  does not contain the word "disclose."  However, as the Court found above, supra, Section

12  IV(C)(3), flowing from the fiduciary duty, the Hagen Family Defendants' role as appointing

13  fiduciaries created an obligation to disclose to the Trustee Defendants all facts relevant to the

14  Company's valuation.  See Guenther, 972 F.3d at 1051 (The "duty of loyalty is one of the

15  common law trust principles that apply to ERISA fiduciaries, and it encompasses a duty to

16  disclose." (quoting Washington, 504 F.3d at 823; Wool, 2010 WL 11597947, at *6 ("An

17  appointing fiduciary's duties with respect to the appointed fiduciary also logically includes a

18  duty to fully inform the appointed fiduciary so that it may meet its responsibilities under

19  ERISA.").

20         Accordingly, for the above explained reasons, and considering all of the applicable law

21  and allegations, the Court recommends the Hagen Defendants' motion to dismiss the fourth

22  cause of action for failure to monitor, be denied.

23         2.      The Court Recommends Denying B-K's Motion to Dismiss

24         The Court now additionally addresses Defendant B-K's motion to dismiss the fourth

25  cause of action.

26         First, Defendant B-K argues this claim is derivative of the claim against the Trustee

27  Defendants, thus if Plaintiff fails to state a claim against the Trustee, then the duty-to-monitor

28  claim must fail, as well.     See Coppel v. SeaWorld Parks & Ent., Inc., No.

321CV01430RSHDDL, 2023 WL 2942462, at *19 (S.D. Cal. Mar. 22, 2023) ("duty to monitor claims are derivative causes of action premised on a prior, underlying breach."). B-K argues Plaintiff has failed to plausibly plead facts to support her principal ERISA claim against the Trustee for causing the Plan to pay more than adequate consideration. However, the Court recommended above that the Trustee Defendants' motion to dismiss the fourth cause of action should be denied. Thus, the Court rejects this argument.

Second, B-K argues that with respect to Plaintiff's claim that B-K failed to monitor the Trustee in connection with the 2017 ESOP Transaction, Plaintiff has failed to plead that B-K even had a duty monitor. B-K argues the duty to monitor is an extremely limited obligation that arises out of an express delegation by a named fiduciary of ERISA fiduciary responsibility, and under ERISA, a named fiduciary may delegate fiduciary responsibility to another, and upon the delegation, the named fiduciary is completely relieved of any fiduciary responsibility for the matters that are delegated. See Harris, 770 F.3d at 883. In this regard, Defendant B-K argues the complaint only alleges the "Hagen Family Defendants" appointed the Trustee—not B-K, and thus no basis to impose upon B-K a duty to monitor the Trustee, and while Plaintiff alleges that because B-K was the "Plan Administrator" B-K had a duty to monitor the Trustee, B-K states Plaintiff admits that the only power B-K had with respect to the Trustee was to direct the Trustee to "vote[] shares of Company stock" and "invest employer contributions in Company stock." (Compl., ¶ 98).[25]  To the extent B-K had any duty to monitor the Trustee with respect to these directions, B-K argues the duty to monitor would be limited to the activities that were the subject of the direction, which have nothing to do with the Trustee's conduct in connection with the 2017 ESOP transaction, and even if B-K could direct the Trustee to vote for directors on B-K's board of directors after the 2017 ESOP Transaction, there is no allegation that the Trustee breached any duty relating to voting on directors.

Last, B-K argues that while Plaintiff suggests that B-K failed to monitor the Trustee

---

[25]  The Court does not deem this an admission, as looking at the allegation as stated in the complaint, it only states the powers *include* such powers: "The Plan further confers power over the Trustee on the Plan Administrator: for example, the Trustee votes shares of Company stock at the written direction of the Plan Administrator, and the Plan Administrator directs the Trustee to invest employer contributions in Company stock. Thus, the Plan Administrator had a duty to monitor the Trustee."  (Compl. ¶ 98.)

1  because the Trustee failed to act after the 2017 ESOP Transaction to prevent further adverse
2  corporate events, this is a circular argument which would impose upon B-K an obligation to
3  inform the Trustee of corporate events, which is not only nonsensical, but it also relies on the
4  incorrect assumption that an ESOP Trustee has an ongoing duty to investigate corporate conduct
5  and an obligation to interfere with corporate activities.  B-K submits that while ERISA imposes
6  fiduciary obligations on those who make final, discretionary decisions about plan administration,
7  management, or assets, an ESOP Trustee has no duty to investigate *corporate* acts, because
8  corporate acts do not involve plan administration, management, or assets.

9      Incorporating the legal standards discussed throughout this recommendation and
10  particularly the preceding subsection, the Court finds in favor of Plaintiff as to B-K's motion to
11  dismiss the fourth cause of action.

12      First, the Court finds B-K is a fiduciary.  The Plan establishes that the Company is a
13  fiduciary.  (Lite Star ESOP Plan § 14.1 ("The Company, as Plan sponsor, shall serve as a Named
14  Fiduciary[.]"); see also id. § 2.40 ("Named Fiduciary' means the Company, the Trustee, and the
15  Plan Administrator (if other than the Company).").  The Company's responsibilities as Named
16  Fiduciary include, *inter alia*, the duty to "appoint the Trustee and the Plan Administrator and to
17  monitor each of their performances[.]" (Id. § 14.1(b).)  In addition, B-K Lighting has the duty to
18  "communicate such information to the Plan Administrator and to the Trustee as each needs for
19  the proper performance of its duties…." (Id. § 14.1(c).)  Plaintiff also alleges that the Company
20  is a fiduciary of the ESOP as the Plan Administrator.  (Compl. ¶ 16.)  Accordingly, the
21  Complaint alleges that the Company is the Plan Administrator, or in the alternative, the ESOP
22  Committee is the Plan Administrator.  (Compl. ¶ 16, 17.)[26]  The Plan states that the Plan
23  Administrator is a Named Fiduciary of the ESOP.  Thus, the Court agrees with Plaintiff that the
24  Company was a fiduciary of the ESOP with respect to the ESOP Transaction because it is a
25  Named Fiduciary and the Plan Administrator, and therefore had important fiduciary functions
26  such as monitoring the Trustee and providing key information to the Trustee.  See, e.g.,

27
28  [26] Even if the Court doesn't take judicial notice of the Plan documents, the Court finds the complaint sufficiently alleges the fiduciary status of B-K.  (See Comp. ¶¶ 16, 17.)

Schonbak, 2018 WL 11422693, at *1.

