Daniel Feinberg (SBN No. 135983)
Anne Weis (SBN No. 336480)
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
anne@feinbergjackson.com

Michelle C. Yau (*Pro Hac Vice*)
Caroline E. Bressman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINNA CHEA, on behalf of the Lite Star, Inc. Employee Stock Ownership Plan,<br><br>    Plaintiff,<br><br>  v.<br><br>LITE STAR ESOP COMMITTEE, B-K LIGHTING, INC., NATHAN SLOAN, KATHLEEN A. HAGEN, KATHLEEN A. HAGEN, as legal successor to DOUGLAS W. HAGEN, ESTATE OF DOUGLAS W. HAGEN, MIGUEL PAREDES, and PRUDENT FIDUCIARY SERVICES, LLC, a California Limited Liability Company,<br><br>    Defendants. | Case No. 1:23-cv-00647-JLT-SAB<br><br>**AMENDED COMPLAINT** |

# I.  INTRODUCTION

1.    Plaintiff Linna Chea, by her undersigned attorneys, on behalf of the Lite Star Employee Stock Ownership Plan ("the ESOP" or "the Plan"), alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

2.    This is a civil enforcement action brought pursuant to Sections 502(a)(2) and 502 (a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3).

3.    The ESOP is a type of pension plan, specifically, an employee stock ownership plan that is designed to invest primarily in the stock of its sponsor, B-K Lighting, Inc. ("B-K Lighting" or "Company"), pursuant to ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6).

4.    The claims in this action stem from the ESOP's purchase of stock from Douglas W. Hagen in December 2017 (the "ESOP Transaction"), the failure of the Plan's fiduciaries to remedy fiduciary violations in the ESOP Transaction, and the resulting loss of millions of dollars by the ESOP and its participants.

5.    The ESOP Trustee, Prudent Fiduciary Services, LLC ("Prudent") and its owner Miguel Paredes (together, "the Trustee"), represented the ESOP and its participants in the ESOP Transaction. The Trustee had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the ESOP's behalf and has continued to serve as Trustee following the ESOP Transaction.

6.    In contravention of their fiduciary duties and ERISA's prohibited transaction rules the Trustee, Douglas Hagen, Nathan Sloan, and Kathleen Hagen orchestrated the sale of the Company to the ESOP for greater than fair market value. Sloan and Douglas Hagen (and the Estate of Douglas Hagen) and Kathleen Hagen (the "Hagen Family Defendants") also failed to appropriately monitor the Trustee and ensure that the interests of participants and beneficiaries in the ESOP were protected in the ESOP Transaction.

7.      Specifically, the Hagen Family Defendants negotiated an inflated sale price with the Trustee, which unjustly enriched Mr. Hagen, and caused harm to the ESOP participants. Moreover, the Trustee permitted the Hagen Family Defendants to continue to operate B-K Lighting as their personal piggy bank after the ESOP Transaction.

8.      As a result of ERISA violations by the fiduciaries entrusted with their Plan, the Plan has been harmed and Plaintiff and other participants have not received all of their hard-earned retirement benefits or the loyal and prudent management of the ESOP to which they are entitled.

9.      As alleged below, the sale price for the ESOP Transaction failed to adequately account for B-K Lighting's trend of declining revenue, failure to modernize its products and marketing strategy in step with its competitors, turnover and inexperience among the senior management team, and business decisions made for the benefit of the Hagen Family Defendants to the detriment of the Company.

10.     At all relevant times, Defendant B-K Lighting was a closely held company and its stock did not trade on any securities market.

11.     ERISA Sections 409(a), 502(a)(2) & (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) & (a)(3), authorize participants such as Plaintiff to sue in a representative capacity for losses suffered by the ESOP.  Pursuant to that authority, Plaintiff brings this action on behalf of the Lite Star ESOP for violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106, and for appropriate equitable and other relief under § 1109 and 1132(a)(2) & (a)(3).

12.     **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

13.     **Personal Jurisdiction**.  This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, the United States, and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process.

14.     **Venue.**  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

(a)      Defendants may be found in this District, as they transact business in, and/or have significant contacts with this District;

(b)      Some Defendants reside in this District;

(c)      The ESOP is administered in this District; and/or

(d)      Some of the alleged breaches took place in this District.

## II.  PARTIES

**Plaintiff**

15.      **Plaintiff Linna Chea** is a former employee of the Company and a participant in the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff Chea worked at B-K Lighting between September 2015 and June 2021 as a Human Resources Generalist. At the time she left B-K Lighting, Plaintiff Chea was vested in the ESOP. She currently resides in Fresno, California.

