1  Daniel Feinberg (SBN No. 135983)
   FEINBERG, JACKSON,
2  WORTHMAN, WASOW LLP
   2030 Addison Street, Suite 500
3  Berkeley, CA 94704
   Telephone: (510) 269-7998
4  Fax: (510) 269-7994

5  Michelle C. Yau (admitted *pro hac vice*)
   Caroline E. Bressman (admitted *pro hac vice*)
6  COHEN MILSTEIN SELLERS & TOLL PLLC
   1100 New York Ave. NW ● Suite 800
7  Washington, DC 20005
   Telephone: (202) 408-4600
8  Fax: (202) 408-4699

9  *Counsel for Plaintiff*

10

11

12              **UNITED STATES DISTRICT COURT**

13              **EASTERN DISTRICT OF CALIFORNIA**

14

15  Linna Chea, on behalf of the Lite Star, Inc.        No: 1:23-cv-00647-SAB
    Employee Stock Ownership Plan,
16                                                       **MOTION FOR PRELIMINARY APPROVAL**
                                                         **OF CLASS ACTION SETTLEMENT**
17              Plaintiff,                                **AGREEMENT AND CERTIFICATION OF**
                                                         **SETTLEMENT CLASS**
       vs.
18                                                       Date:   September 24, 2025
    LITE STAR ESOP COMMITTEE, B-K                        Time:  10:00 a.m.
19  LIGHTING, INC., NATHAN SLOAN,                        Courtroom: 9
    KATHLEEN A. HAGEN, KATHLEEN A.
20  HAGEN, as legal successor to DOUGLAS
    W. HAGEN, ESTATE OF DOUGLAS W.
21  HAGEN, MIGUEL PAREDES, and
    PRUDENT FIDUCIARY SERVICES, LLC,
22  a California Limited Liability Company,

23              Defendants.

24

25

26

27

28
   ─────────────────────────────────────────────
   PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
   AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 1
        A.      Claims Alleged in the Complaint ............................................................ 1
        B.      Procedural History ................................................................................... 2
        C.      Summary of the Proposed Settlement Terms ........................................... 3
                (1)     The Proposed Settlement Class ..................................................... 3
                (2)     Settlement Terms and Benefits to the Class ................................. 3
                (3)     Notice and Administration ............................................................ 4
                (4)     Motion for Attorneys' Fees, Expense Reimbursements, and Service Awards ...................................................................................... 4
                (5)     Review by an Independent Fiduciary ............................................ 5
                (6)     Release of Claims ........................................................................ 5

III.    ARGUMENT ....................................................................................................... 5
        A.      The Court Should Certify the Settlement Class. ...................................... 5
                (1)     The Proposed Settlement Class Satisfies the Requirements of Rule 23(a). ........................................................................................... 6
                (2)     The Requirements for Certification under Rule 23(b)(1) Are Met. ............. 9
        B.      The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable, and Adequate. ..................................................... 11
                (1)     The Settlement is the Result of Serious, Informed, and Non-collusive Negotiations Aided by an Experienced Mediator. .................. 11
                (2)     The Settlement Is Within the Range of Reasonableness. .............. 12
                (3)     The Settlement Has No Obvious Deficiencies. ............................ 15
        C.      The Proposed Class Notice and Plan of Notice are Appropriate. ........... 16

IV.     CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ................................................................ 6

*Acosta v. Mueller*,
    No. 2:13-cv-01302, ECF 226-1 (E.D. Wis. Dec. 20, 2017) .................................. 13

*Aguilar v. Melkonian Enters., Inc.*,
    2006 WL 3199074 (E.D. Cal. Nov. 3, 2006) ....................................... 17

*Amchem v. Windsor*,
    521 U.S. 591 (1997) ................................................................................ 9

*Anderson-Butler v. Charming Charlie Inc.*,
    2015 WL 4599420 (E.D. Cal. July 29, 2015) ................................ 16, 17

*Casey v. Doctor's Best, Inc.*,
    2022 WL 1726080 (C.D. Cal. Feb. 28, 2022) ....................................... 14

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................ 17

*Colesberry v. Ruiz Food Prods., Inc.*,
    2006 WL 1875444 (E.D. Cal. June 30, 2006) .................................... *passim*

*Collins v. Cargill Meat Sols. Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011) ........................................................ 6

*Criswell v. Boudreaux*,
    2021 WL 4461640 (E.D. Cal. Sept. 29, 2021) ...........................11, 12, 17

*Ebarle v. Lifelock, Inc.*,
    2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ....................................... 12

*Foster v. Adams & Assocs., Inc.*,
    2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) .................................... 14

*Foster v. Adams & Assocs., Inc.*,

    2019 WL 4305538 (N.D. Cal. Sept. 11, 2019)............................................7, 8, 9, 11

*Foster v. Adams & Assocs., Inc.*,

    2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ...................................................... 14

*Gamino v. KPC Healthcare Holdings, Inc.*,

    2023 WL 3325190 (C.D. Cal. Mar. 11, 2023 ...................................................... 14

*Gamino, v. KPC Healthcare Holdings, Inc.*,

    2021 WL 7081190 (C.D. Cal. Aug. 6, 2021) ...................................................... 7, 8

*Garybo v. Leonardo Bros.*,

    2019 WL 2325564 (E.D. Cal. May 31, 2019) ...................................................... 6

*Gen. Tel. Co. of Sw. v. Falcon*,

    457 U.S. 147 (1982)......................................................................................... 7

*Grant v. Cap. Mgmt. Servs., L.P.*,

    2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) ................................................... 15

