1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINNA CHEA, | Case No. 1:23-cv-00647-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| LITE STAR ESOP COMMITTEE, et al., | (ECF No. 79) |
| Defendants. | **FINAL APPROVAL HEARING: January 21, 2026 at 10:00 A.M.** |

On August 19, 2025, Plaintiff Linna Chea filed a motion for preliminary approval of a class action settlement and certification of the class for purposes of settlement. (ECF No. 79.) Plaintiff's motion is unopposed. All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF No. 76.)

A hearing took place on October 8, 2025. Daniel Feinberg appeared on behalf of Plaintiff. Drew Newman, Allison Egan, and Chelsea McCarthy appeared on behalf of Defendants. For the reasons set forth below, the Court grants the motion.

## I.

## BACKGROUND

### A. Factual and Procedural Background

The operative complaint in this action is the Amended Complaint filed on October 24, 2024. (ECF No. 59.) Plaintiff's complaint raises seven causes of action: 1) prohibited transaction

in violation of ERISA § 406(a), 29 U.S.C. § 1106(a); 2) prohibited transaction in violation of ERISA § 406(b), 29 U.S.C. § 1106(b); 3) breach of fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a)(1); 4) failure to monitor in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B); 5) co-fiduciary liability under ERISA § 405(a)(1) and (a)(3), 29 U.S.C. § 1105(a)(1) and (a)(3); 6) equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and 7) violation of ERISA § 410 and breach of fiduciary under ERISA § 404(a), 29 U.S.C. §§ 1110 and 1104(a).  (Id.)

Plaintiff was a former employee of B-K Lighting, Inc. ("B-K Lighting") and a participant in the Lite Star Employee Stock Ownership Plan ("ESOP").  (ECF No. 59, ¶ 15.)  ESOP is a type of pension plan designed for employees to invest in the stock of its sponsor, B-K Lighting, pursuant to ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6).  (Id. at ¶ 3.)  Defendants include B-K Lighting (ESOP's Sponsor and Administrator); Lite Star ESOP Committee (ESOP's Administrator and Fiduciary); Estate of Douglas W. Hagen (founder and Vice President of B-K Lighting and fiduciary of ESOP); Kathleen Hagen (Secretary and member of the Board of Directors of B-K Lighting as well as fiduciary of the ESOP); Nathan Sloan (CEO and President of B-K Lighting and member of the Board of Directors as well as fiduciary of ESOP); Prudent Fiduciary Services, LLC (trustee of the ESOP and fiduciary); and Miguel Paredes (President and founder of Prudent and trustee of the ESOP).  (Id. at ¶¶ 16-22.)

On December 31, 2017, Douglas W. Hagen sold 100% of B-K Lighting's stock to the ESOP for $25,270,000.  (Id. at ¶ 18.)  This transaction was partially financed through a loan from Douglas W. Hagen to the ESOP, which B-K Lighting assumed in exchange for a corresponding promissory note.  (Id. at ¶ 38; ECF No. 60, p. 12.)  Plaintiff alleges that this transaction exceeded the fair market value of the company.  (ECF No. 59, ¶¶ 6, 39.)  Plaintiff further alleges that the ESOP's fiduciaries failed to remedy the alleged fiduciary violations arising from the transaction, resulting in millions of dollars of losses to the ESOP and its participants.  (Id. ¶¶ 6, 45-49, 54.)

Plaintiff filed this lawsuit on April 23, 2023.  (ECF No. 1.)  Defendants moved to dismiss on July 6, 2023 (ECF Nos. 23-25.)  On January 25, 2024, this Court issued its Findings and Recommendations ("F&R") recommending denial of the motion to dismiss except for one count

of the complaint.  (ECF No. 44.)  All Defendants objected the F&R in February 2024.  (ECF Nos. 47-49.)  The assigned District Judge largely adopted the F&R with leave to amend the one count.  (ECF No. 56.)  Plaintiff filed the Amended Complaint on October 24, 2024, and Defendants answered in November 2024.  (ECF Nos. 59-62.)  Following the Court's denial of the motions to dismiss, minus the one count, Defendants proposed that the parties engage in mediation.  (ECF No. 79-1, ¶ 11.)   On June 3, 2025, the parties participated in a full day mediation and reached a settlement.  (ECF No. 75.)

**B.  Summary of the Proposed Settlement Terms**

The Court will summarize the relevant terms of the proposed settlement agreement (the "Agreement," ECF No. 79-4 at 11), that Plaintiffs have submitted for preliminary approval.  The parties have identified the proposed class as

> all participants and beneficiaries of the Lite Star, Inc. Employee Stock Ownership Plan at any time from its inception until December 31, 2024 (unless they terminated employment without vesting), excluding individual Defendants and their family members or beneficiaries.

(Agreement, p. 5.)  Based on class data, there are approximately 200 participants who qualify as Settlement Class members.  (Declaration of Daniel Feinberg, ¶ 17.)