While B-K suggests it was sufficient for the Trustee Defendants to rely on an "independent valuation assessment," Donovan v. Mazzola, 716 F.2d 1226, 1234 (9th Cir. 1983), the Ninth Circuit has made clear that merely obtaining a valuation report from an independent advisor is not sufficient for a trustee to meet his or her fiduciary duties of prudence and loyalty. See Howard, 100 F.3d at 1489–90 ("An independent appraisal 'is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled. It is a tool and, like all tools, is useful only if used properly[,]' . . . [and] [a]dopting the alternative rule—that an independent appraisal is a complete defense to a charge of imprudence—would be foolish, especially in cases in which there is a strong possibility of self-dealing." (citation omitted)); see also id. at 1488 ("A fiduciary who engages in a self-dealing transaction pursuant to 29 U.S.C. § 1108(e) has the burden of proving that he fulfilled his duties of care and loyalty and that the ESOP received adequate consideration . . . [and] [t]his burden is a heavy one."). As the Court found above, even setting aside the lack of access to information at this stage, the Court agrees with Plaintiff that there are sufficient allegations as to the duty to monitor. See Gamino, 2021 WL 162643, at *4; Hurtado, 2018 WL 3372752, at *14; Saakvitne, 355 F. Supp. 3d at 923.

While B-K argues Plaintiff "does not actually allege that the Trustee or his valuation advisor ignored the issues" or that "they were unaware of the adverse corporate events" or that "anyone failed to disclose the adverse corporate events," Plaintiff specifically alleges that the Trustee Defendants relied on projections provided by the Company that failed to account for several "adverse corporate events" such as (1) the Company's declining sales, (2) the turnover and inexperience within the senior leadership team, (3) the fact that hundreds of thousands of dollars of "valuable" inventory was actually obsolete and should have been written off, and (4) the planned purchase and lease of a jet airplane that would be used for the Hagen family's personal travel (Compl. ¶¶ 31, 34, 43), and specifically alleges the Company failed to disclose material facts and the Trustee Defendants and valuation advisor failed to adequately consider the financial impact of corporate malfeasance by the Hagen Family Defendants (Compl. ¶¶ 43, 45-

46, 48).

While B-K takes issue with the allegation that Defendant Sloan received excessive compensation as CEO and characterizes the setting of corporate compensation as a corporate act, as Plaintiff argues, she does not allege that the *fact* that Defendant Sloan was paid an excessive salary was, in itself, an ERISA violation, but instead alleges the valuation relied upon by the Trustee Defendants for the ESOP Transaction did not adequately consider the negative impact on the value of the B-K Lighting stock purchased by the ESOP resulting from the Company paying Defendant Sloan an excessive salary, (Compl. ¶ 30), and therefore, the allegation supports a reasonable inference that the Trustee Defendants breached their fiduciary duties by causing the ESOP to purchase the Company for greater than fair market value.  Similarly, while B-K also argues the allegation "that the Plan overpaid because B-K and Hagen entered into a multi-year consulting agreement in 2018, ***after*** the 2017 ESOP Transaction" "make[s] no sense at all," but Plaintiff responds  she does not suggest, as the Company asserts, that the Trustee Defendants are "liable for the failure *in the future* for a party not to perform contractual services," but rather the Complaint alleges that the valuation was flawed because it did not account for the multi-year, multi-million-dollar no-work contract that was entered into *the day after* the Transaction occurred (Compl. ¶ 32), and thus in other words, the Trustee Defendants failed to account for a substantial Company cost that was known or knowable to them at the time of the ESOP Transaction.

As for the argument that Plaintiff failed to plead that it "even had a duty to monitor" the Trustee Defendants in connection with the 2017 ESOP Transaction or after the Transaction, as discussed above, the Company is the Plan Sponsor, Plan Administrator, and a Named Fiduciary of the ESOP.  Accordingly, by the express terms of the Plan, the Company had an ongoing duty to monitor the Trustee Defendants.  See Carr v. Int'l Game Tech., 770 F. Supp. 2d 1080, 1090 (D. Nev. 2011) ("[T]he power to appoint and remove an ERISA fiduciary gives rise to a duty to monitor and results in the appointing and removing party being a *de facto* fiduciary with respect to such appointment, monitoring and removal."); Solis, 931 F. Supp. 2d at 953-54 ("Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their performance.").  "[T]he

scope of the duty to monitor will require a factually intense analysis[,]" and thus, "many courts have declined to dismiss a duty to monitor claim on a motion to dismiss." In re Syncor ERISA Litig., 351 F. Supp. 2d at 986 (declining to determine the scope of the duty to monitor at the motion to dismiss stage). Moreover, at the pleading stage, "a plaintiff is not required to plead specific facts about the fiduciary's internal processes because such information is typically in the exclusive possession of a defendant." Hurtado, 2018 WL 3372752, at *13 (quoting Fernandez v. Franklin Res., Inc., 2018 WL 1697089, at *7 (N.D. Cal. Apr. 6, 2018)). "Rather, the plaintiff need allege facts to show only 'that the fiduciary knew or should have known about the trustee's misconduct and failed to take steps to remedy the situation.' " Hurtado, 2018 WL 3372752, at *13 (quoting Solis, 2009 WL 1748724, at *7). I

Here, the Company was responsible for appointing and removing the Trustee Defendants and providing the information that the Trustee Defendants needed for the proper performance of their duties. The Court finds the complaint sufficiently alleges that the Company knew that the projections provided to the Trustee Defendants contained incomplete and inaccurate information, specifically that the projections did not account for several factors that would have negatively impacted the valuation. (Compl. ¶ 43.) The Court finds the Complaint contains sufficient facts supporting these allegations. (Compl. ¶¶ 25-35; 48-49.) The Court finds the greater weight of authority and the complaint's allegations support denying the motion to dismiss the fourth cause of action as to B-K. See Carr, 770 F. Supp. 2d at 1090; In re Syncor ERISA Litig., 351 F. Supp. 2d 970, 986 (C.D. Cal. 2004); see also 29 C.F.R. § 2509.75-8 ("What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments? . . . At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.").

Accordingly, the Court recommends denying B-K's motion to dismiss the fourth cause of

1    action.

2        **H.      The Hagen Defendants' Motion to Dismiss the Fifth Cause of Action**

3        The fifth cause of action is for co-fiduciary liability under ERISA, §§ 405(a)(1) and

4    (a)(3); 29 U.S.C. §§ 1105(a)(1) and (a)(3), brought against Defendants Sloan, Hagen Estate, Ms.