**Defendants**

16.      **Defendant B-K Lighting, Inc.** is the Plan Sponsor within the meaning of ERISA § 3(16)(B), § 1002(16)(B). The Plan's governing instruments include conflicting information about the identity of the Plan Administrator within the meaning of ERISA § 3(16)(A), § 1002(16)(A). The Summary Plan Description ("SPD") for the ESOP states that the Company is the Plan Administrator, but that if an ESOP Committee is established, many of the functions of the Plan Administrator will be performed by the ESOP Committee. The SPD also states that the members of the ESOP Committee are Douglas Hagen, Kathleen Hagen, and Nathan Sloan. The Plan document states that the Plan Administrator shall consist of a committee of one or more persons who shall serve at the pleasure of the Board of Directors. If no person has been appointed to the committee, the Company is the Plan Administrator. In light of the foregoing, Plaintiff alleges that the Company served as the Plan Administrator and in the alternative, as alleged below, that the ESOP Committee served as the Plan Administrator. Plaintiff further alleges that, if the Company delegated its duties and responsibilities as the administrator to the ESOP Committee, it retained the duty to monitor the ESOP Committee's performance of its duties and responsibilities as administrator. As such, Defendant B-K Lighting is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of

the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP. The Company's primary corporate office is in Madera, California.

17.    In the alternative, **Defendant ESOP Committee** is a designated Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), § 1002(16)(A), and a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. The ESOP Committee is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by virtue of its position as Plan Administrator and because it exercised discretionary authority or discretionary control respecting the management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. The members of the ESOP Committee are Douglas Hagen (prior to his death), Kathleen Hagen, and Nathan Sloan.

18.    **Defendant Estate of Douglas W. Hagen.** Mr. Hagen, who passed away in December 2021, was the founder of the Company. At all relevant times Mr. Hagen was Chairman of the Board of Directors and Vice President of B-K Lighting. As a result of his membership on the Board of Directors, Mr. Hagen was a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). In addition, on December 31, 2017, Mr. Hagen sold 100% of B-K Lighting's stock to the ESOP for $25,270,000.

19.    **Defendant Kathleen Hagen** was at all relevant times the Secretary of the Company. Defendant Kathleen Hagen is and at all relevant times was also a member of the Board of Directors. According to the ESOP Plan Document, the Board of Directors, acting for the Company, appoints the Trustee of the ESOP and the Plan Administrator of the ESOP. As a result of her membership on the Board of Directors, Ms. Hagen is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Ms. Hagen is also the legal successor of Douglas Hagen, the founder of the Company who, at all relevant times, served as Chairman of the Board of Directors and Vice President of B-K Lighting. Upon information and belief, Ms. Hagen is the administrator of the Estate of Douglas Hagen. As a result of her membership on the Board of Directors, Ms. Hagen was a fiduciary of the ESOP within the

meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

20.     **Defendant Nathan Sloan** is and at all relevant times was the CEO and President of the Company. Defendant Sloan is and at all relevant times was also a member of the Board of Directors. According to the ESOP Plan Document, the Board of Directors, acting for the Company, appoints the Trustee of the ESOP and the Plan Administrator of the ESOP.  As a result of his membership on the Board of Directors, Mr. Sloan is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Mr. Sloan is the son of Kathleen Hagen and the stepson of Douglas Hagen. Douglas Hagen (and the Estate of Douglas Hagen), Kathleen Hagen, and Nathan Sloan will be referred to collectively as the "Hagen Family Defendants."

21.     **Defendant Prudent Fiduciary Services, LLC** ("Prudent") is a California Limited Liability Company. Prudent bills itself as a provider of professional Independent Fiduciary/ESOP Trustee, ERISA compliance consulting, and expert witness services related to employee benefit plans such as qualified retirement plans and health and welfare plans. Prudent's headquarters is at 100 N. Barranca St., Suite 870, West Covina, California 91791. Prudent is the trustee of the Lite Star ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). Prudent holds, manages and controls the ESOP's assets. Prudent is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP. Prudent authorized the ESOP's purchase of B-K Lighting stock from Mr. Hagen.

22.     **Defendant Miguel Paredes** is the President and Founder of Prudent. Mr. Paredes' business address is at Prudent Fiduciary Services, LLC, 100 N. Barranca St., Suite 870, West Covina, California 91791. Mr. Paredes is the trustee of the Lite Star ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). Mr. Paredes holds, manages and controls the ESOP's

assets. Mr. Paredes is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because he exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or has discretionary authority or discretionary responsibility in the administration of the ESOP. Mr. Paredes authorized the ESOP's purchase of B-K Lighting stock from Mr. Hagen. Prudent and Mr. Paredes are referred to together as "the Trustee."

## III.  FACTUAL ALLEGATIONS

**B-K Lighting, Inc.**

23.     B-K Lighting was founded in 1984 by Douglas Hagen and is headquartered in Madera, California. B-K Lighting designs, manufactures, and sells outdoor lighting fixtures.

24.     In 2014, Mr. Hagen passed control of operations of the Company to Nathan Sloan, who became President. Mr. Sloan, who is Mr. Hagen's stepson, had worked in various positions within the Company but lacked the managerial experience or ability to run B-K Lighting.

25.     Over the next several years the Company paid hundreds of thousands of dollars to outside consultants to train Mr. Sloan, help manage the Company's daily operations, and develop and execute its long-term strategy. On information and belief, substantial expenditures for outside management consultants have continued in more recent years.