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ....................................................................... 6, 8

*Hesse v. Sprint Corp.*,

    598 F.3d 581 (9th Cir. 2010) ........................................................................ 15

*Hurtado v. Rainbow Disposal Co.*,

    2019 WL 1771797 (C.D. Cal. Apr. 22, 2019) ................................................ 8, 11

*Just Film, Inc. v. Buono*,

    847 F.3d 1108 (9th Cir. 2017) ....................................................................... 7

*Kanawi v. Bechtel Corp.*,

    254 F.R.D. 102 (N.D. Cal. 2008).................................................................. 7, 9

*Markson v. CRST Int'l, Inc.*,

    2022 WL 805615 (C.D. Cal. Feb. 24, 2022) ................................................... 16

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*,

    268 F.R.D. 670 (W.D. Wash. 2010) ............................................................. 7, 8

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)................................................................. 14

*Nen Thio v. Genji, LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ...................................................... 15

*Norris v. Mazzola*,
  2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ......................................... 10

*Ontiveros v. Zamora*,
  2014 WL 3057506 (E.D. Cal. July 7, 2014) ...................................... 12, 14

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ................................................................................. 10

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................... 7

*Pfeifer v. Wawa, Inc.*,
  2018 WL 4203880 (E.D. Pa. Aug. 31, 2018)........................................... 14

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................................. 7

*Rodriguez v. Danell Custom Harvesting, LLC*,
  293 F. Supp. 3d 1117 (E.D. Cal. 2018).................................................... 7

*Scalia v. The Farmers Nat'l Bank of Danville*,
  1:20-cv-00674, ECF 5 (S.D. Ind. April 3, 2020) ................................... 13

*Smith v. GreatBanc Tr. Co.*,
  No. 1:20-cv-02350, ECF 163 (N.D. Ill. Aug. 23, 2023) ....................... 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................... 7, 8, 11

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)............................... 9, 14, 16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................. 11

*Wang v. Chinese Daily News, Inc.*,

737 F.3d 538 (9th Cir. 2013) ................................................................. 6

*West v. Circle K Stores, Inc.*,

2006 WL 1652598 (E.D. Cal. June 13, 2006) .................................... 12

**Statutes**

ERISA

§ 404(a), 29 U.S.C. § 1104(a) ............................................................ 10

§ 405(a), 29 U.S.C. § 1105(a) .............................................................. 2

§ 406(a), 29 U.S.C. § 1106(a) .............................................................. 2

§ 406(b), 29 U.S.C. § 1106(b) .............................................................. 2

§ 410(a), 29 U.S.C. § 1110 (a) .............................................................. 2

§ 502(a), 29 U.S.C. § 1132(a) .............................................................. 2

**Other Authorities**

Fed R. Civ. P. 23 ....................................................................... *passim*

1  **I.**    **INTRODUCTION**

2        Plaintiff Linna Chea seeks preliminary approval of the settlement reached in this case

3  between Plaintiff and Defendants B-K Lighting, Inc. ("B-K" or the "Company"), Nathan Sloan,

4  Kathleen A. Hagen, Kathleen A. Hagen, as legal successor to Douglas W. Hagen, Estate of

5  Douglas W. Hagen, the Lite Star ESOP Committee (collectively, "Hagen Defendants"), and

6  Miguel Paredes and Prudent Fiduciary Services, LLC (collectively, "PFS") (B-K, Hagen

7  Defendants and PFS hereinafter collectively, "Defendants"). Pursuant to the Settlement,

8  Defendants have collectively agreed to a Settlement Amount[1] comprised of a $1.5 million Cash

9  Payment and a $1 million principal reduction on the debt the Company owes (after assuming the

10 ESOP's debt) from acquiring the Company (less deductions for attorneys' fees, costs, settlement

11 administration and a service award). In exchange, the Class will dismiss with prejudice its claims

12 asserted in the Amended Complaint (ECF No. 59) ("AC") against Defendants. The Class will also

13 release Defendants from any claims relating to or arising out of the allegations of the AC. Given

14 the uncertainty of establishing both liability and the amount of monetary relief against

15 Defendants, the Settlement represents a fair, reasonable, and adequate result for the Settlement

16 Class.

17        Plaintiff respectfully asks the Court to: (1) certify the proposed class for settlement

18 purposes; (2) grant preliminary approval of the Settlement; (3) direct the Settlement

19 Administrator to send notice to Class Members; (4) set deadlines for the motion for final approval

20 and the motion for attorneys' fees, expense reimbursements, and service award; (5) set the

21 deadline for objections; and (6) set the date/time for the Fairness Hearing.