Pursuant to the Agreement, Defendant agrees to pay $1.5 million in cash through its insurer and deposit the amount into an interest-bearing account at a federally chartered financial institution selected by either Plaintiff's counsel or the Settlement Administrator, subject to Defendants reasonable approval.  (Agreement, pp. 9, 12.)  The parties propose that attorneys' fees, litigation expenses, and the service award to Plaintiff be deducted from the settlement amount; Plaintiff's counsel is responsible for filing the appropriate motions regarding these deductions.  (Id. at pp. 10-11.)

The proposed settlement provides that a formula will be applied to distribute the settlement funds to each Class member based upon the total vested shares the Class member held in the ESOP.  (Id. at p. 12.)  Plaintiff's counsel estimates this to be approximately $1.55 per vested share.  (Id.; Proposed Plan of Allocation, ECF No. 79-4, p. 2.)  Any funds remaining after payment

1  of all taxes and other expenses, shall be distributed to a *cy pres* recipient approved by the Court.

2  (Agreement, ECF No. 79-4, p. 12.)

3      Additionally, it is agreed that the principal amount on the loan from Douglas W. Hagen to

4  the ESOP shall be reduced by $1 million, with a corresponding reduction in the promissory note.

5  (Id. at p. 10.)  This reduction is estimated to increase the value of the B-K Lighting stock held by

6  the ESOP by approximately $750,000.  (Declaration of Daniel Feinberg, ¶ 20.)  Class members

7  who terminated employment and sold their shares during the Class Period shall receive a larger

8  cash payment since they will not benefit from the increase in the ESOP value.  (Id. at ¶ 21.)

9      A Settlement Administrator shall be responsible for preparing and serving notice to Class

10  members, administering the settlement, providing counsel for the parties, responding to questions

11  from Class members, maintaining a toll-free phone number and website, filing any required

12  declarations confirming compliance with the Court, monitoring the Settlement Fund Account,

13  and performing other duties agreed upon by the parties or ordered by the Court.  (Agreement, pp.

14  7-8.)

15      The settlement shall also be reviewed by an independent fiduciary who shall issue a final

16  determination letter and report to the parties.  (Id. at pp. 15-16.)  If the fiduciary disapproves of

17  the settlement terms, the parties may mutually agree to modify the terms to facilitate approval.

18  (Id. at pp. 16-17.)  The parties have agreed that the fiduciary's approval cannot be unreasonably

19  withheld.  (Id. at p. 7.)

20      In exchange for the settlement, Plaintiff and the Class will dismiss all claims asserted in

21  the Amended Complaint with prejudice, including any claims relating to or arising out of the

22  allegations in the Amended Complaint.  (Id. at pp. 14-15.)

23                                    **II.**

24                            **LEGAL STANDARD**

25      The Ninth Circuit has recognized a strong judicial policy favoring settlement of class

26  actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

27  especially where settlement occurs prior to class certification, courts must scrutinize the proposed

28  settlement to ensure the propriety of class certification and the fairness of the proposed settlement.

1    Staton v Boeing, 327 F.3d 938, 952 (9th Cir. 2003).

2        To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a),

3    and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have

4    been met.  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013).  This requires

5    courts to "conduct a 'rigorous analysis' to determine whether the party seeking class certification

6    has met the prerequisites of Rule 23."  Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 471

7    (E.D. Cal. 2009).

8        Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be

9    approved by the court which must find that the settlement is fair, reasonable, and adequate.  The

10   role of the district court in evaluating the fairness of the settlement is not to assess the individual

11   components, but to assess the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811, 818-

12   19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013).  In reviewing a proposed settlement,

13   the court represents those class members who were not parties to the settlement negotiations and

14   agreement.  In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA)

15   Litig., 295 F.R.D. 438, 448 (C.D. Cal. 2014).

16                                               **III.**

17                                          **DISCUSSION**

18       District courts review class action settlements in two stages.  First the plaintiff files a

19   motion for preliminary approval of the settlement, along with a motion to certify the class for

20   purposes of settlement if certification has not occurred.  If the district court grants preliminary

21   approval and certifies the class, class members are then notified and given an opportunity to object

22   to the settlement or opt-out of the settlement.  See Cotter v. Lyft, Inc., 176 F. Supp. 3d 930, 935

23   (N.D. Cal. 2016).  Thereafter, plaintiffs typically file a motion for final approval, and after a final

24   fairness hearing and considering any objections to the settlement, the district court determines

25   whether to grant final approval.  Id.

26       Even where a proposed settlement is unopposed, the Court must fully examine whether the

27   proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality,

28   typicality, and adequacy of representation.  Wright, 259 F.R.D. at 472 (citing Hanlon v. Chrysler

Corp., 150 F.3d 1011, 1019 (9th Cir.1998)).    The Ninth Circuit and Supreme Court have emphasized that Rule 23(e) governing settlement is an additional, not a superseding requirement, and thus "just because a settlement appears to be fair, reasonable, and adequate under Rule 23(e) does not mean a class has met the certification requirements of Rule 23(a) and (b)."    In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 942 (9th Cir. 2015) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620-21 (1997)).