5    Hagen, and Kathleen Hagen Successor.  (Compl. ¶¶ 102-106.)  The relevant portion of Section

6    1105 provides:

7            **(a) Circumstances giving rise to liability**

8            In addition to any liability which he may have under any other
             provisions of this part, a fiduciary with respect to a plan shall be
9            liable for a breach of fiduciary responsibility of another fiduciary
             with respect to the same plan in the following circumstances:
10
11               (1) if he participates knowingly in, or knowingly
                 undertakes to conceal, an act or omission of such other
                 fiduciary, knowing such act or omission is a breach; . . .
12
                 . . . (3) if he has knowledge of a breach by such other
13               fiduciary, unless he makes reasonable efforts under the
                 circumstances to remedy the breach.
14

15   29 U.S.C. § 1105(a)(1), (3).  "Co-fiduciary liability is a shorthand rubric under which one

16   ERISA fiduciary may be liable for the failings of another fiduciary." Thomson v. Caesars

17   Holdings Inc., No. 221CV00961CDSBNW, 2023 WL 2480673, at *11 (D. Nev. Mar. 13, 2023)

18   (quoting Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 18 (1st Cir. 1998)).  It inheres "if a

19   fiduciary knowingly participates in or conceals another fiduciary's breach, enables such other to

20   commit a breach, or learns about such a breach and fails to make reasonable efforts to remedy

21   it." Id.

22       Plaintiff alleges that because the Hagen Family Defendants held management and

23   leadership positions within the Company, (i) they were involved in preparing the revenue,

24   earnings and cash flow projections underlying the valuation relied upon by Paredes that resulted

25   in the ESOP overpaying for the stock it purchased; (ii) they knew about the failure of the

26   financial projections to adequately account for, *inter alia*, the Company's trend of declining

27   revenues and projected expenditures on airplanes and consultants; (iii) they knew that the

28   inflated financial projections they prepared would be used to determine the value the ESOP

would pay for the stock that was purchased and thus cause the ESOP to overpay; and (iv) they knew that B-K Lighting provided incomplete and unreliable information to the Trustee for due diligence for the 2015 ESOP Transaction.  (Compl. ¶ 104.)  Plaintiff also alleges "the Hagen Family Defendants knew that they continued to mismanage and misappropriate company funds for their own personal use and gain, essentially treating B-K Lighting as their piggy bank." (Compl. ¶ 105.)  Therefore, Plaintiff alleges Hagen Family Defendants knowingly participated in the fiduciary violations of the Trustee alleged elsewhere in the complaint, and knew that the Trustee's actions violated ERISA, and thus are liable as co-fiduciaries.  (Compl. ¶ 106.)

The Hagen Defendants argue that the co-fiduciary liability claim should be dismissed for failing to adequately plead that the Hagen Family Defendants had "actual knowledge" of the underlying breach.  Defendants argue dismissal of this claim is warranted where "plaintiff has merely parroted the statute and has not made detailed allegations about how specific defendants participated in, concealed, enabled, or had knowledge of another fiduciary's breach."  Anderson v. Coca-Cola Bottlers' Ass'n, No. 21-2054-JWL, 2022 WL 951218, at *13 (D. Kan. Mar. 30, 2022); Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth, No. 18-CV-1861-WCG, 2022 WL 4088166, at *8 (E.D. Wis. Mar. 17, 2022) ("claims for co-fiduciary liability must fail because the second amended complaint does not contain any facts that suggest "actual knowledge" by the Ds&Os that Argent was acting imprudently; instead, one can merely find allegations of "constructive knowledge.").

Defendants emphasize the heart of Plaintiff's co-fiduciary liability claim is that the Hagen Family Defendants must have known about any breaches on the part of the Trustee because of their "management and leadership positions within the Company[.]"  (Compl. ¶ 104.) Defendants argue Plaintiff conflates the duties of senior management and Board members with the duties of an ERISA fiduciary and seeks to hold the Hagen Family Defendants responsible for "unrealistic financial projections" provided to the Trustee.  (Compl. ¶ 5.)  Defendants highlight that Plaintiff acknowledges, however, that the Trustee was appointed by the Board of Directors and "had *sole and exclusive authority* to negotiate the terms of the ESOP Transaction on the ESOP's behalf . . . ."  (Compl. ¶¶ 5, 19, 20 (emphasis added).)  Defendants also argue Plaintiff

90

1   further concedes that the Trustee was hired "to undertake an appropriate and independent

2   investigation of the fair market value of the B-K Lighting stock", which included "investigat[ing]

3   the credibility of the management assumptions and earnings projections underlying the

4   valuation[.]" (Compl. ¶ 87.)  Thus, Defendants submit that Plaintiff's allegations equally support

5   the theory that the financial projections were prepared as part of "a business decision that has an

6   effect on an ERISA plan not subject to fiduciary duties."  Acosta, 910 F.3d at 518 (quotation

7   marks and citation omitted).

8       Defendants argue that at most, Plaintiff's allegations suggest that the Hagen Family

9   Defendants had "constructive knowledge" of the due diligence materials provided to the Trustee

10  but fail to "substantiate [the] conclusion that [the Hagen Family Defendants] *knew* that the stock

11  prices were inflated."  Appvion, 2022 WL 4088166, at *8.  Defendants also contend Plaintiff

12  fails to explain how her repeated references to the Hagen Family Defendants "treating B-K

13  Lighting as their piggy bank" is relevant to any of her claims against those Defendants, and

14  because these allegations require the same improper "inferential step between knowing about

15  certain red flags, and 'actually knowing'" about the Trustee's alleged ERISA violations,

16  Plaintiff's co-fiduciary liability claim should be dismissed.  Id.

17      First, because the Court found the complaint adequately alleges an underlying breach of

18  fiduciary duty claim by the Trustee Defendants, her co-fiduciary liability claim suffices, at least

19  as to the derivative argument.  See Hurtado, 2018 WL 3372752, at *14 (denying motion to

20  dismiss co- fiduciary claim because the plaintiff adequately pled underlying breach of fiduciary

21  duty claim).  Thus, like above, the Court rejects the arguments based on the derivative nature of

22  the claim.

23      The Court further finds Plaintiff has sufficiently alleged actual knowledge of a co-

24  fiduciary's breach, and adequately alleges the Hagen Family Defendants' knowing participation

25  in the Trustee Defendants' ERISA violations.  See Zavala II, 2021 WL 5883125, at *11

26  ("Although a co-fiduciary liability claim must allege actual knowledge of a co-fiduciary's

27  breach, it 'need not allege specific facts buttressing those claims of knowledge to survive a

28  motion to dismiss.'"); Hurtado, 2018 WL 3372752, at *14 ("Defendants' arguments regarding

1   whether Plaintiffs have adequately shown sufficient knowledge to sustain [the co- fiduciary

2   liability claim] are not appropriate for resolution at the pleading stage[.]"); Acosta, 355 F. Supp.

3   3d 908 at 924.  Plaintiff alleges the Hagen Family Defendants: (i) were involved in preparing the

4   projections underlying the valuation relied upon by the Trustee Defendants, (ii) knew that the

5   projections were inaccurate and incomplete, and (iii) knew that the projections would provide the

6   basis for the ESOP Transaction sale price.  (Compl. ¶ 104.)  As the Court found above, taking

7   the allegations as true and stemming reasonable inferences, the Hagen Family Defendants

8   possessed this knowledge by virtue of their positions within the Company.