26.     In 2014, the Company purchased a turboprop airplane, ostensibly for the Company's sales employees. However, the airplane was used almost exclusively by the Hagen family for personal travel. Douglas and Kathleen Hagen moved to Nevada in 2014 and the Hagen family used the plane to travel back and forth to Fresno and other destinations.

27.     The Company's sales declined significantly in 2017. One cause of the Company's declining sales was its failure to adapt to changes in the lighting industry. For example, the Company was slow to adopt LED technology in its lighting fixtures, which its competitors more quickly and uniformly incorporated into their products. In addition, B-K Lighting did not offer Bluetooth technology in its products until several years after its competitors. As late as 2021, the Company only had limited Bluetooth offerings in its product line.

28.     Another reason for the Company's declining sales and shrinking market share was its failure to adopt an effective digital marketing strategy. The Company had virtually no social media presence as of 2021.

29.     B-K Lighting's declining revenue was also caused by inexperienced management and turnover among management and sales team members. Mr. Sloan lacked the experience and expertise necessary to run the Company and required the assistance of outside consultants, which cost the Company hundreds of thousands of dollars.

30.     Despite his lack of experience, B-K Lighting paid Mr. Sloan a salary substantially in excess of the market rate for a company president in the Fresno area. The valuation relied upon by the Trustee for the ESOP Transaction did not adequately consider the negative financial impact resulting from B-K Lighting paying Mr. Sloan a salary substantially in excess of the market rate for a company president in the Fresno area.

31.     For many years, Mr. Hagen and Mr. Sloan limited inventory write-offs to a nominal amount each year. As a result, at the time of the ESOP Transaction in 2017, the Company had a warehouse full of obsolete products that were not saleable but were counted as valuable inventory on the Company's balance sheet. In other words, the ESOP paid for obsolete inventory as part of the ESOP Transaction. The valuation relied upon by the Trustee for the ESOP Transaction did not adequately consider the negative financial impact resulting from the ESOP paying for worthless inventory.

32.     On January 1, 2018 – the day after the ESOP Transaction – Mr. Sloan, as President, signed a $2 million consulting agreement to pay Mr. Hagen $500,000 per year for four years. Mr. Hagen did not provide any services under this agreement due to ill health but was nevertheless paid until his death. The valuation relied upon by the Trustee for the ESOP Transaction did not adequately consider the negative financial impact resulting from Mr. Hagen's consulting agreement.

33.     Also in early 2018, the Company agreed to loan money to a Hagen family investment company, Coarsegold Equipment, LLC ("Coarsegold"), for Coarsegold to purchase a jet airplane, which Coarsegold then leased to the Company. The Company also hired a pilot as a full-

time employee to fly the jet. Although the jet was ostensibly for the Company's sales employees, it was used almost exclusively for the Hagen family's personal travel.

34.     The Hagen family had already made the decision to purchase the jet airplane with money loaned from B-K Lighting to Coarsegold and have Coarsegold lease the plane to B-K Lighting prior to the ESOP Transaction but did not inform the Trustee of this decision. The valuation for the 2017 ESOP Transaction did not properly account for the financial impact of the planned purchase of the jet airplane.

35.     Before the ESOP Transaction and following the ESOP Transaction, Coarsegold leased a forklift to B-K Lighting, for which the Company makes monthly payments to Mr. Sloan and Mr. Hagen's daughter, Kim Minard. Former management concluded that the forklift does not exist after attempting to locate it. The valuation relied upon by the Trustee for the ESOP Transaction did not adequately consider the negative financial impact of this sham leasing agreement.

**The 2017 ESOP Transaction**

36.     Prior to the ESOP Transaction, Douglas Hagen owned 100% of B-K Lighting's stock.

37.     On August 29, 2017, B-K Lighting established the Lite Star Employee Stock Ownership Plan effective September 1, 2016.

38.     The ESOP Transaction was financed primarily through a loan from Mr. Hagen to B-K Lighting and a corresponding promissory note from the ESOP to B-K Lighting. Mr. Hagen received cash and warrants as part of the consideration for the 2017 ESOP Transaction.

39.     The ESOP paid more than fair market value for B-K Lighting stock and took on excessive debt in the ESOP Transaction. The purchase price was based in part on a valuation report that was unreliable.

40.     On information and belief, the Hagen Family Defendants continue to hold the loan to B-K Lighting from the 2017 ESOP Transaction and warrants received in the 2017 ESOP Transaction.

41.     On information and belief, the balance of each personal account into which the 2017 ESOP Transaction proceeds were deposited have remained above the amount of the total proceeds deposited therein.