22 **II.**    **BACKGROUND**

23        **A.**    **Claims Alleged in the Complaint**

24        On December 31, 2017, PFS and Paredes caused the Lite Star Employee Stock Ownership

25 Plan (the "Plan" or "ESOP") to purchase 100% of the shares of B-K Lighting, Inc. from Douglas

26

27 _____

[1] Unless otherwise indicated, capitalized terms have the same meaning as set forth in the Settlement

28 Agreement, filed concurrently herewith as Ex. A to the Declaration of Daniel Feinberg.

W. Hagen (the "ESOP Transaction"). The ESOP Transaction was financed primarily through a loan from Mr. Hagen to the ESOP, which the Company assumed in exchange for a corresponding promissory note from the ESOP to B-K Lighting ("Internal Note"). AC ¶ 38. Plaintiff Linna Chea alleges that the ESOP Transaction was for more than fair market value. *Id*. ¶¶ 23-39, 42. Chea, a former employee of the Company and a participant in the ESOP, sought to enforce her rights and those of other participants in the Plan under ERISA to recover the losses incurred by the Plan. *Id*. ¶ at 11. The claims against Defendants are as follows:

- **Count I**: Engaging in a prohibited transaction with a party-in-interest, in violation of ERISA § 406(a)(1)(A) and (a)(1)(D), against PFS and the Estate of Douglas Hagen and Kathleen Hagen as legal successor the Estate of Douglas Hagen.

- **Count II**: Engaging in a prohibited transaction, in violation of ERISA § 406(b), against the Estate of Douglas Hagen and Kathleen Hagen as legal successor the Estate of Douglas Hagen.

- **Count III**: Breach of fiduciary duty against PFS Defendants.

- **Count IV**: Failure to monitor an appointed fiduciary, against the Hagen Defendants.

- **Count V**: Co-fiduciary liability pursuant to ERISA § 405(a)(1) and (a)(3), against Defendants Nathan Sloan, the Estate of Douglas Hagen, Kathleen Hagen, and Kathleen Hagen as legal successor to the Estate of Douglas Hagen.

- **Count VI**: For knowing participation in fiduciary breaches and prohibited transactions, under ERISA § 502(a)(3), against Defendants Nathan Sloan, the Estate of Douglas Hagen, Kathleen Hagen, and Kathleen Hagen as legal successor to the Estate of Douglas Hagen.

- **Count VII**: Violation of ERISA § 410(a) and a breach of fiduciary duty of loyalty, against all Defendants.

Defendants do not admit any wrongdoing of any kind regarding the ESOP Transaction, deny any wrongdoing or liability associated with Plaintiff's claims, and have vigorously defended themselves in this Lawsuit.

**B.     Procedural History**

Plaintiff filed this lawsuit on April 27, 2023. ECF 1. Defendants moved to dismiss on July 6, 2023. ECF 23 (PFS Defendants), ECF 24 (Hagen Defendants), ECF 25 (B-K Lighting). On January 25, 2024, Magistrate Judge Stanley A. Boone issued Findings and Recommendations (F&R), recommending denying the Motions to Dismiss except as to one count of the complaint. ECF 44. The three Defendant groups objected to the F&R. ECF 47, 48, 49. District Judge Thurston largely adopted the F&R and granted the Motions to Dismiss with respect to Count VII with leave to amend and denied the remainder of the Motions to Dismiss. ECF 56. Plaintiff filed the First Amended Complaint on October 24, 2024 (ECF 59), which all Defendants Answered in November 2024. ECF 60, 61, 62. Shortly thereafter, Defendants proposed that the parties engage in mediation. Declaration of Daniel Feinberg ("Feinberg Decl.") ¶ 11.

In preparation for the mediation, Plaintiff requested and Defendants produced a targeted set of documents regarding the 2017 ESOP Transaction, including the Transaction binder, several years of financial statements and ESOP valuations, trustee minutes, board minutes, and other relevant documents. *Id*. at ¶¶ 12-13. Plaintiff's counsel also consulted with an expert on ESOP valuations. *Id*. at ¶ 14. The parties ultimately participated in a full day mediation on June 3, 2025, with mediator Maxine Aaronson, where they executed a written Confidential Settlement Term Sheet. *Id*. at ¶ 16.

## C.    Summary of the Proposed Settlement Terms

### (1)    The Proposed Settlement Class

The proposed Settlement Class consists of all participants and beneficiaries of the Lite Star, Inc. Employee Stock Ownership Plan at any time for its inception until December 31, 2024 (unless they terminated employment without vesting). Class Action Settlement Agreement ("Set. Agmt.") at § I.V. Excluded from the Settlement Class are the individual Defendants and their family members or beneficiaries. *Id*. Based on class data obtained from Defendants, there are approximately 200 participants who qualify as Settlement Class members. Feinberg Decl. ¶ 17.

### (2)    Settlement Terms and Benefits to the Class

The Settlement provides $2.25 million of estimated aggregate economic value to the ESOP and its participants (prior to deductions for attorneys' fees, costs, settlement administration and a

service award). *Id.* ¶ 18. First, the Defendants will cause their insurers to pay $1,500,000 (the Cash Payment) into a Qualified Settlement Fund and distributed to Class members under an approved Plan of Allocation. Set. Agmt. § VI.2; Feinberg Decl. ¶ 30, Ex. C. Second, the principal amount owed on the Seller Note will be reduced by $1 million, with a corresponding reduction in the Internal Note. *Id.* at § VI.4. Without this concession, B-K would be obligated to pay this $1 million. *Id.* at I.R. Eliminating this debt substantially increases the value of the B-K Lighting stock owned by the ESOP by an estimated $750,000 from what it otherwise would be. Feinberg Decl. ¶ 20. Pursuant to the Plan of Allocation, Class Members who terminated employment and sold their shares of Company stock during the Class Period will receive a larger cash payment since they will not benefit from the increase in value of the ESOP's Company stock. *Id.* ¶ 21.