This action is currently at the first stage where the Court shall consider whether preliminary approval of the proposed settlement is appropriate, and whether the class should be certified for purposes of settlement only.    The Court now turns to determine whether certification of the class is appropriate for purposes of settlement.

### A.    Certification of the Class

*Rule 23(a)*

Under Rule 23(a), the four requirements that must be met for class certification are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims for defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(1)-(4); Wright, 259 F.R.D. at 471. These factors are known as "numerosity," "commonality," "typicality," and "adequacy," respectively. Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1028 (9th Cir. 2012).

### 1.    Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P.23(a)(1).    "While there is no strict number requirement for numerosity, courts have routinely held that classes comprised of more than forty members will satisfy this prerequisite." Garybo v. Leonardo Bros., 2019 WL 2325564, *3 (E.D. Cal. May 31, 2019) (citing and listing cases).    As of August 19, 2025, the proposed class consists of approximately 200 individuals.  (Declaration of Daniel Feinberg, ¶ 17.)  The Court finds that the proposed class satisfies the numerosity requirement.

/ / /

1    2.  Commonality

2        Commonality is satisfied where "there are questions of law or fact common to the class."

3   Fed. R. Civ. P. 23(a)(2).  This is to be construed permissively.  Hanlon v. Chysler Corp., 150 F.3d

4   1011, 1019 (9th Cir. 1998) ("[a]ll questions of fact and law need not be common to satisfy the

5   rule.").   The key inquiry is whether class treatment will generate common answers apt to drive

6   the resolution of the litigation.   Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011).

7   Plaintiff contends that all Class members share three common legal questions: 1) whether the

8   ESOP paid more than fair market value for B-K Lighting stock; 2) whether Prudent Fiduciary

9   Services, LLC and Miguel Paredes engaged in due diligence before approving the ESOP

10  transaction; and 3) whether Douglas W. Hagen and the Lite Star ESOP Committee breached their

11  fiduciary duties by failing to adequately monitor the Trustee.  (ECF No. 79, pp. 6-7.)  The Court

12  agrees that the potential claims of all Class members arise from the same course of conduct.

13  Given that the relevant facts and legal issues are substantially identical across the class, the Court

14  finds that the requirement of commonality is met.

15    3.  Typicality

16        Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

17  of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This does not require the claims

18  to be substantially identical, but that the representative's claims be "reasonably co-extensive with

19  those of the absent class members."  Hanlon, 150 F.3d at 1020.  Typicality is determined by

20  looking to the nature of the claims of the class representatives and tests "whether other members

21  have the same or similar injury, whether the action is based on conduct which is not unique to the

22  named plaintiffs, and whether other class members have been injured by the same course of

23  conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  The requirements of

24  commonality and typicality tend to merge, and "[b]oth serve as guideposts for determining

25  whether under the particular circumstances maintenance of a class action is economical and

26  whether the named plaintiff's claim and the class claims are so interrelated that the interests of

27  the class members will be fairly and adequately protected in their absence."  Gen. Tel. Co. of the

28  Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982).

1    Here, Plaintiff alleges that she and the Class members were subjected to the same injury as

2    they participated in the ESOP and were all affected by the same transaction—the sale of B-K

3    Lighting stock to the ESOP at a price allegedly exceeding fair market value.  (ECF No. 79, pp. 7-

4    8.)  Because the alleged harm and underlying conduct are not unique to Plaintiff but shared across

5    the Class, Plaintiff satisfies the typicality requirement.

6        4.  Adequacy

7    The Court must ensure "the representative parties will fairly and adequately protect the

8    interests of the class."  Fed. R. Civ. P. 23(a)(4).  In determining whether the named plaintiffs will

9    adequately represent the class, the courts must resolve two questions: "(1) do the named plaintiffs

10   and their counsel have any conflicts of interest with other class members and (2) will the named

11   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150

12   F.3d at 1020.  "Adequate representation depends on, among other factors, an absence of

13   antagonism between representatives and absentees, and a sharing of interest between

14   representatives and absentees."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir.

15   2011).

16   Based on the filings and papers presented to the Court, there is no indication that Plaintiff

17   has any conflicts of interest with the Class.  Additionally, on Plaintiff's own accord, she has

18   assisted counsel with factual investigation of the claims, provided documents, reviewed

19   pleadings, and participated in mediation.  (Declaration of Daniel Feinberg, ¶ 22.)  These actions

20   demonstrate that Plaintiff is engaged and committed to prosecuting the case on behalf of the Class.