9          Following the ESOP Transaction, the Complaint alleges that the Hagen Family

10   Defendants knew about their own continued mismanagement and misappropriation of Company

11   funds, including the $5 million life insurance payment following Mr. Hagen's death (Compl. ¶¶

12   55, 105); alleges the Hagen Family Defendants knew that the Trustee Defendants failed to

13   investigate and remedy these continued breaches (Compl. ¶ 99); and alleges that despite these

14   violations, the Hagen Family Defendants have not attempted to remove the Trustee Defendants

15   or take any corrective action (Compl. ¶¶ 31-35; 49; 92-101).  Accordingly, the Court finds

16   Plaintiff has "allege[d] actual knowledge of a co-fiduciary's breach."   Zavala II, 2021 WL

17   5883125, at *11; Saakvitne, 355 F. Supp. 3d at 924 ("the court concludes that the Complaint

18   sufficiently alleges facts indicating that Bowers and Kubota had actual knowledge of Saakvitne's

19   breach . . . alleges that Saakvitne breached his fiduciary duty to the ESOP by authorizing the

20   purchase of the Company's shares for more than they were worth based on the LVA's flawed

21   valuations . . . alleges that Bowers and Kubota knew that the valuations were flawed yet

22   proceeded to negotiate with Saakvitne and participate in the sale of the Company's shares to the

23   ESOP . . . alleges that neither Bowers nor Kubota made any effort to correct the valuation

24   information or to remedy the breach, which resulted in losses to the ESOP . . . [t]hese allegations

25   support a claim of co-fiduciary liability  . . . [and] [w]hether [they] knew that the LVA valuation

26   reports were overstated valuations based on their expertise and understanding of the Company's

27   financial projections is a question beyond the scope of the present motion.").

28          In Anderson, the court agreed with the defendants that plaintiff "merely parroted the

statute and has not made detailed allegations about how specific defendants participated in, concealed, enabled, or had knowledge of another fiduciary's breach . . . [and] has not alleged that basis for co-fiduciary liability, however, or alleged any facts to support such liability." Anderson, 2022 WL 951218, at *13.   In Appvion, the plaintiff only pled facts implying constructive and not actual knowledge.   Appvion, 2022 WL 4088166, at *8 ("This paragraph, emblematic of the allegations against several others Ds&Os, asserts facts suggesting 'constructive knowledge,' such as direct access to valuation reports and facetime with the trustee, but does not substantiate its conclusion that Gilligan *knew* that the stock prices were inflated.").   Here, again taking the allegations as true and reasonable inferences in favor of Plaintiff, the complaint alleges that the Hagen Family Defendants had actual knowledge of the Trustee Defendants' breach because, as Company directors and officers, they were directly involved in preparing the information used to value the Company's stock.  (Compl. ¶¶ 25-35; 43; 54-55; 104-106.)

Above, given the liberal standards for fiduciary status, the Court found the Hagen Family Defendants are fiduciaries and acted in their fiduciary capacities when they carried out the acts alleged in the Complaint, such as appointing and monitoring the Trustee Defendants, preparing the projections that provided the basis for the valuation relied upon by the Trustee Defendants, failing to disclose the Company's many problems and their ongoing use of the Company's assets for their personal benefit, and, in the case of Mr. Hagen, participating in the 2017 ESOP Transaction.   Moreover, as Plaintiff highlights, co-fiduciary liability is not "limited only to instances when the actions underlying the fiduciary's participation in or concealing of the breach or the inaction to remedy the breach themselves amount to fiduciary conduct." Zavala II, 2021 WL 5883125, at *11 (collecting cases).  Thus, the Court need not find that the Hagen Family Defendants were acting in their fiduciary capacities when they took the actions the co-fiduciary liability claim—here, furnishing to the Trustee the projections they knew to be inaccurate and knew would be relied upon for purposes of the ESOP Transaction—for the claim to survive. (Compl. ¶ 104.)

Accordingly, for the above explained reasons, and considering the applicable legal

1   standards and all of the allegations in the complaint, the Court recommends the Hagen

2   Defendants' motion to dismiss the fifth cause of action for co-fiduciary liability be denied.

3   **I.      The Hagen Defendants' Motion to Dismiss the Sixth Cause of Action**

4   The sixth cause of action is for equitable relief under ERISA § 502(a)(3); 29 U.S.C. §

5   1132(a)(3), against Defendants Sloan, Hagen Estate, Kathleen Hagen, and Kathleen Hagen as

6   Legal Successor.  (Compl. ¶¶ 107-113.)  Section 1132 provides:

7   **(a) Persons empowered to bring a civil action**

8   A civil action may be brought-- . . .

9   **(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act
    or practice which violates any provision of this subchapter or the
10  terms of the plan, or (B) to obtain other appropriate equitable relief
    (i) to redress such violations or (ii) to enforce any provisions of
11  this subchapter or the terms of the plan;

12  29 U.S.C. § 1132(a)(3).

13  Plaintiff's complaint notes that under this provision, a defendant can be held liable

14  regardless of whether they are a fiduciary; a non-fiduciary transferee of ill-gotten assets of the

15  Plan is subject to equitable disgorgement of those assets if the non-fiduciary had actual or

16  constructive knowledge of the circumstances that rendered the transaction or payment unlawful.

17  (Compl. ¶ 108.)  Plaintiff alleges Douglas Hagen knowingly participated in and profited from the

18  fiduciary breaches and prohibited transactions; that upon information and belief, the

19  consideration Douglas Hagen received as a result of the ESOP Transaction is part of his Estate

20  and Sloan and Kathleen Hagen are the beneficiaries of that Estate and have received the proceeds

21  of the ESOP Transaction.  (Compl. 109-110.)  Based on § 1132(a)(3), Plaintiff alleges Sloan,

22  Ms. Hagen, the Estate of Douglas Hagen, and Douglas Hagen's legal successors and successors

23  in interest should be required to disgorge the consideration they have received as a result of the

24  ESOP Transaction.  (Compl. ¶ 111.)  Plaintiff alleges Sloan and Ms. Hagen had actual or

25  constructive knowledge that any consideration for the ESOP Transaction that they received

26  through the Estate of Douglas Hagen were ill-gotten gains; and consideration paid to the Hagen

27  Family Defendants in connection with the ESOP Transaction is in the current possession of

28  Sloan, Ms. Hagen, and Douglas Hagen's successors in interest and/or is traceable.  (Compl. ¶

111-112.)