42.     B-K Lighting was saddled with excessive debt as a result of the ESOP Transaction.

43.     The ESOP Transaction price was based on unrealistic financial projections and did not adequately reflect future revenue and earnings given factors known or knowable at the time of the ESOP Transaction. The projections provided by B-K Lighting management did not account for, *inter alia*, the Company's declining sales, the turnover and inexperience within the senior leadership team which caused the Company to spend hundreds of thousands of dollars in management consultant fees, the fact that hundreds of thousands of dollars of "valuable" inventory was actually obsolete and should have been written off, the debt burden taken on by B-K Lighting in the ESOP Transaction, and the Hagen family's continued treatment of the Company as its personal piggy bank. These factors were known or knowable to the Hagen Family Defendants and the Trustee at the time of the ESOP Transaction.

44.     The ESOP paid a control premium for B-K Lighting stock in the ESOP Transaction even though the Hagen Family Defendants retained control of the Company following the Transaction, including control over the Board of Directors. The Hagen Family Defendants' continued control of B-K Lighting is also evidenced by the jet airplane transaction and the Douglas Hagen consulting contract alleged above.

45.     A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the B-K Lighting stock in the ESOP transaction.

46.     Plaintiff further alleges that the factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Trustee's due diligence in the course of the ESOP Transaction was far less extensive than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The ESOP overpaid for B-K Lighting stock in the ESOP Transaction because of the Trustee's failure to conduct adequate due diligence.

47.     The valuation report and fairness opinion obtained by the Trustee for the ESOP Transaction were not provided to Plaintiff.

48.     The Hagen Family Defendants knew or should have known that B-K Lighting provide incomplete and unreliable information to the Trustee for the Trustee's due diligence for the 2017 ESOP Transaction.

49.     The Hagen Family Defendants, acting on behalf of the Company, appointed Mr. Paredes and Prudent to be the Trustee of the ESOP. Plaintiff did not receive a copy of or have an opportunity to review the engagement agreement between the Company and Mr. Paredes and Prudent prior to the commencement of this litigation. The Hagen Family Defendants had an ongoing obligation to monitor the Trustee to ensure that he was acting prudently, loyally and in conformance with ERISA's fiduciary requirements and that the ESOP did not violate the prohibited transaction rules when purchasing the Company stock. The Hagen Family Defendants' duty to monitor included a duty to make sure that the Trustee was investigating, evaluating, and pursuing the ESOP's legal claims arising from fiduciary violations and prohibited transactions in connection with the ESOP Transaction and subsequent to the ESOP Transaction.

50.     As required by 29 U.S.C. § 1102, the ESOP was established and is currently maintained pursuant to a written instrument, titled the Lite Star ESOP (the "Plan").

51.     Plaintiff did not receive a copy of or have an opportunity to review the Plan prior to the commencement of this litigation.

52.     The Plan states that "Plan Administrator" means the person or committee named as such pursuant to Article XIII of the Plan. Article XIII, in turn, states that the Plan Administrator shall consist of a committee of one or more persons who shall serve at the pleasure of the Board of Directors. If no person has been appointed to the committee, the Company is the Plan Administrator.

53.     The Summary Plan Description ("SPD") for the ESOP states that the Company is the Plan Administrator, but that if an ESOP Committee is established, many of the functions of the Plan Administrator will be performed by the ESOP Committee. The SPD also states that the members of the ESOP Committee are Douglas Hagen, Kathleen Hagen, and Nathan Sloan.

54.     As a direct and proximate result of the actions of the Defendants related to the ESOP Transaction, the ESOP and its participants have suffered millions of dollars of losses, for which all Defendants are jointly and severally liable.

**Douglas Hagen's Death and Insurance Policy**

55.     Mr. Hagen was in declining health at the time of the ESOP Transaction and died of multiple myeloma in December 2021. The Company continued to pay Mr. Hagen $500,000 per year under his consulting contract up until the time of his death, despite the fact that his ill health prevented him from providing any significant services to the Company.

56.     Mr. Hagen was covered by a $5 million key man life insurance policy paid for by the Company and which named the Company as the beneficiary. The death benefit was paid to the Company following Mr. Hagen's death in December 2021, but the funds have been set aside in a separate bank account because Mr. Sloan has not yet decided whether the money will be transferred to his family.

**Alleged Indemnification Payments**

57.     On information and belief, after Plaintiff filed the Complaint in this action on April 27, 2023, the Company has been paying all or part of the defense costs of Defendants Lite Star ESOP Committee, Nathan Sloan, Kathleen A. Hagen, Estate of Douglas A. Hagen, Prudent Financial Services LLC, and Miguel Paredes. To date, the Company has spent thousands of dollars on these Defendants' attorneys' fees and other litigation-related expenses. Up to and including the date of this filing, the Company continues to pay these Defendants' defense costs.

**COUNT I**
**Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)**
(Against Miguel Paredes, Prudent Fiduciary Services, LLC, the Estate of Douglas Hagen and Kathleen Hagen as legal successor to Douglas Hagen)

58.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

59.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

60.    ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include "any fiduciary … of such employee benefit plan" and "an employee, officer or director . . . or a 10 percent or more shareholder" of an employer covered by the Plan. 29 U.S.C. § 1002(14)(A), (H).