### (3)    Notice and Administration

The Settlement Administrator shall be responsible for (1) mailing the Class Notice to Class Members (2) posting the Class Notice on a website for the Settlement Class and (3) preparing and service notices required by the Class Action Fairness Act of 2005. Set. Agmt. §§ III, V.3. Among other things, the Settlement Administrator also will maintain and staff a toll-free telephone number for Class Member inquiries; provide counsel for all parties with copies of any objections to the Settlement, if not filed with the Court; file any required declaration with the Court confirming compliance with the Court-approved Notice plan; and any other responsibilities agreed to by the parties or ordered by the Court. *Id.* at § VI. 2.

### (4)    Motion for Attorneys' Fees, Expense Reimbursements, and Service Awards

Plaintiff's Counsel will file a motion for attorneys' fees, the reimbursement of litigation expenses incurred to date, and a service award to the Named Plaintiff. If any such payments are approved by the Court, they shall be paid from the Cash Payment in amounts to be determined by the Court. Set. Agmt. § VIII(1). The service award, which will not exceed $5,000, is sought because the value achieved through the Settlement would be impossible without the Named Plaintiff who spent time and effort prosecuting the Action. Feinberg Decl. ¶ 22. Any sum remaining in the Settlement Fund after the payment of taxes, settlement administration expenses, Court-awarded

attorneys' fees, expenses, and service award will not revert to Defendants but shall be distributed to a *cy pres* recipient to be approved by the Court. Set. Agmt. § VII(6).

### (5)    Review by an Independent Fiduciary

The Settlement is contingent upon approval by an Independent Fiduciary whom Defendants will retain in accordance with Department of Labor Regulations. Set. Agmt. § II(4); *see also* PTE 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended, 75 Fed. Reg. 33,830 (June 15, 2010). This regulation applies to ERISA settlements that release claims brought on behalf of an ERISA-governed plan and requires that an independent fiduciary evaluate the settlement's terms and determine that it is "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone." PTE 2003-39 at 33,836. If the Independent Fiduciary does not believe the Settlement's terms are reasonable, it will explain why in its written report, and the Parties may attempt to resolve the concerns of the Independent Fiduciary. Set. Agmt § XI(6). If the concern cannot be resolved, then a material condition of the Settlement fails. *Id*. at § II(4). The report will be filed with the Court in support of Final approval of the Settlement. *Id*. at § XI(5).

Even if the Independent Fiduciary's written report finds that the Settlement is reasonable based on the factors set forth in the applicable DOL regulation, the ultimate decision of whether to approve the Class Action Settlement is within the sole discretion of the Court.

### (6)    Release of Claims

In exchange for the Settlement Amount from Defendants and satisfaction of the conditions required by the Settlement Agreement, Plaintiff, the Class, and the Plan will release any claims which were or could have been asserted in the Lawsuit that arise from the facts and claims alleged in the Amended Complaint. Set. Agmt § X. The Released Claims are set forth in full in the Settlement Agreement. *Id*.

## III.    <u>ARGUMENT</u>

### A.    The Court Should Certify the Settlement Class.

As part of the Settlement, Plaintiff requests that the Court certify the proposed Settlement Class, defined in Section II.C(1) above, for purposes of settlement only. Before the court may evaluate a class action settlement under Rule 23(e), the settlement class must meet the

requirements of Rules 23(a) and (b), just as in the case of a litigated class. *Colesberry v. Ruiz Food Prods., Inc.*, 2006 WL 1875444, at *2 (E.D. Cal. June 30, 2006). As in numerous other ERISA class actions, the requirements of Rule 23 are easily met here.

> **(1)    The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).**

> a)    The Class Is Sufficiently Numerous.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "While there is no strict number requirement for numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite." *Garybo v. Leonardo Bros.*, 2019 WL 2325564, at *3 (E.D. Cal. May 31, 2019) (citing several cases). According to Defendants' records, there are approximately 200 Class Members. Feinberg Decl. ¶ 17. The proposed class therefore easily meets the numerosity requirement.

> b)    There Are Common Questions of Law and Fact.

Commonality is satisfied where "there are questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). This requirement is construed "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). As the Ninth Circuit explained in *Hanlon*:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon*, 150 F.3d at 1019; *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (not "every question in the case, or even a preponderance of questions," needs to be "capable of classwide resolution"). "To satisfy the commonality requirement, plaintiffs need only point to a single issue common to the class." *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011); *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) ("[A]ll that Rule 23(a)(2) requires is a single significant question of law or fact.") (citation omitted).