21   The Court also finds that Plaintiff's counsel has no known conflicts of interest with any of

22   the Class members and has vigorously litigated this case.  Plaintiff's counsel has demonstrated

23   experience handling ERISA and ESOP class actions.  (Declaration of Daniel Feinberg, ¶¶ 3-9;

24   Declaration of Michelle Yan, ¶¶ 4-15.)  In this case, Plaintiff's counsel has actively participated

25   in key litigation efforts, including opposing the motion to dismiss, reviewing critical documents,

26   retaining a valuation expert, and participating in a full-day mediation.  (Declaration of Daniel

27   Feinberg, ¶ 25, 12-14; Declaration of Michelle Yan, ¶ 18-20.)  Accordingly, the Court finds that

28   both Plaintiff and her counsel will adequately and fairly protect the interests of the Class.

*Rule 23(b)*

Plaintiff must also meet one of the three subdivisions of Rule 23(b) to certify the class. Fed. R. Civ. P. 23(b).  Plaintiff asserts the proposed class meets the requirements of Rule 23(b)(1). (ECF No. 79, p. 9.)  Under Rule 23(b)(1) a class action may proceed if prosecution of separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).

Plaintiff argues certification is appropriate under Rule 23(b)(1)(A) and 23(b)(1)(B).  (ECF No. 79, pp. 9-11).  "Rule 23(b)(1)(A) comes into play when a party is obligated by law to treat members of a class in a like manner."  Alday v. Raytheon Co., 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (granting certification under Rule 23(b)(1) because "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner.")  Plaintiff contends that class certification under Rule 23(b)(1)(A) is appropriate because ERISA fiduciary duties are owed to the Class members as a whole, and resolving claims on an individual basis could create conflicting judgments.  (Id. at pp. 9-10.)  The Court agrees.  Absent class certification, individual ESOP participants could obtain inconsistent dispositions, resulting in "incompatible standards of conduct." Fed. R. Civ. P. 23(b)(1)(A); Hurtado v. Rainbow Disposal Co., 2019 WL 1771797, at *10 ("Defendants' liability or lack thereof is likely dependent on judicial interpretation of the parties' rights, powers, and obligations pursuant to the ESOP.  Conflicting interpretations by separate tribunals could result in countervailing directives to the ESOP fiduciaries.").  Accordingly, the proposed class satisfies the requirements of Rule 23(b)(1)(A).

Rule 23(b)(1)(B) "is concerned only with the rights of unnamed class members, not with the rights of [the defendants]."  McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Central Distr. of Cal., 523 F.2d 1083, 1086 (9th Cir. 1975); see also In re Ikon Office Sols, Inc., 191 F.R.D. 457,

466 (E.D. Pa. 2000) ("given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief."). Here, the asserted claims relate to a single ESOP transaction, and any decision regarding those allegations applies to the ESOP as a whole and affects the rights and interests of all ESOP participants. Thus, certification under Rule 23(b)(1)(B) is likewise appropriate. Should the action proceed outside of a class context, actions by individual ESOP participants would impair the ability of other participants to protect their interests. See Ramirez v. Ampam Parks Mechanical, Inc., 2025 WL 1090186, at *7 (finding certification appropriate under Rule 23(b)(1)(B) because "the Court's adjudication of issues related to ERISA requirements 'would necessarily affect and be dispositive of the interests of other similarly situated litigants.'"). Thus, certification under 23(b)(1)(B) is likewise appropriate.

Accordingly, the Court finds that Plaintiff has sufficiently satisfied the requirements of Rule 23(b)(1). Having determined that certification is appropriate under Rule 23(b)(1), the Court need not address whether certification would also be proper under Rule 23(b)(2) or Rule 23(b)(3). The Court therefore recommends that the Class be certified for settlement purposes.

### B.    Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined that class certification is appropriate for settlement purposes, the Court next addresses whether the settlement is fair, reasonable, and adequate under the Federal Rule of Civil Procedure 23(e)(2). In making this determination, Courts evaluate whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

1    (D) the proposal treats class members equitably relative to each other.

2    Fed. R. Civ. P. 23(e)(2)(A)-(D).

3    "To determine whether a settlement falls within the range of possible approval, a court

4    must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery

5    balanced against the value of the settlement offer." Lusby v. Gamestop, Inc., 297 F.R.D. 400,

6    415 (N.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D.