Hagen Defendants proffers that to bring a knowing participation claim against a nonfiduciary under ERISA § 502(a)(3), Plaintiff must show: "(1) funds rightfully belonging to a plan were wrongfully transferred to the non-fiduciary; (2) the non-fiduciary had 'actual or constructive knowledge' of the circumstances that rendered the transfer wrongful; and (3) the plan seeks appropriate equitable relief."   Kalan v. Farmers & Merchants Tr. Co. of Chambersburg, No. CV 15-1435, 2016 WL 3087360, at *1 (E.D. Pa. June 2, 2016) (citing Harris Tr. & Sav., 530 U.S. at 246).  Hagen Defendants argue that by relying on the Hagen Family Defendants' "status as officers, directors, and members of the Hagen family" to show their "actual or constructive knowledge" of an unlawful transaction, Plaintiff fails to meet the heightened pleading standard for a knowing participation claim against non-fiduciaries.  (Compl. ¶ 111.)  Defendants emphasize the Supreme Court has recognized that non-fiduciaries may be liable under ERISA § 502(a)(3) if a nonfiduciary party-in-interest had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful."  Harris Tr. & Sav., 530 U.S. at 250–53 (2000).  However, a "an ERISA plaintiff cannot rely solely on the knowledge that would satisfy a fiduciary's liability for a prohibited transaction to likewise hold a nonfiduciary party in interest liable for that transaction."  Teets v. Great-W. Life & Annuity Ins. Co., 286 F. Supp. 3d 1192, 1209 (D. Colo. 2017) ("an ERISA plaintiff cannot rely solely on the knowledge that would satisfy a fiduciary's liability for a prohibited transaction to likewise hold a nonfiduciary party in interest liable for that transaction. Rather, the plaintiff must show that the defendant knew or should have known that the transaction violated ERISA."), aff'd, 921 F.3d 1200 (10th Cir. 2019).

Hagen Defendants argue Plaintiff's allegations (Compl. ¶ 111), amount to nothing more than a recitation of the corporate functions performed by the Hagen Family Defendants pursuant to their positions within B-K Lighting and on the Board of Directors, and similar to the complaint in Del Castillo, Plaintiff's allegations are "devoid of any facts supporting a plausible inference" that the Hagen Family Defendants "knew or should have known of any wrongdoing" by Mr. Hagen with respect to the Transaction.  Del Castillo v. Cmty. Child Care Council of

Santa Clara Cnty., Inc., No. 17-CV-07243-BLF, 2019 WL 6841222, at *6 (N.D. Cal. Dec. 16, 2019) ("TAC is devoid of any facts supporting a plausible inference that that LSW or Logan knew or should have known that the LSW annuities were purchased in the absence of a written instrument or that the annuities were otherwise imprudent."). Defendants argue Plaintiff must point to more than the Hagen Family Defendants' status within B-K Lighting and information accessible to them because of their status to meet the heightened pleading standard for a knowing participation claim against non-fiduciaries.

Hagen Defendants also argue Plaintiff fails to identify a specific fund or account for claim over which she has a claim. See Depot, 915 F.3d at 660 ("As a result, a plaintiff may not use § 1132(a)(3) to seek any 'form of *legal* relief,' such as 'money damages.' " (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002))); see also Zavala I, 398 F. Supp. 3d at 741 ("the Ninth Circuit in Depot set forth three methods by which a plaintiff could allege that the money or property is in the possession of the defendants and therefore state a claim under § 1132(a)(3)."); Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 363, 126 S. Ct. 1869, 1874, 164 L. Ed. 2d 612 (2006) ("It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law."). Hagen Defendants argue that here, Plaintiff's allegations do not conform to any of the three methods proposed by the Ninth Circuit, and instead, Plaintiff vaguely alleges that "the consideration [Mr.] Hagen received as a result of the ESOP Transaction is part of his Estate," to which Ms. Hagen and Sloan are beneficiaries. (Compl. ¶ 110.) Defendants argue that Mr. Hagen's Estate, however, is neither a specific fund nor a general account "over which [P]laintiff might have a valid claim." Zavala I, 398 F. Supp. 3d at 741. Therefore, Defendants argue the Court should separately dismiss Plaintiff's knowing participation claim for failing to seek appropriate equitable relief.

The Court finds Plaintiff has sufficiently alleged a claim against the Hagen Family Defendants under Section 1132(a)(3), which provides that a court may award "other appropriate equitable relief" to redress "any act or practice" that violates ERISA. (Compl. ¶¶ 107-113.)

1    Specifically, Plaintiff alleges that Mr. Hagen "knowingly participated in and profited from the

2    fiduciary breaches and prohibited transactions" set forth in the Complaint "with full knowledge

3    that his ownership interests were being unlawfully acquired for greater than fair market value."

4    (Compl. ¶ 109.)  Plaintiff thus alleges Douglas Hagen "had actual or constructive knowledge of

5    the circumstances that rendered the transaction unlawful." Harris Trust, 530 U.S. at 251.

6    Specifically, the complaint alleges that Mr. Hagen helped prepare the projections that served as

7    the basis for the valuation, which he knew would help determine the price of the 2017 ESOP

8    Transaction (Compl. ¶¶ 104-105); further alleges the Hagen Family Defendants knew that those

9    projections were flawed because they did not paint an accurate picture of the company's finances

10   (Compl. ¶¶ 25-35, 43, 48); and therefore they knew that the Company stock was sold to the

11   ESOP for more than fair market value and that Mr. Hagen received greater than fair market

12   consideration for the sale ( Compl. ¶ 111.)

13        The Court finds the complaint sufficiently alleges the Hagen Family Defendants had

14   actual or constructive knowledge of the circumstances that made the ESOP Transaction

15   unlawful. "Because § 1132(a)(3) 'makes no mention at all of which parties may be proper

16   defendants,' a party in interest—including a non-fiduciary third party—may be sued under this

17   provision for its participation in a prohibited transaction." Depot, 915 F.3d at 659 (quoting

18   Harris Tr. & Sav., 530 U.S. at 246).  "The nonfiduciary need not have engaged in any

19   wrongdoing[,] [and] [i]t is enough if he had knowledge, based on the surrounding circumstances,

20   that the fiduciary was engaging in a prohibited transaction." Saakvitne, 355 F. Supp. 3d at 924–

21   25.

22        In Saakvitne, the court declined to dismiss non-fiduciary liability claims against board of

23   director members related to the sale of the company's stock to the ESOP.  355 F.Supp.3d at 925.

24   There, the board members "had knowledge of [the trustee's] decision to allow the ESOP to

25   purchase the Company's shares, allegedly without a proper valuation and at a price higher than

26   the shares were worth." Id.  The complaint alleged that the board members knew that the $40

27   million transaction price was too high for the company shares but, "in spite of this knowledge,

28   [the board members] proceeded to communicate the $40 million valuation to [the trustee] . . . and

then participated in negotiations with [the trustee] before agreeing to sell their shares for $40 million." Id.  The court concluded that the complaint sufficiently alleged the board members' actual or constructive knowledge of the actions constituting or resulting in the breach.  Id.