61.    Douglas Hagen was a "fiduciary" as to the 2017 ESOP Transaction within the meaning of ERISA § 3(21)(A).

62.    Douglas Hagen was a "party in interest" as to the 2017 ESOP Transaction within the meaning of ERISA § 3(14).

63.    Douglas Hagen received millions of dollars in cash, notes, and warrants for the Company stock he sold. He had actual or constructive knowledge that the 2017 ESOP Transaction constituted a direct or indirect sale of property between the ESOP and himself as a party in interest. Further, he had actual or constructive knowledge that the 2017 ESOP Transaction was for more than fair market value and not in the best interests of the ESOP.

64.    As a party-in-interest, Douglas Hagen, his estate, and his successors in interest are liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

65.    ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

66.    ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18)(B). ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid reflected the fair market value of the asset at the time of the transaction, and that the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

67.    The Trustee caused the ESOP to engage in prohibited transactions in the ESOP Transaction in violation of ERISA §§ 406(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1106(a)(1)(A), (B) and (D).

68.    As the fiduciary who caused the ESOP to engage in the prohibited transactions, the Trustee is personally liable to make good to the ESOP any losses to the plan resulting from the

prohibited transactions and shall be subject to such other equitable or remedial relief as the Court may deem appropriate.

69.    Douglas Hagen knew or should have known that B-K Lighting had provided incomplete and unreliable information to the Trustee for the Trustee's due diligence for the 2017 ESOP Transaction. In addition, Douglas Hagen knew or should have known that the valuation for the ESOP Transaction was based on inflated revenue, earnings and cash flow projections that did not adequately take into consideration the Company's declining sales, its inability to keep up with its competitors, turmoil and turnover among the management and sales teams, and its function as the Hagen family's personal piggy bank.

70.    As such, Douglas Hagen was aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with a party in interest. As a party in interest, Douglas Hagen, his estate, and his successors in interest are liable for the violations of ERISA § 406(a)(1)(A), (B) and (D), 29 U.S.C. § 1106(a)(1)(A), (B) and (D).

71.    Plaintiff seeks appropriate relief from Douglas Hagen's estate and successors in interest, including a surcharge remedy, rescission, imposition of a constructive trust on any proceeds received (or which are traceable thereto), and the disgorgement of any ill-gotten gains they received in connection with the ESOP Transaction.

**COUNT II**
**Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. §§ 1106(b)**
(Against the Estate of Douglas Hagen and Kathleen Hagen as legal successor to Douglas Hagen)

72.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

73.    ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. § 1106(b)(1).

74.    ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants[.]" 29 U.S.C. § 1106(b)(2).

75.    ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

76.     As alleged above, Douglas Hagen was a member of the Board of Directors as well as a member of the ESOP Committee.

77.     As such, Douglas Hagen was a fiduciary of the Lite Star ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21).

78.     Douglas Hagen dealt with the ESOP assets in his own interest within the meaning of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

79.     ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants[.]" 29 U.S.C. § 1106(b)(2).

80.     Douglas Hagen had fiduciary control over the ESOP and acted as an adverse party to the ESOP in the ESOP Transaction within the meaning of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

81.     ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

82.     Douglas Hagen received consideration for his own personal accounts from the Trustee and/or B-K Lighting in the ESOP Transaction within the meaning of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

83.     Douglas Hagen violated ERISA § 406(b)(1)-(3), 29 U.S.C. § 1106(b)(1)-(3), and therefore his Estate and successors in interest are liable to restore the losses caused by these prohibited transactions, to disgorge profits or other appropriate remedial and equitable relief.

**COUNT III**
**Breach of Fiduciary Duties Under ERISA §§ 404(a),**
**29 U.S.C. §§ 1104(a)(1)**
(Against Miguel Paredes and Prudent Fiduciary Services, LLC)

84.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

85.     ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

86.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

87.    In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to ensure that the ESOP and its participants pay no more than adequate consideration for the ESOP's assets and the participants' account in the ESOP.

88.    Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

89.    The Trustee was required to undertake an appropriate and independent investigation of the fair market value of the B-K Lighting stock before approving the ESOP Transaction in order to fulfill his fiduciary duties. Among other things, the Trustee was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the ESOP Transaction; to investigate the credibility of the management assumptions and earnings projections underlying the valuation, and to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

90.    An appropriate investigation would have revealed that the valuation used for the ESOP Transaction and the price ultimately paid by the ESOP did not reflect the fair market value of the stock purchased by the ESOP.

91.    An appropriate investigation would have revealed that the ESOP Transaction was not in the best interest of the ESOP participants.

92.    After the ESOP Transaction, the Trustee was obligated to remedy the ESOP's overpayment, including as necessary correcting the prohibited transaction by attempting to restore the amount overpaid by the ESOP back to the ESOP, and also including, if necessary, by filing a lawsuit on behalf of the ESOP. The Trustee was obligated to take action when the Hagen Family

Defendants continued to mismanage and misappropriate Company funds in the wake of the ESOP Transaction, including by, *inter alia*, (i) purchasing a jet which Coarsegold leased to B-K Lighting and used almost exclusively for family travel, (ii) paying Douglas Hagen $500,000 per year while he performed no significant services for the Company, and (iii) making monthly payments to Mr. Sloan and Ms. Minard for a forklift that did not exist, and (iv) refusing to distribute the proceeds of Mr. Hagen's life insurance policy—which belong to the Company—to the Company.