The central questions in ESOP cases like this one are capable of class-wide resolution: whether the ESOP paid more than fair market value for Company stock and if so by how much, whether PFS and Paredes engaged in a prudent and loyal due diligence process before approving

the ESOP Transaction, and whether the Hagen Defendants breached their fiduciary duties by failing to adequately monitor the Trustee. Commonality is routinely found in ESOP cases like this because in such cases, "proposed class members' claims all stem from the same alleged conduct-Defendants' actions in connection with the Plan's sale of [Company] stock[.] The basis of all class members' claims is that Defendants violated ERISA and their fiduciary duties because the Plan was not paid enough for this sale." *Colesberry*, 2006 WL 1875444 at *3. Because the issues relating to liability and appropriate relief will be common to every class member, this case satisfies the commonality requirement of Rule 23(a)(2). *See Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 7081190, at *4 (C.D. Cal. Aug. 6, 2021) (finding, in ESOP case, that "resolution of this case will turn on several questions common to all class members"); *Foster v. Adams & Assocs., Inc.*, 2019 WL 4305538, at *4 (N.D. Cal. Sept. 11, 2019) (finding, in ESOP case, that "Plaintiffs satisfy the commonality requirement because they share common legal questions").

c)     The Proposed Class Representative Is Typical of the Class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 676 n.1 (W.D. Wash. 2010) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). "Like commonality, typicality is a permissive standard and the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (quotation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). Thus, typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations omitted).

Here, Plaintiff's claims are typical of the class. Plaintiff, like all class members, participated in the ESOP. And Plaintiff's claims, like all class members' claims, arise from the same event: the sale of the company to the ESOP for allegedly greater than fair market value. As in other ERISA cases seeking plan-wide relief for breaches of fiduciary duty and prohibited transactions, plaintiff has satisfied the typicality requirement of Rule 23(a). *See, e.g.*, *Gamino*, 2021 WL 7081190, at *4; *Hurtado v. Rainbow Disposal Co.*, 2019 WL 1771797, at *8 (C.D. Cal. Apr. 22, 2019); *Foster*, 2019 WL 4305538, at *4; *McCluskey*, 268 F.R.D. at 676.

d)   The Proposed Class Representative and Her Counsel Have and Will Fairly and Adequately Protect the Interests of the Class.

Adequacy involves two inquiries: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. Here, Plaintiff and her counsel pass both tests.

There is no conflict where, as here, the class is "not divided into conflicting discrete categories" and where "each potential plaintiff has the same problem." *Hanlon*, 150 F.3d at 1021. Neither Plaintiff nor her Counsel are aware of any conflicts of interest between Plaintiff and other Class Members. Feinberg Decl. ¶ 23; Declaration of Michelle Yau ("Yau Decl.") ¶ 23. The Named Plaintiff meets the adequacy requirement because she has demonstrated her willingness and ability to represent the interests of the Class as she would her own, by assisting her Counsel with the factual investigation of the claims, reviewing the pleadings in the case, and participating in the mediation. Declaration of Linna Chea. Feinberg Decl. ¶ 22. Accordingly, Plaintiff meets the adequacy requirement is met.

In addition, Plaintiff's Counsel in this case are well-qualified. Feinberg Decl. ¶¶ 3-9; Yau Decl. ¶¶ 3-15. Plaintiff's counsel are experienced in complex class action cases, including ERISA cases, and are frequently appointed as class counsel, including in numerous ESOP class actions. Here, they have committed significant time and resources to investigate and litigate the claims. Feinberg Decl. ¶ 25; Yau Decl. ¶¶ 16-20. Plaintiffs' Counsel successfully opposed Defendants' three motions to dismiss; received and reviewed critical documents and engaged a valuation

consultant for evaluating Plaintiff's claims prior to mediation; and engaged in day-long settlement negotiations with Defendants' Counsel at mediation. Feinberg Decl. ¶¶ 12-14, 16, 25; Yau Decl. ¶¶ 18-20. Based on their track record in this and prior cases, Plaintiff's counsel satisfy Rule 23(a)(4) and Rule 23(g)(1)(A).

### (2)    The Requirements for Certification under Rule 23(b)(1) Are Met.

In addition to meeting the requirements of Rule 23(a), the action must meet at least one of the three provisions of Rule 23(b). *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi*, 254 F.R.D. at 111. Under this Rule, a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). The present case satisfies these criteria because Plaintiff's "theory of liability is common to the proposed class and pertains to the manner in which Defendants mismanaged the Plan and breached their fiduciary duties with respect to the Plan as a whole." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017). Indeed, "ERISA [fiduciary] litigation . . . presents a paradigmatic example of a (b)(1) class." *Foster*, 2019 WL 4305538, at *7 (internal brackets and ellipses in original) (quoting *Kanawi*, 254 F.R.D. at 112); *see also Colesberry*, 2006 WL 1875444, at *5 ("The propriety of Rule 23(b)(1) certification in this action is confirmed by the vast number of cases in which courts have certified ERISA class actions pursuant either to Rule 23(b)(1)(A) or Rule 23(b)(1)(B), or both.") (collecting cases).

a)    Class Certification under Rule 23(b)(1)(A) Is Appropriate

Certification under Rule 23(b)(1)(A) is appropriate where a party is either "obliged by law to treat the members of the class alike" or to do so "as a matter of practical necessity." *Amchem*

---

*Prods.*, 521 U.S. at 614. That is exactly the situation presented here. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104(a). Because "the primary relief is to the Plan as a whole, then adjudications with respect to individual members of the class would, as a practical matter, alter the interests of other members of the class." *Colesberry*, 2006 WL 1875444, at *4. Thus, this litigation fits squarely within Rule 23(b)(1)(A). *Id.* (certifying settlement class under 23(b)(1)); *see also Norris v. Mazzola*, 2017 WL 6493091, at *5 (N.D. Cal. Dec. 19, 2017) (certifying ERISA breach of fiduciary action under Rule 23(b)(1)(A) as risk of conflicting judgments "would be inconsistent with federal law which requires that pension plan terms and conditions be applied in a manner consistent to all participants").