7    Cal. 2007)). "If the proposed settlement appears to be the product of serious, informed, non-

8    collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

9    treatment to class representatives or segments of the class, and falls within the range of possible

10   approval, then the court should direct that the notice be given to the class members of a formal

11   fairness hearing." In re Tableware, 484 F. Supp. 2d at 1079 (quoting Manual for Complex

12   Litigation, Second § 30.44 (1985)).

13   When the settlement takes place before formal class certification, as it has in this instance,

14   settlement approval requires a "higher standard of fairness." Lane v. Facebook, Inc., 696 F.3d at

15   819 (quoting Hanlon, 150 F.3d at 1026)). This more exacting review of class settlements reached

16   before formal class certification is required to ensure that the class representatives and their

17   counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who

18   class counsel had a duty to represent." Id. As recently emphasized by the Ninth Circuit, this

19   requires courts to apply "an even higher level of scrutiny for evidence of collusion or other

20   conflicts of interest than is ordinarily required under Rule 23(e)." Roes, 1-2 v. SFBSC Mgmt.,

21   LLC, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting In re Bluetooth, 654 F.3d 935, 946 (9th Cir.

22   2011). When reviewing a district court's final approval of a settlement negotiated prior to

23   certification, the Ninth Circuit ensures the district court: (1) comprehensively explored all factors;

24   (2) has given a reasoned response to all non-frivolous objections; (3) adequately developed the

25   record to support its final approval decision; and (4) "looked for and scrutinized any subtle signs

26   that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations."

27   Roes, 944 F.3d at 1043 (quoting Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015)).

28   / / /

11

1      1.  <u>The Class Representatives and Counsel have Adequately Represented the Class</u>

2      Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class

3 counsel have adequately represented the class."  Class representatives are adequate if the named

4 plaintiff and counsel do not have any conflicts of interest with other class members and will

5 prosecute the action vigorously on behalf of the class.  <u>Hanlon</u>, 150 F.3d at 1020.  Adequate

6 representation of counsel is generally presumed in the absence of contrary evidence.  <u>See</u>

7 <u>Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.</u>, 249 F.R.D. 334, 349 (N.D. Cal.

8 2008).

9      The Court found above that both Plaintiff and her counsel adequately represent the class

10 for the purposes of class certification.  For the same reasons, the Court finds that the adequacy of

11 representation requirement under Rule 23(e)(2) is likewise met.

12      2.  <u>The Proposal was Negotiated at Arm's Length</u>

13      Rule 23(e)(2)(B) requires the Court to consider whether the proposed settlement was

14 negotiated at "arm's length."  With this factor, Courts take into account "the conduct of the

15 litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2),

16 2018 Advisory Comm. Notes.  The Ninth Circuit "put[s] a good deal of stock in the product of

17 an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.

18 <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 965 (9th Cir. 2009).  When parties reach a settlement

19 "after mediation with a neutral mediator," the settlement is "presumptively the product of a non-

20 collusive, arms-length negotiation." <u>Saucillo v. Peck</u>, 25 F.4th 1118, 1124 (9th Cir. 2022).

21      Here, the Settlement was a product of a full-day mediation with an experienced mediator

22 and counsel well versed in ERISA class action disputes.  (Declaration of Daniel Feinberg, ¶¶ 3-

23 5, 16; Declaration of Michelle Yan, ¶¶ 4-15.)  Before engaging in mediation, Plaintiff's counsel

24 obtained documents related to the ESOP transaction, including the transaction binder, several

25 years of financial statements and ESOP valuations, trustee and board minutes, and other relevant

26 documents, and consulted with an ESOP valuation expert.  (Declaration of Daniel Feinberg, ¶ 14;

27 Declaration of Michelle Yan, ¶ 19.)

28 ///

The Court concludes based on the foregoing that the settlement was negotiated at arm's length.  See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," and "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

3.  The Relief Provided to the Class is Adequate

a.  The Costs, Risks, and Delay of Trial and Appeal

In evaluating the adequacy of a settlement, the Court compares the amount offered with the maximum potential recovery.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).  A "settlement amount to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  Id.  Courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  DIRECTV, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D. Colo. 1974)).  Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Id. at 526.  "This is especially true here given that 'ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases.'"  Foster v. Adams & Assocs., Inc., 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021) (internal citations omitted).

Based on the evaluation conducted by Plaintiff's valuation expert, the maximum recovery for the Class would be approximately $3 million to $5 million.  (Declaration of Daniel Feinberg, ¶ 14.)  The Settlement Agreement provides $2.25 million of aggregate economic value to the ESOP and its participants. (Id. at ¶ 18.)  This gross settlement amount represents approximately $11,000 in economic benefit to the ESOP per Class Member prior to deductions for attorneys' fees, costs, and service award. (Id.)  Through the settlement, the Class will recover approximately 45% of the estimated maximum damages. (Id. at ¶ 19.)  Plaintiff asserts that the total relief is within the range of reasonableness in light of the considerable risk that her claims would be defeated on summary judgment, trial, or appeal and potential for delay associated with continued

1  litigation.  (ECF No. 79.)  Given the complexity of ERISA claims and the significant risks of

2  continued litigation, the Court finds that the Settlement is fair, reasonable, and adequate.

3         **b.**  <u>The Effectiveness of the Proposed Method of Distributing Relief</u>

4         Rule 23(e)(2) also requires the Court to consider "the effectiveness of any proposed method

5  of distributing relief to the class, including the method of processing class-member claims."