Similarly, the Gamino court denied the defendants' motion to dismiss a § 503(a)(3) claim against a CEO who sold his company shares to the ESOP at an allegedly inflated price.  2021 WL 162643, at *5 ("Chaudhuri allegedly knew the much lower price he initially paid for the stock previously and, as CEO, would have known about the company's subsequent financial distress[,] [and] [t]hese allegations lead to a plausible inference that Chaudhuri participated in the 2015 transaction knowing he was improperly receiving more than fair market value as consideration for the KPC stock."); see also Hurtado, 2018 WL 3372752, at *15 (denying motion to dismiss § 502(a)(3) claim where the complaint's allegations were "sufficient to show 'some orchestration' of the conflicted transactions that subjects [the nonfiduciary] to liability").

The Court finds the complaint, taking reasonable inferences in favor of Plaintiff, sufficiently alleges knowledge was based upon, *inter alia*, (i) their personal familiarity with the value of Mr. Hagen's equity interests; (ii) their access to the books and records of B-K Lighting; (iii) their inside knowledge of confidential financial and business information pertaining to the same; (iv) their status as officers, directors, and members of the Hagen family; and (v) their close personal and or family relationships to other company insiders (Compl. ¶¶ 25-35, 43, 48, 104-105, 111).  See Gamino, 2021 WL 162643, at *5 ("as CEO, would have known").  The Court finds Plaintiff has alleged that the Hagen Family Defendants "had knowledge, based on the surrounding circumstances, that the fiduciary was engaging in a prohibited transaction." Saakvitne, 355 F.Supp.3d at 924-25; Gamino, 2021 WL 162643, at *5 ("as CEO, would have known about the company's subsequent financial distress."); Hurtado, 2018 WL 3372752, at *15.  Further, there are different standard for plan fiduciaries, and the Court has already found the complaint adequately alleges the Hagen Defendants were plan fiduciaries.  See Gamino, 2021 WL 162643, at *5 ("Depot specifically notes that 'traditional rules of equity' provide broader relief that does not require 'specifically identifiable property if the defendant owed a fiduciary duty to the plaintiff and breached that duty.' "); see also Zavala I, 398 F. Supp. 3d at

742 n.3 ("court does not read the decision in <u>Depot</u> as imposing a requirement that such allegations be pleaded with specificity[,] [r]ather, . . . the identity of a specific fund, whether particular assets were commingled in a general account, and whether defendants' account balances remained above a specific dollar amount, is information likely to be unavailable to plaintiff in the absence of discovery."); <u>Gamino</u>, 2021 WL 162643, at *5 ("[d]eficiencies in the prayer for relief do not typically justify dismissal under Rule 12(b)(6)."); <u>Zavala II</u>, 2021 WL 5883125, at *6-7.

Accordingly, the Court recommends denying the Hagen Defendants' motion to dismiss the sixth cause of action.

### J.    Defendants' Motion to Dismiss the Seventh Cause of Action

B-K, the Hagen Defendants, and the PFS Defendants each move to dismiss the seventh cause of action.

The seventh cause of action is for violation of ERISA § 410 & breach of fiduciary under ERISA §§ 404(a); 29 U.S.C. §§ 1110, 1104(a), brought against all Defendants.  (Compl. ¶¶ 114-122.)

Section 1110 states the following as to voiding as against public policy, any provision relieving a fiduciary from liability:

> **(a)** Except as provided in sections 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.
>
> **(b)** Nothing in this subpart[footnote omitted] shall preclude—
>
> > **(1)** a plan from purchasing insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary;
> > **(2)** a fiduciary from purchasing insurance to cover liability under this part from and for his own account; or
> > **(3)** an employer or an employee organization from purchasing insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan.

29 U.S.C. § 1110.[27]

The seventh cause of action asserts that all Defendants breached their fiduciary duties by agreeing to indemnification provisions purportedly void under ERISA. (Compl. ¶¶ 118–121.) Specifically, Plaintiff alleges that for a 100% ESOP-owned company, a provision requiring indemnity by the ESOP-owned company is treated as an indemnity provision by the Plan because it effectively requires ESOP participants to pay for the costs of the breaching fiduciaries' liability. (Compl. ¶ 117.) Plaintiff alleges the Plan provides that the Company shall indemnify the Trustee "against costs, expenses and liabilities (other than amounts paid in settlement to which the Employer does not consent) reasonably incurred by him/her in connection with any action to which he/she may be a party by reason of his/her service as a Trustee." (Compl. ¶ 118.) Plaintiff alleges the "Plan further provides that the Company shall indemnify each member of the committee constituting the Plan Administrator, each member of the ESOP Committee, and each member of the Review Committee 'against costs, expenses and liabilities (other than amounts paid in settlement to which the Employer does not consent) reasonably incurred by him/her in connection with any action to which he/she may be a party by reason of his/her service' as a member of each committee. (Compl. ¶ 119.) Plaintiff claims that as the Plan attempts to relieve the Trustee and the members of the ESOP Committee of their responsibility or liability for certain ERISA violations or to have the Company and thereby the ESOP be responsible for such liability, it is void as against public policy. (Compl. ¶ 120.)

### 1. The Court Recommends Granting the Hagen Defendants' Motion to Dismiss the Seventh Cause of Action as Time-Barred

Hagen Defendants move to dismiss the seventh cause of action. (Hagen Mot. 27-28.) First, they argue because Plaintiff has failed to adequately allege any applicable ERISA violation, they cannot state a valid claim under 29 U.S.C. § 1110. The Court recommends rejecting this first challenge based on the Court's recommendations made herein as to the other causes of action.

---

[27] The omitted footnote reads: "So in original. This part does not contain subparts." 29 U.S.C. § 1110(b) n.1.