93.    By causing the ESOP to engage in the ESOP Transaction, and failing to restore the losses caused thereby, the Trustee breached his fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B) and caused losses to the ESOP and the individual retirement accounts of the participants in the ESOP.

**COUNT IV**
**Failure to Monitor in Violation of ERISA §§ 404(a)(1)(A) and (B)**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**
(Against Nathan Sloan, the Estate of Douglas Hagen, Kathleen Hagen, Kathleen Hagen as legal successor to Douglas Hagen, B-K Lighting, and the ESOP Committee)

94.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

95.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan."

96.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

97.    ERISA § 404(a)(1)(A) and (B) provide that any fiduciary with the power to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation to make certain that the appointed fiduciary is qualified to serve in the position as fiduciary, and to monitor the appointed fiduciary to ensure that he/she remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA. If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses to the plan caused by the ERISA violations.

98.    The Trustee was appointed by the Hagen Family Defendants. Thus, the Hagen Family Defendants had a duty to monitor the Trustee.

99.    The Plan provides that the Plan Administrator is appointed by the Board of Directors. At the time of the ESOP Transaction, the Board of Directors was comprised of the Hagen Family Defendants. Thus, the Hagen Family Defendants also had a duty to monitor the Plan Administrator.

100.    The Plan further confers power over the Trustee on the Plan Administrator: for example, the Trustee votes shares of Company stock at the written direction of the Plan Administrator, and the Plan Administrator directs the Trustee to invest employer contributions in Company stock. Thus, the Plan Administrator had a duty to monitor the Trustee.

101.    The Hagen Family Defendants breached their duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B) because they failed to monitor the Trustee and the Plan Administrator to ensure that the ESOP did not engage in the ESOP Transaction given the inflated stock price, and/or that the ESOP paid no more than fair market value for the Company stock in the Transaction, and/or that the Trustee took remedial action after the ESOP Transaction. Nathan Sloan, Kathleen Hagen, and Douglas Hagen's successors in interest are liable for these breaches.

102.    B-K Lighting also breached duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B) because, as Plan Administrator, the Company failed to monitor the Trustee and ensure the Trustee took remedial action after the ESOP Transaction.

103.    In the alternative, the ESOP Committee breached duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B) because, as Plan Administrator, the ESOP Committee failed to monitor the Trustee and ensure the Trustee took remedial action after the ESOP Transaction.

### COUNT V
#### Co-Fiduciary Liability Under ERISA §§ 405(a)(1) and (a)(3), 29 U.S.C. §§ 1105(a)(1) and (a)(3)
(Against Nathan Sloan, the Estate of Douglas Hagen, Kathleen Hagen, and Kathleen Hagen as legal successor to Douglas Hagen)

104.    Plaintiff incorporates the preceding paragraphs as if set forth herein.

105.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the

same plan" [] "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary[.]"

106. Because the Hagen Family Defendants held management and leadership positions within the Company, (i) they were involved in preparing the revenue, earnings and cash flow projections underlying the valuation relied upon by Paredes that resulted in the ESOP overpaying for the stock it purchased; (ii) they knew about the failure of the financial projections to adequately account for, *inter alia*, the Company's trend of declining revenues and projected expenditures on airplanes and consultants; (iii) they knew that the inflated financial projections they prepared would be used to determine the value the ESOP would pay for the stock that was purchased and thus cause the ESOP to overpay; and (iv) they knew that B-K Lighting provided incomplete and unreliable information to the Trustee for due diligence for the 2017 ESOP Transaction.

107. Further, the Hagen Family Defendants knew that they continued to mismanage and misappropriate company funds for their own personal use and gain, essentially treating B-K Lighting as their piggy bank.

108. Thus, the Hagen Family Defendants knowingly participated in the fiduciary violations of the Trustee alleged above and knew that the Trustee's actions violated ERISA. As such, under ERISA § 405(a)(1)), 29 U.S.C. § 1105(a)(1), Nathan Sloan, Kathleen Hagen, the Estate of Douglas Hagen, and Douglas Hagen's legal successors are liable as co-fiduciaries for the ESOP's losses as a result of the Trustee's fiduciary violations.

### COUNT VI
### Equitable Relief Under ERISA § 502(a)(3), 29 U.S.C § 1132(a)(3)
(Against Nathan Sloan, the Estate of Douglas Hagen, Kathleen Hagen, and Kathleen Hagen as legal successor to Douglas Hagen)

109. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

110. Under 29 U.S.C. § 1132(a)(3), a court may award "other appropriate equitable relief" to redress "any act or practice" that violates ERISA. A defendant may be held liable under this section regardless of whether he or she is a fiduciary. A non-fiduciary transferee of ill-gotten assets of the Plan is subject to equitable disgorgement of those assets if the non-fiduciary had

actual or constructive knowledge of the circumstances that rendered the transaction or payment unlawful.