    b) Class Certification under Rule 23(b)(1)(B) Is Appropriate

  Certification under Rule 23(b)(1)(B) is appropriate where, if the action was litigated individually instead of on a class basis, it "would have the practical if not technical effect of" concluding or impairing the interests of persons who are not parties to the lawsuit. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999). One "classic example" of such a case is "the adjudication of the rights of all participants in a fund in which the participants had common rights." *Id.* at 834 n. 14. Another example specifically enumerated in the notes to Rule 23(b)(1)(B) is "an action which charges a breach of trust by a [ ] . . . trustee or other fiduciary similarly affecting the members of a large class of security holders or their beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Adv. Cmte. Note Subd. (b)(1) Clause (B) (1966).

  The ERISA claims in this case are such "classic examples." In this case, as is typical of cases challenging ESOP transactions, "[i]f one plaintiff succeeds in obtaining a judgment that requires the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan." *Colesberry*, 2006 WL 1875444, at *4; *see also In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005) (noting that any monetary relief "would inure to the Plan as a whole" and "if one plaintiff forces the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan");

*Foster*, 2019 WL 4305538, at \*8 (certifying class under 23(b)(1)(B)). *Hurtado*, 2019 WL 1771797, at \*10 ("[T]he shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.") (citation omitted). Accordingly, Rule 23(b)(1)(B) is also satisfied.

### B.    The Court Should Grant Preliminary Approval of the Settlement Because It Is Fair, Reasonable, and Adequate.

The Ninth Circuit has held that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citations omitted); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (stating that "there is an overriding public interest in settling and quieting litigation," and this "is particularly true in class action suits..."). But to protect the interests of the class, a class action cannot be settled without court approval. Fed. R. Civ. P. 23(e).

Where settlement occurs prior to class certification, the Ninth Circuit has instructed courts to "peruse the proposed settlement to ensure the propriety of class certification and the fairness of the settlement." *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1125 (E.D. Cal. 2018) (citing *Staton*, 327 F.3d at 952). The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 13:10 (5th ed. 2013).

Preliminary approval of settlement and notice to the proposed class "is appropriate if: (1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (2) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class." *Criswell v. Boudreaux*, 2021 WL 4461640, at \*3–4 (E.D. Cal. Sept. 29, 2021) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). The proposed Settlement satisfies the requirements for preliminary approval.

### (1)    The Settlement is the Result of Serious, Informed, and Non-collusive Negotiations Aided by an Experienced Mediator.

The first factor is met where the settlement "is the product of arm's length bargaining, rather than collusion or fraud." *Criswell*, 2021 WL 4461640, at *4; *see also Ontiveros v. Zamora*, 2014 WL 3057506, at *14 (E.D. Cal. July 7, 2014); *Colesberry*, 2006 WL 1875444, at *6. This Settlement resulted from vigorous, non-collusive bargaining facilitated by a seasoned mediator and conducted by skilled counsel.

Specifically, the parties engaged in settlement negotiation only until after Plaintiff's Counsel sought and obtained thousands of pages of documents from Defendants and consulted with an ESOP valuation expert. This discovery allowed Plaintiff's counsel to assess the relative merits of Plaintiff's claims and Defendants' asserted defenses and weigh the risks of continued litigation against the potential recovery to the class. Feinberg Decl. ¶¶ 14-15 The actual terms of the Settlement were agreed upon after hard-fought negotiations over the course of an all-day, in-person mediation aided by Maxine Aaronson, a mediator experienced in ERISA class action disputes, on June 3, 2025, in Dallas, Texas. *Id*. ¶16. Only at the end of the day did Plaintiff and Defendants agree to settle for the Settlement Amount and execute a Term Sheet. *Id*.

The fact that experienced counsel has been actively engaged in the litigation for over two years and has conducted the necessary informal discovery indicates the non-collusive nature of the settlement. Feinberg Decl. ¶¶ 10, 12-15; Yau Decl. ¶¶ 17-19; *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006); *see also Ebarle v. Lifelock, Inc*., 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arms' length bargaining.") (quotation marks and citation omitted). The assistance of a neutral, experienced mediator in the settlement negotiations further evidences the non-collusive nature of the negotiations. *Criswell*, 2021 WL 4461640 at *4 ("participation in mediation tends to support the conclusion that the settlement process was not collusive.") (quotation omitted). This Settlement satisfies the procedural fairness requirements for preliminary approval.

### (2)    The Settlement Is Within the Range of Reasonableness.

At the preliminary approval stage, the court "need only determine whether the proposed settlement is within the range of possible approval." *Criswell*, 2021 WL 4461640, at *4. The

1    Settlement Agreement here provides that Defendants will pay $1.5 million into a Settlement

2    Fund. Set. Agmt at § VI.2. Moreover, the Settlement provides for a $1 million reduction of the

3    principal amount owed on the Seller Note, and a corresponding reduction in the Internal Note. *Id*.