6  "Assessment of a plan of allocation is governed by the same standard of review applicable to the

7  settlement as a whole; the plan must be fair, reasonable, and adequate."  <u>Nobles v. MBNA Corp.</u>,

8  <u>No. C06-3723 CRB</u>, 2009 WL 1854965, at *3 (N.D. Cal. June 29, 2009).  A settlement agreement

9  "can be reasonable if it fairly treats class members by awarding a pro rata share to every

10  Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the

11  relative strengths and weaknesses of class members' individual claims . . . ."  <u>In re Zynga Inc.</u>

12  <u>Sec. Litig.</u>, No. 12-CV-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct, 27, 2015) (quoting

13  <u>Vinh Nguyen v. Radient Pharms. Corp.</u>, No. SACV 11-00406 DC, 2014 WL 1802293, at *5 (C.D.

14  Cal. May 6, 2014)).

15         Here, Class members will not need to submit claims to receive their settlement recovery.

16  Instead, Class members shall receive a check via mail to the last known mailing address.

17  (Agreement, p. 12.)  Each Class member will be allocated a pro rata share of the net settlement

18  amount based upon the number of vested B-K Lighting shares held in their respective ESOP

19  accounts as of 12/31/2024.  (Proposed Plan of Allocation, ECF No. 79-4, p. 2.)  Plaintiff's counsel

20  estimates this to be approximately $1.55 per vested share.  (<u>Id.</u>)  Class members who had no

21  remaining vested shares in their ESOP account as of 12/31/2024 will receive their consideration

22  through a cash payment.  (<u>Id.</u>)  Class members who had vested shares in their ESOP account as

23  of 12/31/2024, will receive their settlement consideration as a combination of a cash payment and

24  through the increase in value of their vested shares resulting from the $1 million reduction on the

25  principal amount loan from Doughlas W. Hagen to the ESOP.  (<u>Id.</u>)  The Court concludes that the

26  plan of allocation provides equitable treatment to Class members.

27         **c.**  <u>Attorneys' Fees</u>

28         "While attorneys' fees and costs may be awarded in a certified class action where so

1  authorized by law or the parties' agreement. . . courts have an independent obligation to ensure

2  that the award, like the settlement itself, is reasonable, even if the parties have already agreed to

3  an amount." In re Bluetooth, 654 F.3d at 941.  Courts scrutinize settlement agreements for the

4  following signs: "(1) when counsel receive a disproportionate distribution of the settlement; (2)

5  when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant

6  will not object to a certain fee request by class counsel); and (3) when the parties create a reverter

7  that returns unclaimed fees to the defendant." Allen, 787 F.3d at 1224 (quoting In re Bluetooth,

8  654 F.3d at 947)).  The Ninth Circuit has established 25% of the common fund as the benchmark

9  award for attorney fees.  In re Bluetooth, 654 F.3d at 942.

10        The Settlement Agreement provides that Plaintiff's counsel will file a motion for approval

11 of attorneys' fees and expenses.  (Agreement, p. 6; ECF No. 79, p. 16.)  Plaintiff's counsel intends

12 to seek approximately 22% of the economic value of the Settlement, i.e., $500,000.00.

13 (Declaration of Daniel Feinberg, ¶ 26; ECF No. 79, p. 16.)  The Settlement does not include a

14 clear sailing provision and does not allow for any reversion of the Settlement Amount to

15 Defendants; rather, any unclaimed proceeds shall be distributed to a Court-approved *cy pres*

16 recipient.  (Agreement, pp. 12-13.)

17        Because Plaintiff's counsel will file a motion for attorneys' fees and expenses, the Court

18 need not determine at the preliminary approval stage whether it will approve the requested

19 attorneys' fees.  The Court will determine whether the requested fees are reasonable upon final

20 approval of the Settlement.  At this point, the Court concludes that the attorneys' fee is not so out

21 of proportion with relief that it "calls into question the fairness of the proposed settlement."

22 Pokorny v. Quixtar Inc., No. 07-0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).

23 Thus, for the purposes of preliminary approval, the approximate attorneys' fees do not present a

24 barrier to finding the Settlement Agreement is fair, adequate, and reasonable.

25              d.  Any Agreement Required to be Identified under Rule 23(e)(3)

26        The Court is to consider any agreement required to be identified under Rule 23(e)(3).  Fed.

27 R. Civ. P. 23(e)(2)(C)(iv).  "The parties seeking approval must file a statement identifying any

28 agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  The parties have

1    identified no such agreement exists and the Court is not aware of any such agreement.  See
2    (Agreement, p. 20; ECF No. 79, p. 16.)