1    Second, Defendants argue the claim is time-barred.  The relevant provision provides that
2    "[n]o action may be commenced . . . with respect to a fiduciary's breach of any responsibility,
3    duty, or obligation . . after the earlier of (1) six years after (A) the date of the last action which
4    constituted a part of the breach or violation, . . . or (2) three years after the earliest date on which
5    the plaintiff had actual knowledge of the breach or violation . . . ."  29 U.S.C. § 1113.  The Ninth
6    Circuit "follow[s] a two-step test to determine whether a claim is barred by section 1113(2)."
7    Sulyma v. Intel Corp. Inv. Pol'y Comm., 909 F.3d 1069, 1072 (9th Cir. 2018) (citing Ziegler v.
8    Conn. Gen. Life Ins. Co, 916 F.2d 548, 550 (9th Cir. 1990)), aff'd, 140 S. Ct. 768, 206 L. Ed. 2d
9    103 (2020).  First, courts are to "isolate and define the underlying violation upon which [the]
10   plaintiff's claim is founded."  909 F.3d at 1072-73 (quoting Ziegler, 916 F.2d at 551).  Second,
11   courts are to "inquire when [the plaintiff] had actual knowledge of the alleged breach or
12   violation."  Id. (quoting Ziegler, 916 F.2d at 552).  The Supreme Court has interpreted "actual
13   knowledge" in this context to mean that "the plaintiff must in fact . . . be[came] aware of that
14   information."  Intel Corp. Inv. Pol'y Comm. v. Sulyma, 140 S. Ct. 768, 776, 206 L. Ed. 2d 103
15   (2020) ("As presently written, therefore, § 1113(2) requires more than evidence of disclosure
16   alone[,] [and though the fact] that all relevant information was disclosed to the plaintiff is no
17   doubt *relevant* in judging whether he gained knowledge of that information . . . [t]o meet §
18   1113(2)'s 'actual knowledge' requirement, however, the plaintiff must in fact have become aware
19   of that information."  Intel Corp. Inv. Pol'y Comm. v. Sulyma, 140 S. Ct. 768, 777, 206 L. Ed. 2d
20   103 (2020).

21   Hagen Defendants assert that Plaintiff's allegations relate to indemnification language in
22   the ESOP Plan, which was adopted on September 1, 2016.  (Compl. ¶ 18.)  First, while
23   Defendants state in briefing that Plaintiff conveniently omits the ESOP Plan's effective date
24   from her Complaint, (Hagen Mot. 27 n.5), Plaintiff correctly responds that the Hagen Defendants
25   incorrectly assert that Plaintiff "conveniently omits" the Plan's effective date from her
26   complaint, as the effective date *is* stated in the Complaint.  (See Compl. ¶ 37.)

27   Plaintiff alleges that the Defendants, including the ESOP Committee and the Hagen
28   Family Defendants, breached their fiduciary duties under ERISA "[b]y following a Plan

provision" that was adopted on September 1, 2016.  (Compl. ¶ 121.)  Although Plaintiff seeks to "disgorge any indemnification payments made by the Company, and/or the ESOP," Defendants argue she does not allege that any such payments have actually been made (Compl. ¶ 122), and nor does she allege that any of the Defendants put the indemnification language into the ESOP Plan.  Rather, the allegations focus on the Defendants following a Plan provision that is void against public policy.  (Compl. ¶ 121.)  Thus, because the ESOP Plan was adopted on September 1, 2016, Plaintiff's indemnification claim is barred by 29 U.S.C. § 1113(1), or alternatively, because Plaintiff is an ESOP participant and had actual knowledge of the language at issue, Plaintiff's indemnification claim is barred by 29 U.S.C. § 1113(2).

Taking the arguments in reverse order, the Court first rejects the Defendants' actual knowledge argument.  First, as Plaintiff responds, the Hagen Family Defendants do not say when or how Plaintiff had actual knowledge of the Plan's indemnification provisions, but rather impute knowledge at some unstated prior date, and as a threshold matter, Defendants fail to meet their burden of proof on this affirmative defense.  See Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1122 (9th Cir. 2007) ("[B]ecause the statute of limitations is an affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period."); Wyatt v. Terhune, 315 F.3d 1108, 1117 (9th Cir. 2003) ("[I]t is well-settled that statutes of limitations are affirmative defenses, not pleading requirements.").  The Court also agrees with Plaintiff that the Supreme Court's holding regarding actual versus constructive knowledge supports Plaintiff at this stage and based on the complaint before the Court.  See Intel Corp. Inv. Pol'y Comm., 140 S. Ct. at 777 ("But if a plaintiff is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be. § 1113(2)."); Ward v. Valadez, No. 19-CV-1267-LAB(WVG), 2019 WL 5212396, at *2 (S.D. Cal. Oct. 16, 2019) ("Because the statute of limitations is an affirmative defense, the 'defendant has the burden of proving the action is time-barred.' " (citation omitted)).

As for the six year statute of repose, Plaintiff responds that because Plaintiff's claim accrued when B-K Lighting or the Plan began indemnifying the fiduciary defendants for the claims alleged in this lawsuit after the Complaint was filed, her ERISA § 410(a) claim is timely.

See 29 U.S.C. § 1110(a). Under subsection (1), Plaintiff's claim for breach of fiduciary duty accrued as of "the date of the last action which constituted a part of the breach or violation," 29 U.S.C. § 1113(1), which Plaintiff argues is not the Plan's effective date. Plaintiff argues the alleged fiduciary violation is B-K Lighting making indemnification payments to the fiduciary defendants based on an illegal Plan provision, not the Company's adoption of a Plan which included an illegal provision. Plaintiff argues that because B-K Lighting could not have made indemnification payments prior to the complaint's filing date, Plaintiff's claim is timely under the six-year statute of repose.

Defendants respond that for the first time in the opposition, Plaintiff alleges that the ESOP Committee and the Hagen Family Defendants breached their fiduciary duties under ERISA when B-K Lighting made indemnification payments to the fiduciary defendants based on an illegal Plan provision, not the Company's adoption of a Plan which included an illegal provision. Defendants emphasize that in contrast, all the complaint alleges is that the ESOP Committee and the Hagen Family Defendants breached their fiduciary duties under ERISA "[b]y following a Plan provision that is void against public policy," (Compl. ¶ 121), which Defendants argue is a vague allegation insufficient to withstand a motion to dismiss.

The Court acknowledges the standard favoring Plaintiff generally, as to motions to dismiss a claim based on the statute of limitations. See Ward, 2019 WL 5212396, at *2 ("Because the statute of limitations is an affirmative defense, the 'defendant has the burden of proving the action is time-barred.' " (citation omitted)); Willows v. Select Portfolio Servicing, Inc., No. 15-05586 MMM (JEMX), 2015 WL 13916126, at *4 (C.D. Cal. Oct. 21, 2015) ("A plaintiff is not required affirmatively to plead facts demonstrating that a claim is timely . . . [w]here a statute of limitations defense is apparent on the face of the complaint, however, it may be raised by the defendant in a motion to dismiss.").

However, the Court finds Plaintiff's argument that the claim is timely based on indemnification payments made after the complaint cannot stand given the complaint makes no such allegations. The Court therefore finds the defense is apparent on the face of the complaint. Seven Arts Filmed Entertainment, Ltd. v. Content Media Corp., 733 F.3d 1251, 1254 (9th Cir.

1    2013) ("A statute-of-limitations defense, if 'apparent from the face of the complaint,' may

2    properly be raised in a motion to dismiss.") (citation omitted); Briceno v. Williams, No.