111.     Douglas Hagen knowingly participated in and profited from the fiduciary breaches and prohibited transactions alleged herein with full knowledge that his ownership interests were being unlawfully acquired for greater than fair market value.

112.     Upon information and belief, the consideration Douglas Hagen received as a result of the ESOP Transaction is part of his Estate. Upon information and belief, Nathan Sloan and Kathleen Hagen are the beneficiaries of that Estate and have received the proceeds of the ESOP Transaction.

113.     Pursuant to 29 U.S.C. § 1132(a)(3), Nathan Sloan, Kathleen Hagen, the Estate of Douglas Hagen, and Douglas Hagen's legal successors and Douglas Hagen's successors in interest should be required to disgorge the consideration they have received as a result of the ESOP Transaction. As discussed above, the consideration that Douglas Hagen received impermissibly exceeded the fair market value of his ownership interests. Moreover, the Hagen Family Defendants had actual or constructive knowledge of the circumstances that made the transaction unlawful, *i.e.*, that Douglas Hagen received greater than fair market consideration based on, *inter alia*, (i) their personal familiarity with the value of Mr. Hagen's equity interests; (ii) their access to the books and records of B-K Lighting; (iii) their inside knowledge of confidential financial and business information pertaining to the same; (iv) their status as officers, directors, and members of the Hagen family; and (v) their close personal and/or family relationships to other company insiders. As such, Nathan Sloan and Kathleen Hagen had actual or constructive knowledge that any consideration for the ESOP Transaction that they received through the Estate of Douglas Hagen were ill-gotten gains.

114.     Consideration paid to the Hagen Family Defendants in connection with the ESOP Transaction is in the current possession of Nathan Sloan, Kathleen Hagen, and Douglas Hagen's successors in interest and/or traceable.

115.     Nathan Sloan, Kathleen Hagen, and Douglas Hagen's successors in interest cannot retain this consideration, which rightfully belongs to the ESOP, to the extent it exceeded the fair market value.

**COUNT VII**
**Violation of ERISA § 410 & Breach of Fiduciary Under ERISA §§ 404(a), 29 U.S.C. § 1110 & §§ 1104(a)**
(Against Miguel Paredes, Prudent Fiduciary Services, LLC, B-K Lighting, ESOP Committee, Nathan Sloan, the Estate of Douglas Hagen, Kathleen Hagen, and Kathleen Hagen as legal successor to Douglas Hagen)

116.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

117.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy." As Part IV of ERISA includes ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104, 1105 and 1106, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA § 410(a), unless there is an exception or exemption. No such exception or exemption is applicable here.

118.     The DOL Regulations promulgated under ERISA § 410, 29 C.F.R. § 2509.75-4, renders "void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" because it would have "the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations."

119.     For a 100% ESOP-owned company, a provision requiring indemnity by the ESOP-owned company is treated as an indemnity provision by the Plan because it effectively requires ESOP participants to pay for the costs of the breaching fiduciaries' liability. The payment of a fiduciary defendant's litigation expenses is an indemnity. Having an ESOP sponsor pay for fiduciary defendants' litigation expenses is "tantamount to asking ESOP participants to pay for Defendants' defense costs." *Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009) (affirming preliminary injunction). "Indemnification by an ESOP sponsor functionally equates to an impermissible indemnification by the ESOP itself." *Pfeifer v. Wawa, Inc.*, 214 F. Supp. 3d 366, 373 (E.D. Pa. 2016) (citing cases including *Johnson*, 572 F.3d at 1079); *see Woznicki v. Raydon*

*Corp.*, No. 6:18-CV-2090, 2019 WL 5702728, at *5 (M.D. Fla. Nov. 4, 2019) (reaching the same conclusion).

120.    The Plan provides that the Company shall indemnify the Trustee "against costs, expenses and liabilities (other than amounts paid in settlement to which the Employer does not consent) reasonably incurred by him/her in connection with any action to which he/she may be a party by reason of his/her service as a Trustee."

121.    The Plan further provides that the Company shall indemnify each member of the committee constituting the Plan Administrator, each member of the ESOP Committee, and each member of the Review Committee "against costs, expenses and liabilities (other than amounts paid in settlement to which the Employer does not consent) reasonably incurred by him/her in connection with any action to which he/she may be a party by reason of his/her service" as a member of each committee.

122.    As these Plan provisions purport to relieve the Trustees and the members of the ESOP Committee of their responsibility or liability for certain ERISA violations or to have the Company and thereby the ESOP be responsible for such liability, they are void as against public policy.

123.    After Plaintiff filed this lawsuit in April 2023, the Company has indemnified Defendants Lite Star ESOP Committee, Nathan Sloan, Kathleen A. Hagen, both individually and as legal successor to Douglas W. Hagen, Prudent Financial Services LLC, and Miguel Paredes by paying all or part of their defense costs in this litigation. Each of these Defendants is a fiduciary of the ESOP. Accordingly, the Company has and continues to indemnify fiduciaries of the ESOP pursuant to the invalid indemnity provision in the Plan.