4    at VI.4. Eliminating this debt substantially increases, by an estimated $750,000, the equity value

5    of the B-K Lighting stock owned by the ESOP.[2] This represents approximately $11,000 in

6    economic benefit to the Plan per class member (prior to reductions for attorneys' fees, costs,

7    settlement administration and service award). Feinberg Decl. ¶ 18.

8        Both forms of consideration—cash and non-cash in the form of the loan reduction—

9    provide substantial value to Class Members. For the non-cash component, the Settlement causes

10   the value of Class Members' retirement accounts to increase, and when Class Members

11   eventually retire or leave B-K Lighting, they can convert this value into cash. For example, in

12   another ESOP transaction settlement—*Smith v. GreatBanc Tr. Co.*—a Northern District of

13   Illinois court granted final approval of a class action settlement in which the primary form of

14   settlement consideration was loan reduction. *Smith v. GreatBanc Tr. Co.*, No. 1:20-cv-02350

15   (N.D. Ill. Aug. 23, 2023), ECF 163. Finally, Department of Labor settlements of ESOP cases,

16   similar to this one, often involve non-cash relief such as loan reductions. *See, e.g.*, *Scalia v. The*

17   *Farmers Nat'l Bank of Danville*, 1:20-cv-00674, ECF 5 at 3 (S.D. Ind. April 3, 2020) (DOL

18   settlement with loan reductions in exchange for release of ESOP claims); *Acosta v. Mueller*, No.

19   2:13-cv-01302, ECF 226-1 at 8 (E.D. Wis. Dec. 20, 2017) (same).

20       Prior to the mediation and based on the documents Defendants produced, Plaintiff's

21   valuation expert identified a number of material errors in the valuation report relied upon by PFS

22   for the ESOP Transaction. Feinberg Decl. ¶ 14. While the potential total recovery depends upon

23   the Court's findings as to the impact of these errors on B-K's fair market value, if the Court were

24   to accept the opinion of Plaintiff's valuation expert, then the maximum recovery for the Class

25   would be approximately $3 million to $5 million. *Id*.

26

27   _____

[2] This estimate is Plaintiff's approximation of the net effect of the $1 million seller note reduction

28   on equity value as of December 31, 2025.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS

The total relief provided by the Settlement is within the range of reasonableness, and indeed provides an excellent result for the proposed Class. Ultimately, through this Settlement, the proposed class will recover approximately 45% of the estimated maximum damages. *Id.* at ¶ 19. The reasonableness of this Settlement is supported by settlements reached in other ERISA class actions. *See, e.g., Gamino v. KPC Healthcare Holdings, Inc.*, 2023 WL 3325190, at *4 (C.D. Cal. Mar. 11, 2023) (finding ESOP class settlement that recovered approximately 7% of the estimated total damages "fair and adequate"); *Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *5 (N.D. Cal. Feb. 11, 2022) (approving ESOP class settlement that recovered 28.5% of estimated total loss);  *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018)) (approving ERISA class action settlement representing between 25.5% and 78.9% of losses).

The Settlement Amount is also reasonable in light of the considerable risk and potential for delay associated with continued litigation against Defendants through trial and appeals. Plaintiff's Counsel believe this Settlement is in the best interest of the proposed Class, based on their deep experience with ERISA class actions, and ESOP cases in particular. Feinberg Decl. ¶ 27; Yau Decl. ¶ 21; *Ontiveros*, 2014 WL 3057506, at *14 (giving degree of deference to "counsel's determination that the settlement is in the best interest of the class."). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Casey v. Doctor's Best, Inc.*, 2022 WL 1726080, at *8 (C.D. Cal. Feb. 28, 2022) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). "This is especially true here given that 'ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases.'" *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849 at *6 (N.D. Cal. Oct. 21, 2021) (quoting *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018)). Continued litigation would have been fraught with risks, including the risk that Plaintiff's claims against Defendants would be defeated on summary judgment, trial, or appeal, and the Class would recover nothing.

The scope of the release being provided by the Class is appropriate. The scope of the releases in a proposed settlement is acceptable where the claims released are limited to those based upon the facts set forth in the complaint. *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1332 (N.D. Cal. 2014); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action"). Here, the Settlement only releases claims relating to or arising out of facts alleged or claims set forth in the Amended Complaint. Set. Agmt. §§ I(Q), X.

### (3)    The Settlement Has No Obvious Deficiencies.

The final factor considered on preliminary approval is whether the agreement has any "obvious deficiencies," such as "unduly preferential treatment of class representatives or of segments of the class, or excessive compensation of attorneys."). *Grant v. Cap. Mgmt. Servs., L.P.*, 2013 WL 6499698, at *5 (S.D. Cal. Dec. 11, 2013); Newberg on Class Actions § 11:25 (4th ed. 2010). The Ninth Circuit has advised courts to be concerned (a) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (b) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class'"; and (c) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Such signs do not necessarily mean that a settlement is improper, but only that it is supported by an explanation of why the fee is justified and does not betray the class's interests. *Id*. at 949.

The Settlement does not unduly favor the Class Representative or segments of the proposed Class. Indeed, the Settlement Agreement treats all members of the proposed Class the same. Set. Agmt. § VII(5) (describing disbursement of money from the Settlement Fund

"pursuant to a formula and distribution method resulting in a proportional allocation based on the total vested shares a Class Member had in the ESOP[.]").