3        4.   The Proposal Treats Class Members Equitably Relative to Each Other

4        Lastly, the Court is to consider whether "the proposal treats class members equitably
5    relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  As part of this factor, the Court determines
6    whether the settlement "improperly grant[s] preferential treatment to class representatives or
7    segments of the class." In re Tableware, 484 F. Supp. 2d at 1079.  Service awards, also known
8    as incentive awards, are "fairly typical" in class action cases.  Rodriguez, 563 F.3d at 958-59.
9    They are discretionary in nature and are "intended to compensate class representatives for work
10   done on behalf of the class, to make up for financial or reputational risk undertaken in bringing
11   the action, and, sometimes, to recognize their willingness to act as a private attorney general."
12   Id. at 958-59.

13       "To assess whether an incentive payment is excessive, district courts balance 'the number
14   of named plaintiffs receiving incentive payments, the proportion of the payments relative to the
15   settlement amount, and the size of each payment.'" Monterrubio v. Best Buy Stores, L.P., 291
16   F.R.D. 443, 462 (E.D. Cal. 2013).  "Generally, in the Ninth Circuit, a $5,000 incentive award is
17   presumed reasonable." Lee v. Glob Tel*Link Corp., 2018 WL 4625677, at *12 (C.D. Cal. Sept.
18   24, 2018); see also Harris v. Vector Mktg. Corp., No. C-08-5198 MEC, 2012 WL 381202, at *7
19   (N.D. Cal. Feb. 6, 2012) (collecting cases).

20       Here, the Settlement Agreement provides that Plaintiff's counsel will file a motion to
21   request a service award not to exceed $5,000.00 for the named Plaintiff in recognition of her
22   service to the Class.  (Agreement, p. 7.)  This amount will be paid from the Settlement Fund
23   Account and through cash payment.  (Id. at p. 13.)  Considering the named Plaintiff's
24   engagement over the past two years, the Court concludes that a service award not exceeding
25   $5,000.00 is fair and reasonable.

26   / / /

27   / / /

28   / / /

16

# V.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The motion for preliminary approval of the proposed settlement (ECF No. 79) is GRANTED;

2. A Final Approval Hearing will be held on **January 21, 2026, at 10:00 a.m., in Courtroom 9**, to determine (i) whether the proposed Settlement of this Lawsuit on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Class and should be approved by the Court; (ii) whether a Final Order should be entered; (iii) whether the Parties should be bound by the Releases set forth in Section X of the Settlement Agreement; and (iv) any amount of fees and expenses that should be awarded to Class Counsel and any service award to the Class Representative for her representation of the Class. The Parties shall include the date of the Final Approval Hearing in the Class Notice to be mailed to the Class;

3. The following persons are conditionally certified as Class members solely for the purpose of entering a settlement in this matter:

   All participants and beneficiaries of the Lite Star, Inc. Employee Stock Ownership Plan at any time from its inception until December 31, 2024 (unless they terminated employment without vesting), excluding individual Defendants and their family members or beneficiaries;

   The members of the Settlement Class are the "Class members." As an non-opt class, the proposed Class members shall have no right to exclude themselves from the Settlement Class, the Settlement, or the Final Judgment. If the Court approves the Settlement at the final hearing, each Class member will be bound to the Settlement and the Final Judgment.

4. For settlement purposes only, the Court appoints Plaintiff Linna Chea as Class Representative, and the law firms Feinberg, Jackson, Worthman & Wasow LLP

and Cohen Milstein Sellers & Toll PLLC are appointed as Class Counsel;

5.      The Court approves the form and requirements of the proposed Class Notice.  The notice shall be revised as discussed at the hearing for preliminary approval.  The Court further finds that sending the Class Notice to all Class members by U.S. Mail based on the records of the ESOP, and posting on a website maintained by the Settlement Administrator, is the best notice practicable under the circumstances and is reasonably calculated, under all the circumstances, to apprise potential Class members of the pendency of this Lawsuit, and to apprise Class members of their right to object to the proposed Settlement, Class Counsel's request for attorneys' fees and expenses, Class Representative service awards, and provides adequate notice to Class members of their right to appear at the Final Approval Hearing.  The Court further finds that the Class Notice constitutes valid and sufficient notice to all persons entitled to notice of the proposed Class Action Settlement;

6.      The Court appoints Analytics LLC ("Settlement Administrator") to supervise and dispense the Class Notice as set forth below;

7.      The Court directs that notice will be sent to all members of the proposed Settlement Class as set forth herein:

    a.  within twenty-one (21) days after this Order, the Settlement Administrator shall cause the Class Notice to be disseminated to the Class members by first class U.S. mail, and shall post the Class Notice and the operative Amended Complaint in this Lawsuit, as well as contact information for the Settlement Administrator and Class Counsel, on a website for the Class;

    b.  the Class Notice shall be substantially in the form as submitted to the Court (though the Settlement Administrator shall have discretion to format the Class Notice in a reasonable manner to minimize mailing or administration costs);

    c.  following the issuance of the Class Notice, the Settlement Administrator shall provide Counsel with written confirmation of the mailing; and

d.  the Settlement Administrator shall otherwise carry out its duties as set forth in the Settlement Agreement