3    16CV1665-JAH (AGS), 2018 WL 6040688, at *2 (S.D. Cal. Nov. 19, 2018) ("Thus, it is not

4    always possible to adjudicate a motion to dismiss based on statute of limitations because the

5    Court will typically only consider the allegations of the complaint.").

6        "Vague allegations and mere labels and conclusions are insufficient to withstand a

7    motion to dismiss." Ruiz v. Mortg. Elec. Registration Sys., Inc., No. CIV S-09-0780FCDDAD,

8    2009 WL 2390824, at *8 (E.D. Cal. Aug. 3, 2009) (citing Twombly, 550 U.S. 544, 555; Iqbal,

9    556 U.S. at 678-79.  (the pleading standards under Rule 8 "demands more than an unadorned,

10   the-defendant-unlawfully-harmed-me accusation . . . [and] [t]hreadbare recitals of the elements

11   of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff's

12   allegation regarding the following of the provision by Defendants is impermissibly vague and

13   conclusory, and thus the Court finds based on the adoption date of September 1, 2016, (Compl. ¶

14   18), the claim is time-barred.  See 29 U.S.C. § 1113(1).

15       Accordingly, the Court recommends granting the Hagen Defendants' motion to dismiss

16   the seventh cause of action as time-barred.  The Court recommends granting leave to amend as to

17   the seventh cause of action.  See Fed. R. Civ. P. 15(a)(2); Schreiber Distrib. Co., 806 F.2d at

18   1401; Lopez, 203 F.3d at 1130.

19       2.    If the District Judge Declines to Adopt Recommendation of Dismissal as Time-
             Barred, the Court Recommends Denying the PFS Defendants' Motion to Dismiss
20           the Seventh Cause of Action

21       The PFS Defendants move for dismissal of the seventh cause of action arguing that

22   because Plaintiff has failed to adequately allege any ERISA violation in the first and third causes

23   of action, the seventh cause of action, which is premised on the first and third causes of action,

24   also fails to state a claim for relief.  However, given the Court found above that Plaintiff

25   sufficiently alleges these underlying claims; as a result, the seventh cause of action survives too.

26       Accordingly, to the extent the District Judge declines to dismiss the seventh cause of

27   action as time-barred, the Court recommends the PFS Defendants' motion to dismiss the seventh

28   cause of action be denied.

3. <u>If the District Judge Declines to Adopt Recommendation of Dismissal as Time-Barred, the Court Recommends Denying the B-K's Motion to Dismiss the Seventh Cause of Action</u>

B-K additionally argues the seventh cause of action should be dismissed.  If the District Judge declines to adopt the recommendation to dismiss the seventh cause of action as time-barred, the Court recommends Defendant B-K's motion to dismiss the seventh cause of action be denied.

B-K argues that taking the allegations as true the complaint does not allege that B-K followed the indemnification provision in a *fiduciary* capacity.  <u>See</u> <u>Pegram</u>, 530 U.S. at 226 ("[T]he threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").  B-K argues that its status as an indemnitor is in its corporate capacity, using corporate funds (which are not ESOP funds), and cites the regulations for the proposition that is supports the proposition that assets of an operating company are not assets of a plan.  The cited regulation section states as follows:

> General rule. For purposes of subtitle A and parts 1 and 4 of subtitle B of title I of ERISA and section 4975 of the Internal Revenue Code only (but without any implication for and may not be relied upon to bar criminal prosecutions under 18 U.S.C. 664), the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3-102(a)(1).

The Court does not find this argument persuasive without caselaw or additional explanation demonstrating the significance and dispositive nature of the regulation in relation to the indemnification provision.  As Plaintiff counters, ERISA section 410(a) says that any indemnification agreement "which purports to relieve a fiduciary from responsibility or liability" for fiduciary violations "shall be void as against public policy."  Plaintiff argues Section 410(a)

1  does not say anything about whether the indemnification is made in a "corporate" or "fiduciary"

2  capacity – all that matters is that a provision purporting to indemnify a breaching fiduciary is

3  void.  Plaintiff highlights that in <u>Johnson</u>, the Ninth Circuit upheld a preliminary injunction

4  enjoining indemnification payments that would violate ERISA section 410(a) without bothering

5  to analyze whether such indemnification payments were made in a "fiduciary" capacity.  572

6  F.3d at 1081-82.  Plaintiff argues that ERISA section 502(a)(3) permits Plaintiff to obtain an

7  injunction or other appropriate equitable relief to redress any act that violates Title I of ERISA,

8  and it is beyond dispute that ERISA section 410(a) is part of Title I of ERISA.

9         The Court agrees with Plaintiff that the Company cannot evade liability under ERISA

10  section 410(a) by alleging that it is acting in its corporate, rather than fiduciary, capacity.  The

11  Ninth Circuit has rejected an argument that an indemnification agreement was permissible where

12  the defendant made an argument that "section 410(a) does not apply because advancement would

13  be made from corporate, not plan, assets."   <u>Johnson</u>, 572 F.3d at 1080 ("To the contrary, any

14  proceeds taken from TEOHC's remaining funds to pay Defendants' defense costs will, dollar for

15  dollar, reduce the funds available for distribution to ESOP participants. In other words,

16  advancement is here tantamount to asking ESOP participants to pay for Defendants' defense

17  costs, with no recovery possible or at least highly unlikely—even if Defendants breached their

18  fiduciary duties to the ESOP—so long as Defendants did not engage in deliberate wrongful acts

19  or gross negligence. Such a result is impermissible under section 410(a)."); <u>see also</u> <u>Fernandez v.</u>

20  <u>K-M Indus. Holding Co.</u>, 646 F. Supp. 2d 1150, 1155 (N.D. Cal. 2009) ("The rationale

21  underlying the court's holding [in <u>Johnson</u>] supports the conclusion that indemnification

22  agreements are invalid any time an ESOP would bear the financial burden of indemnification,

23  whether directly or indirectly.").

24         Accordingly, if the District Judge declines to dismiss the seventh cause of action as time-

25  barred, the Court recommends denying B-K's motion to dismiss the seventh cause of action.

26  / / /

27  / / /

28  / / /

# V.

## RECOMMENDATION

For all of the above explained reasons, IT IS HEREBY RECOMMENDED that:

1.      The motion to dismiss filed by Defendants Paredes and PFS (ECF No. 23) be DENIED;

2.      The motion to dismiss brought by Defendants ESOP Committee, Sloan, Ms. Hagen, Kathleen Hagen Successor, and Hagen Estate (ECF No. 24) be DENIED in part, and GRANTED IN PART only as to the motion to dismiss the seventh cause of action as time-barred by the statute of limitations; and

3.      The motion to dismiss brought by Defendant B-K (ECF No. 25) be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to the findings and recommendations with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 25, 2024**

UNITED STATES MAGISTRATE JUDGE