124.    By making indemnification payments pursuant to a Plan provision that is void against public policy under ERISA § 410—and specifically, by having the Company and, by extension, the ESOP, pay the costs of defense for Defendants who are also ESOP fiduciaries – the Hagen Family Defendants, ESOP Committee, the Trustee, and the Company breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits

to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

125.    Further, the Trustees, Nathan Sloan, Kathleen Hagen, and Douglas Hagen's successors in interest should be ordered to disgorge all indemnification payments made by the Company, and/or the ESOP, including but not limited to defense costs associated with this litigation, plus interest.

## VIII.   PRAYER FOR RELIEF

Plaintiff, on behalf of the Plan, prays that judgment be entered against Defendants on each Count and that the Plan be awarded the following relief:

A.      Declare that the Trustee, Douglas Hagen, Nathan Sloan, and Kathleen Hagen, have each breached their fiduciary duties under ERISA;

B.      Declare that the Trustee and Douglas Hagen each engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a) through the 2017 ESOP Transaction;

C.      Declare that the Trustee and Douglas Hagen each engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b) through the 2017 ESOP Transaction;

D.      Declare that Douglas Hagen knowingly participated in and profited from the fiduciary breaches and prohibited transactions alleged herein with full knowledge that his ownership interest was being unlawfully acquired for greater than fair market value;

E.      Declare that the Estate of Douglas Hagen and Kathleen Hagen, as legal successor to Douglas Hagen, are liable for the ERISA violations committed by Douglas Hagen;

F.      Enjoin the Trustee, Nathan Sloan, and Kathleen Hagen from further violations of their fiduciary responsibilities, obligations and duties;

G.      Remove the Trustee as the Trustee of the Lite Star ESOP and/or bar him from serving as a fiduciary of the ESOP in the future;

H.      Appoint a new independent fiduciary to manage the Lite Star ESOP and order the costs of such independent fiduciary be paid for by Defendants;

I.    Order each fiduciary found to have violated ERISA, including breaching his/her/its fiduciary duties to the ESOP, to jointly and severally pay such amount to restore all losses resulting from their breaches and to disgorge all profits made through use of assets of the ESOP;

J.    Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to reforming or rescinding the Transaction, forfeiting their ESOP accounts, providing an accounting for profits, surcharge, and/or imposing a constructive trust or equitable lien on any funds wrongfully held by any of the Defendants;

K.    Order Defendants to provide all accountings necessary to determine the amounts Defendants must remit to the ESOP to restore losses and to disgorge any profits fiduciaries obtained from the use of ESOP assets or other violations of ERISA § 404 and 406, 29 U.S.C. § 1104 and 1106;

L.    To the extent necessary, issue an injunction or order creating a constructive trust into which all ill-gotten gains, fees and/or profits paid to any of the Defendants in violation of ERISA shall be placed for the sole benefit of the ESOP's participants and beneficiaries.  This includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to any of the Defendants that have been wrongly obtained as a result of breaches of fiduciary duty or prohibited transactions or other violations of ERISA;

M.    Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or order payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the ESOP;

N.    Issue a preliminary and permanent injunction barring Defendants and each of them from seeking or continuing to enforce Sections 4.1(e), 13.10, 14.6, 15.4 of the Plan, or any other indemnification agreement between Defendants and the ESOP or the Company;

O.    Order Defendants and each of them to reimburse the ESOP or the Company for any money advanced or paid by the ESOP or the Company, respectively, under any indemnification agreement or other instrument between Defendants and the ESOP or the Company;

P.    Award pre-judgment interest and post-judgment interest; and

Q.      Award such other and further relief that the Court determines that Plaintiff and the ESOP are entitled to pursuant to ERISA § 502(a)(2) and/or § 502(a)(3), 29 U.S.C. § 1132(a)(2) and/or 1132(a)(3) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

DATED: October 24, 2024                    Respectfully Submitted,


By: ___/s/ Daniel Feinberg_____
     Daniel Feinberg (SBN No. 135983)
     Anne Weis (SBN No. 336480)
     FEINBERG, JACKSON, WORTHMAN
     & WASOW, LLP
     2030 Addison Street, Suite 500
     Berkeley, CA 94704
     Tel. (510) 269-7998
     Fax (510) 269-7994
     dan@feinbergjackson.com
     anne@feinbergjackson.com


     Michelle C. Yau (*pro hac vice* to be filed)
     Caroline Bressman (*pro hac vice* to be filed)
     COHEN MILSTEIN SELLERS & TOLL PLLC
     1100 New York Ave. NW, Suite 500
     Washington, DC 20005
     Tel. (202) 408-4600
     Fax (202) 408-4699
     myau@cohenmilstein.com
     cbressman@cohenmilstein.com

     *Counsel for Plaintiff*