With respect to the proposed attorneys' fees, Plaintiff's Counsel intend to seek approximately 22.2% of the economic value of the Settlement, i.e., $500,000. Feinberg Decl. ¶ 26; Set. Agmt. § VII(3). Plaintiff's Counsel also intends to request a Service Award not to exceed $5,000 in recognition of Plaintiff's Chea's service to the class. Set. Agmt. § VII(4). In conjunction with final approval, Plaintiff's counsel will file a motion for attorney's fees and litigation expenses, and a Service Award to the Named Plaintiff, explaining why the requested amounts are reasonable and justified in light of the circumstances of the case. *See Markson v. CRST Int'l, Inc.*, 2022 WL 805615, at *5 (C.D. Cal. Feb. 24, 2022) (deferring full consideration of attorneys' fees application until "the final approval stage when Plaintiffs' counsel provide more information about the hours spent litigating the case and the costs incurred"); *Urakhchin*, 2018 WL 3000490, at *6 (granting preliminary approval where parties had not identified proposed amount for attorney's fees but requiring class counsel to articulate attorney's fees and service payment requests in separate application). The Settlement moreover does not include any "clear sailing" provision and does not allow for any reversion of the Settlement Amount to Defendants but rather provides that unclaimed proceeds shall be distributed to a Court-approved *cy pres* recipient. Set. Agmt. § VII(6). Moreover, there are no other agreements between the settling parties. Set. Agmt. § XIV(9); Feinberg Decl. ¶ 24; Fed. R. Civ. P. 23(e)(3).

At this stage, the question is merely whether the agreement is preliminarily fair. The specific amounts of attorney's fees and any class representative Service Award can be reserved on this preliminary approval motion to the final approval hearing and the discretion of the Court. *Anderson-Butler v. Charming Charlie Inc*., 2015 WL 4599420, at *11 (E.D. Cal. July 29, 2015) (preliminarily approving settlement and declining to "evaluate the fee award at length" in "considering whether the settlement is adequate," because "[i]f the court, in ruling on the fees motion, finds that the amount of the settlement warrants a fee award at a rate lower than what plaintiff's counsel requested" the court has the power to reduce the award accordingly).

**C.    The Proposed Class Notice and Plan of Notice are Appropriate.**

Rule 23(e) requires the court to direct notice in a reasonable manner to all Class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). A proper notice should state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B); *Criswell*, 2021 WL 4461640, at *5 ("A class action settlement notice 'is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Here, the proposed notice to the Class provides information on all these subjects and informs Class Members about their rights under the Settlement as well as their right to be heard at the final fairness hearing. *See* Feinberg Decl. ¶ 29, Ex. B.

The members of the Class will receive notice by U.S. Mail; the notice will also be posted to websites maintained by Plaintiff's counsel and the Settlement Administrator. Set. Agmt. § V(3). In the event a notice sent by mail is undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid mailing address and promptly resend. *Id.* at § V(4). Courts in this District have approved similar notice plans. *See, e.g.*, *Anderson-Butler*, 2015 WL 4599420, at *7 (approving notice by several modes including posting to a website and U.S. mail); *Aguilar v. Melkonian Enters., Inc.*, 2006 WL 3199074, at *5 (E.D. Cal. Nov. 3, 2006) (notice by U.S. mail only); *Colesberry*, 2006 WL 1875444, at *7 (same).

Plaintiff's counsel has solicited bids for class notice and administration services from six potential settlement administrators through a competitive process and received six submitted bids. Yau Decl. ¶ 24. Following a review of the detailed bids and conferral with the responding service providers to ensure an apples-to-apples comparison of services, Plaintiff's counsel recommends that the Court appoint Analytics as the Settlement Administrator because it has extensive experience handling ERISA settlements and it will provide the necessary services in a cost-effective manner. *Id.*; Ex. 1 to Yau Decl. (Analytics qualifications).

1

## IV.    __CONCLUSION__

2        For the forgoing reasons, the Court should grant Plaintiff's motion to preliminarily approve

3   the proposed Settlement, approve the proposed Class notice, authorize its distribution to the Class,

4   and set deadlines as set forth in Plaintiff's motion.

5

6   DATED: August 19, 2025                    Respectfully Submitted,

7

8                                    By:    */s/ Daniel Feinberg*
                                            Daniel Feinberg (SBN No. 135983)
9                                           FEINBERG, JACKSON, WORTHMAN
                                            & WASOW, LLP
10                                          2030 Addison Street, Suite 500
                                            Berkeley, CA 94704
11                                          Tel. (510) 269-7998
                                            Fax (510) 269-7994
12                                          dan@feinbergjackson.com

13                                          Michelle C. Yau (admitted *pro hac vice*)
14                                          Caroline E. Bressman (admitted *pro hac vice*)
                                            COHEN MILSTEIN SELLERS & TOLL PLLC
15                                          1100 New York Ave. NW, Suite 800
                                            Washington, DC 20005
16                                          Tel. (202) 408-4600
                                            Fax (202) 408-4699
17                                          myau@cohenmilstein.com
18                                          cbressman@cohenmilstein.com

19                                          *Counsel for Plaintiff*

20

21

22

23

24

25

26

27

28

---

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 19, 2025, I filed the foregoing document through the

3

CM/ECF system, which caused a copy to be served on all counsel of record.

4

5

    */s/ Anna Johnson*
    Anna Johnson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28