8.  Any Class Member may object to the proposed Settlement, or any aspect of it, and may object to attorneys' fees, expenses, and service award, by filing a written objection with the Clerk of Court, Robert E. Coyle U.S. Courthouse, 2500 Tulare Street, Courtroom 9, 6th Floor, Fresno, CA 93721, on or before twenty-one (21) calendar days before the Final Approval Hearing. A copy of the objection must also be mailed to Class Counsel and Defendants' Counsel. To be valid, the objection must set forth, in clear and concise terms: (a) the case name and number (Chea v. Lite Star ESOP Committee, No. 1:23-cv-00647); (b) the name, address, and telephone number of the objector objecting and, if represented by counsel, of his or her counsel; (c) the complete basis for objection; (d) a statement of whether the objector intends to appear and speak at the Final Approval Hearing and the name of the objector's counsel who will appear at the Final Approval Hearing (if any); (e) a statement of whether the objection applies only to the objector, a specific subset of the class, or the entire class, and (f) copies of all supporting documents. Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Settlement Agreement, and to the award of attorneys' fees and expenses to Class Counsel and the payment of a service award to the Class Representative for her representation of the Class, unless otherwise ordered by the Court. Responses to objections shall be filed seven (7) days before the Final Approval Hearing;

9.  Any Class Member may appear, in person or by counsel, at the Final Approval Hearing, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objector files with the Clerk of the Court an objection complying with the requirements of Paragraph 8 of this Order

and that states the objector intends to appear and speak at the Final Approval Hearing.  The objection must include copies of any papers, exhibits, or other evidence that the objector will present to the Court in connection with the Final Approval Hearing.  Any Class Member who does not file an objection stating that the objector intends to appear and speak in accordance with the deadlines set forth herein shall be deemed to have waived his or her right to appear at the Final Approval Hearing;

10.     In the event the Settlement is terminated as set forth in the Settlement Agreement, including if the Court does not grant final approval to the Settlement Agreement or for any reason the Parties fail to obtain a Final Approval Order and Final Judgment as contemplated in the Settlement Agreement, then the following shall apply:

a.  all orders and findings entered in connection with the Settlement Agreement shall become null and void and have no force and effect;

b.  the Lawsuit shall for all purposes revert to its status as of the day immediately before the execution of this Settlement Agreement, and the fact of and terms of the Settlement and any preliminary agreements or term sheets shall not be admissible in any proceeding, and the Parties shall request a scheduling conference with the Court. Nothing herein shall extend any applicable limitations period as to any Party if the Settlement is not approved or is otherwise terminated. In addition, any information or materials provided during the Settlement negotiation shall, absent agreement of the Parties, not be admissible or otherwise used in any proceeding unless and until later obtained during the course of the litigation, as to which the Parties reserve all rights;

c.  the certification of the Settlement Class pursuant to this Order shall be vacated automatically, and the Lawsuit shall proceed as though the Settlement Class had never been certified pursuant to the Settlement Agreement and such findings had never been made; and

d.  all of the Court's prior Orders having nothing whatsoever to do with the Settlement shall, subject to this Order, remain in force and effect, except that the Parties shall submit to the Court, jointly if they reach agreement thereon or separately if no such agreement is reached, a proposed new scheduling and case management order for the remaining discovery and other proceedings in this Lawsuit.

11.  Neither this Order, the fact that a settlement was reached and filed, the Settlement Agreement, nor any related negotiations, statements, or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Defendants.  This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in this Lawsuit. In no event shall this Order, the fact that a settlement was reached, the Settlement Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in this action, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only the Parties in a proceeding to enforce the Settlement Agreement;

12.  The Court reserves the right to continue the date of the Final Approval Hearing without further notice to the Class members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.  The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class;

13.  All proceedings in this Lawsuit are stayed until further Order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Settlement Agreement;

14.  By entering this Order, the Court does not make any determination as to the merits of this case;

15. The Class members and their heirs, executors, administrators, successors and assigns, as well as the Plan, are preliminary barred and enjoined from instituting or prosecuting any of the Released Claims against any of the Released Parties pending final approval of the proposed Settlement;

16. This Court retains jurisdiction over this Lawsuit to consider all further matters arising out of or connected with the Settlement Agreement and the Settlement;

17. The Court orders the following Implementation Schedule for further proceedings:

   a. Plaintiff's motion for attorneys' fees, expenses, and Class Representative service award shall be submitted on or before **December 3, 2025**;

   b. Any oppositions to the motion shall be filed on or before **December 17, 2025**;

   c. Objections to the Settlement from Class members shall be filed on or before **January 5, 2026**;

   d. The deadline for filing the motion for final approval shall be filed on or before **January 9, 2026**; and

e.  Any opposition to the motion for final approval shall be filed on or before **January 16, 2026.**

IT IS SO ORDERED.

Dated:   **October 16, 2025**

STANLEY A. BOONE
United States Magistrate Judge