# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINNA CHEA, | Case No. 1:23-cv-00647-SAB |
| Plaintiff, | ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD |
| v. | |
| LITE STAR ESOP COMMITTEE, et al., | |
| Defendants. | (ECF Nos. 86, 87) |

Currently before the Court is Plaintiff's unopposed motion for final approval of a class action settlement and motion for attorneys' fees, expenses, and class representative service award.[1] (ECF Nos. 86, 87.)  A hearing took place on January 21, 2026.  Attorney Daniel Feinberg appeared on behalf of Plaintiff.  Attorneys Richard Pearl, Mark Nebrig and Chelsea McCarthy appeared on behalf of Defendants.  No other appearances were made on this matter.  Having considered the moving papers, the declarations and exhibits attached thereto, the information presented at the hearing, as well as the Court's file, the Court issues the following order granting Plaintiff's motion for final approval of the class action settlement, and granting Plaintiff's motion for fees, expenses, and service awards.

/ / /

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of a magistrate judge, and this matter has been assigned to the undersigned for all purposes.  (ECF Nos. 76, 77.)

## I.

## BACKGROUND

### A.    Factual and Procedural Background

The operative complaint in this action is the Amended Complaint filed on October 24, 2024. (ECF No. 59.)  Plaintiff's complaint raises seven causes of action: 1) prohibited transaction in violation of ERISA § 406(a), 29 U.S.C. § 1106(a); 2) prohibited transaction in violation of ERISA § 406(b), 29 U.S.C. § 1106(b); 3) breach of fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a)(1); 4) failure to monitor in violation of ERISA  § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B); 5) co-fiduciary liability under ERISA  § 405(a)(1) and (a)(3), 29 U.S.C. § 1105(a)(1) and (a)(3); 6) equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and 7) violation of ERISA § 410 and breach of fiduciary under ERISA § 404(a), 29 U.S.C. §§ 1110 and 1104(a).  (Id.)

Plaintiff was a former employee of B-K Lighting, Inc. ("B-K Lighting") and a participant in the Lite Star Employee Stock Ownership Plan ("ESOP").  (ECF No. 59, ¶ 15.)  ESOP is a type of pension plan designed for employees to invest in the stock of its sponsor, B-K Lighting, pursuant to ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6).  (Id. at ¶ 3.)  Defendants include B-K Lighting (ESOP's Sponsor and Administrator); Lite Star ESOP Committee (ESOP's Administrator and Fiduciary); Estate of Douglas W. Hagen (founder and Vice President of B-K Lighting and fiduciary of ESOP); Kathleen Hagen (Secretary and member of the Board of Directors of B-K Lighting as well as fiduciary of the ESOP); Nathan Sloan (CEO and President of B-K Lighting and member of the Board of Directors as well as fiduciary of ESOP); Prudent Fiduciary Services, LLC (trustee of the ESOP and fiduciary); and Miguel Paredes (President and founder of Prudent Fiduciary Services, LLC and trustee of the ESOP).  (Id. at ¶¶ 16-22.)

On December 31, 2017, Douglas W. Hagen sold 100% of B-K Lighting's stock to the ESOP for $25,270,000.  (Id. at ¶ 18.)  This transaction was partially financed through a loan from Douglas W. Hagen to the ESOP, which B-K Lighting assumed in exchange for a corresponding promissory note.  (Id. at ¶ 38; ECF No. 60, p. 12.)  Plaintiff alleges that this transaction exceeded the fair market value of the company.  (ECF No. 59, ¶¶ 6, 39.)  Plaintiff further alleges that the

ESOP's fiduciaries failed to remedy the alleged fiduciary violations arising from the transaction, resulting in millions of dollars of losses to the ESOP and its participants.  (Id. at ¶¶ 6, 45-49, 54.)

Plaintiff filed this lawsuit on April 23, 2023.  (ECF No. 1.)  Defendants moved to dismiss on July 6, 2023. (ECF Nos. 23-25.)  On January 25, 2024, this Court issued its Findings and Recommendations ("F&R") recommending denial of the motion to dismiss except for one count of the complaint.  (ECF No. 44.)  All Defendants objected the F&R in February 2024.  (ECF Nos. 47-49.)  The assigned District Judge largely adopted the F&R with leave to amend the one count. (ECF No. 56.)  Plaintiff filed the Amended Complaint on October 24, 2024, and Defendants answered in November 2024.  (ECF Nos. 59-62.)  Following the Court's denial of the motions to dismiss, minus the one count, Defendants proposed that the parties engage in mediation.  (ECF No. 79-1, ¶ 11.)   On June 3, 2025, the parties participated in a full day mediation and reached a settlement.  (ECF No. 75.)  The parties thereafter consented to the jurisdiction of a magistrate judge, and this matter was assigned to the undersigned for all further proceedings.

On August 19, 2025, Plaintiff filed a motion for preliminary approval of class action settlement agreement and certification of settlement class.  (ECF No. 79.)  On October 16, 2025, an order issued granting preliminary approval of the class action settlement and setting a final approval hearing.  (ECF No. 84.)

On December 3, 2025, Plaintiff filed a motion for attorneys' fees, expenses, and class representative award.  (ECF No. 86.)  On January 9, 2026, Plaintiff filed the instant motion for final approval of class action settlement.  (ECF No. 87.)  Both motions were unopposed.  The final approval hearing took place on January 21, 2026.  (ECF No. 88.)

**II.**

**LEGAL STANDARD**

The Ninth Circuit has repeatedly affirmed that a strong judicial policy favors settlement of class actions.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015).  Nevertheless, courts have long recognized that the settlement of class actions presents unique due process concerns for the absent class members.  In re Bluetooth Headset Prods. Liab. Litig. ("In re Bluetooth"), 654 F.3d 935, 946 (9th Cir. 2011).  Thus, "the district court has a fiduciary duty to look after the interests of

the absent class members." <u>Allen</u>, 787 F.3d at 1223.

To guard against the potential for abuse, "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." <u>In re Bluetooth</u>, 654 F.3d at 946. Since a settlement agreement negotiated prior to formal class certification creates a greater potential for a breach of the fiduciary duty owed to the class, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." <u>Id</u>.

Review of the proposed settlement of the parties generally proceeds in two phases. <u>True v. American Honda Motor Co.</u>, 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010). At the preliminary approval stage, the court determines whether the proposed agreement is within the range of possible approval and whether or not notice should be sent to class members. <u>Id</u>. at 1063. "[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." <u>In re Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. <u>True</u>, 749 F. Supp. 2d at 1063.

**III.**

**DISCUSSION**

**A.     Final Certification of Class**

To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have been met. <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 542 (9th Cir. 2013). This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule 23." <u>Wright v. Linkus Enters., Inc.</u>, 259 F.R.D. 468,

471 (E.D. Cal. 2009).

The Court previously certified the class for purposes of settlement, finding that the requirements of Federal Rule of Civil Procedure 23(a) and 23(b) were satisfied.  (ECF No. 84.) The Court's present findings regarding the adequacy of the class remain the same as there has been no change in the facts underlying the Court's determination and no objections to the certification of the class have been raised.  See Carlin v. DairyAmerica, Inc., 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (collecting cases for the proposition that a court need not repeat its class certification analysis for final approval if the facts have not changed and no objections were raised). Accordingly, the Court adopts its prior finding and concludes that the settlement class continues to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b).

The following class is therefore certified as set forth in the Settlement Agreement:

> all participants and beneficiaries of the Lite Star, Inc. Employee Stock Ownership Plan at any time from its inception until December 31, 2024 (unless they terminated employment without vesting), excluding individual Defendants and their family members or beneficiaries.

(ECF No. 79, p. 5.)  In addition, Plaintiff Linea Chea is confirmed as Class Representative; law firms Feinberg, Jackson, Worthman & Wasow LLP and Cohen Milstein Sellers & Toll PLLC are confirmed as Class Counsel; and Analytics Consulting LLC is confirmed as Settlement Administrator.

### B.    Final Approval of Class Action Settlement

Class actions require the approval of the court prior to settlement.  Fed. R. Civ. P. 23(e). This requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)-(5).  The Settlement Agreement was previously filed on the court docket.  (See ECF No. 79-4, Ex. A ("Settlement Agreement").)  The Court now considers the adequacy of notice and review of the settlement following the final fairness hearing.

/ / /

1.   Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). A court need not ensure all class members receive actual notice, only that "best practicable notice" is given. Silber v. Mabon, 19 F.3d 1449, 1453-54 (9th Cir. 1994). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard." Churchill Vill., L.L.C. v. GE, 361 F.3d 566, 575 (9th Cir. 2004). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998).

The Court previously reviewed the notice provided in this case at the preliminary approval stage and found it to be satisfactory. (ECF No. 84, p. 17.) Following approval of the notice, Settlement Administrator, Analytics Consulting, LLC ("Analytics"), received a data file from counsel on or about August 12, 2025, which identified 205 participant class members, and after cross-referencing the class data with the United States Postal Service National Change of Address database, Analytics mailed the approved notice to the identified class members on November 6, 2025. (ECF No. 87-4, Declaration of Analytics ("Analytics Decl."), ¶¶ 6-8.) After performing skip tracing on seven undeliverable notices, only one notice was undeliverable. (Id. at ¶¶ 10-11.) The Settlement Administrator also created a website, www.LiteStarESOPsettlement.com, and maintained a toll-free number to provide resources for class members seeking information about the Settlement. (Id. at ¶¶ 12-13). The Settlement Administrator received no objections to the settlement. (Id. at ¶ 15.)

The Court accepts the reports of the settlement administrator and finds adequate notice has been provided, thereby satisfying Federal Rule of Civil Procedure 23(e)(1). Churchill Vill., L.L.C., 361 F.3d at 575.

2.   Final Fairness Determination

As noted above, on January 21, 2026, the Court held a final fairness hearing, at which class counsel and defense counsel appeared by video. The Court now must determine whether the

settlement is fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2).   In making this determination, courts evaluate four factors: "(1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other." Fed. R. Civ. P.23(e)(2).  The Ninth Circuit has also identified eight additional factors the court may consider, many of which overlap substantially with Rule 23(e)'s four factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., L.L.C., 361 F.3d at 575.  These settlement factors are non-exclusive, and each not need be discussed if they are irrelevant to a particular case.  Id. at 576 n.7.

Having already completed a preliminary examination of the agreement, the Court reviews it again, mindful that the law favors the compromise and settlement of class action suits.  See, e.g., In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008).  Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial because he [or she] is exposed to the litigants, and their strategies, positions and proof." Hanlon, 150 F.3d at 1026.

### a. Strength of Plaintiff's Case Balanced Against Risk, Expense, Complexity, and Likely Duration of Further Litigation

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc. ("DIRECTV"), 221 F.R.D. 523, 526 (C.D. Cal. 2004). A court's role is not to reach any ultimate conclusion on the facts or law underlying the merits of the dispute, as the very uncertainty of the outcome and the avoidance of expensive and wasteful litigation is what induces consensual settlements. Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).  Because evidence has not been fully presented, the court cannot reach such a conclusion. In re Wash. Pub. Power Supply Sys. Sec. Litig., 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent

in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." Id.

In the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." In re Syncor ERISA Litig., 516 F.3d at 1101. As a general matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." DIRECTV, 221 F.R.D. at 526. Accordingly, the court compares the uncertainties of prolonged litigation with the immediate benefits that the settlement provides to the settlement class. Id.

Plaintiff explains, and this Court has previously agreed, that ERISA is an "enormously complex" statute, and many ERISA matters involve facts that are "exceedingly complicated." (ECF No. 87, p. 9; ECF No. 79, p. 13); see also Foster v. Adams and Assocs., 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021) (noting that "ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases."). While Plaintiff believes she has a strong case and would ultimately prevail, she recognizes the expense, risk, and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeal. (ECF No. 87, p. 9.) Plaintiff further notes that "[s]everal defense verdicts entered by courts after trial in complex ERISA fiduciary breach actions illustrate the substantial risk of losing at trial . . . [e]ven when plaintiffs successfully prove at trial that defendants breached their fiduciary duties, courts have sometimes concluded that those breaches resulted in no harm or loss to the Plan or the participants." (Id.)

If this action were to proceed to trial, the class would face uncertainty, including the risk of a reduced recovery or no recovery at all. Resolving the action at this time avoids the expense and delay of further litigation and provides substantial benefits to the class without being subjected to the risks inherent of trial. Accordingly, the Court finds that consideration of the strength of Plaintiff's case, as well as the risks, costs, complexity, and likely duration of further litigation, weighs in favor of granting final approval.

///

///

8

### b. *Amount Offered in Settlement*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." In re Margo Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

At preliminary certification, the Court found that the proposed recovery falls within the range of possible approval and, taken as a whole, weighed in favor of finding the agreement fair, reasonable, and adequate. (ECF No. 84, p. 13.) Here, as at preliminary approval, Plaintiff proffers that class counsel estimates the maximum recovery for the class would be approximately $3 million to $5 million. (ECF No. 87, p. 10.) The Settlement Agreement provides $2.25 million of aggregate economic value to the ESOP and its participants. (Id.) This gross settlement amount represents approximately $11,000 in economic benefit to the ESOP per class member prior to deductions for attorneys' fees, costs, and service award. (Id.) Through the settlement, the Class will recover approximately 45% of the estimated maximum damages. (Id.) The Court previously found that this amount fell within the range of approval. Based on the foregoing, and consistent with the reasons stated in the order granting preliminary approval, the Court finds that the settlement amount is fair, reasonable, and adequate. Accordingly, this factor weighs in favor of final approval.

### c. *Extent of Discovery Completed and Stage of Proceedings*

A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." DIRECTTV, 221 F.R.D. at 528. However, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin.

9

Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).  Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case."  Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013).

As detailed in the order granting preliminary approval, the Court is satisfied that the settlement was the result of informed arm's length bargaining.  The parties engaged in a full-day mediation with an experienced mediator and counsel well versed in ERISA class action disputes.  (ECF No. 87, p. 17.)  Before engaging in mediation, Plaintiff's counsel obtained documents related to the ESOP transaction, including the transaction binder, several years of financial statements and ESOP valuations, trustee and board minutes, and other relevant documents, and consulted with an ESOP valuation expert.  (Id.)  Accordingly, the Court concludes that consideration of this factor also weighs in favor of granting final approval.

*d. Experience and Views of Counsel*

The Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation.  DIRECTV, 221 F.R.D. at 528.  Class counsel is comprised of the two law firms representing Plaintiff in this matter.  (ECF No. 84, pp. 17-18.)  Plaintiff proffers class counsel has extensive experience in litigating numerous ERISA and ESOP cases and is well-versed in class action litigation.  (See ECF No. 86, pp. 5-6.)  Class counsel has opined that the Settlement Agreement in this action is fair, reasonable and adequate to the members of the class.  (See ECF No. 87, p. 18.)  This weighs in favor of approving the class action settlement.

*e. Reaction of Class Members to the Proposed Settlement*

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  DIRECTV, 221 F.R.D. at 529.  Here, there are no objections or disputes with the settlement.  (Analytics Decl., ¶ 15.)  No objectors appeared at the final fairness hearing held on January 21, 2026, and class counsel confirmed that no additional objections were received between filing the motion for final approval and the final fairness hearing.  The lack of

objections weighs in favor of final approval of the settlement.

### f.   Independent Fiduciary Report

As required by Section II of the Settlement Agreement, the settlement is contingent upon approval by an Independent Fiduciary.  (See Settlement Agreement § II.4.)  In its report dated January 7, 2026, the Independent Fiduciary approved and authorized the settlement on behalf of the Plan in accordance with the Prohibited Transaction Exemption 2003-39.  (See ECF No. 87-3, Ex. A.)  The Independent Fiduciary's approval therefore weighs in favor of final approval of the settlement.

### g.   Collusion

The Court additionally considers the risk of collusion.  The Ninth Circuit has provided examples of signs that a settlement is the product of collusion between the parties, such as "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  In re Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted).

Here, none of the signs of collusion are present.  The settlement provides $2.25 million of estimated aggregate economic value to the ESOP and its participants prior to deductions while class counsel is seeking $500,000, or 22% of the common fund, in attorneys' fees.  (ECF No. 86.)  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33.3% of the total settlement value, with 25% considered a benchmark percentage.  Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013).  Because the award sought falls within the acceptable range for the Circuit, the settlement agreement does not provide a disproportionate distribution to class counsel.  Additionally, as previously noted, the Settlement Agreement does not include a clear sailing provision, and any remaining residual funds are to be distributed to a *cy pres* recipient approved by the Court.  (ECF No. 79, p. 22; Settlement Agreement § VII.6.)  Finally, the Settlement Agreement was negotiated with the assistance of a mediator who was experienced in

11

ERISA class action disputes. See, e.g., Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 613 (E.D. Cal. 2015) (stating participation in mediation supports determination that settlement process was not collusive).

In light of the foregoing, the Court is satisfied that the more subtle signs of collusion noted in In re Bluetooth are not present here and finds that the settlement is fair, adequate, and reasonable pursuant to Rule 23(e). The Court next determines the appropriate *cy pres* recipient.

## C.   *Cy Pres* Recipient

At the final approval hearing, the Court instructed the parties to file a supplemental brief addressing which *cy pres* recipient should be approved by the Court. Plaintiff proposed the Pension Rights Center ("PRC"), a nonprofit consumer organization dedicated to protecting and promoting the retirement security of workers and retirees. (ECF No. 89.) Defendants objected to Plaintiff's proposed recipient based on a pre-existing relationship with Plaintiff's counsel and instead proposed the Institute for the Study of Employee Ownership and Profit Sharing, Rutgers School of Management and Labor Relations ("Institute"), an academic organization dedicated to research and promotion of employee ownership. (ECF No. 90.) Plaintiff, in turn, objected to Defendants' proposed recipient on the grounds that the Institute's work is largely focused on the East Coast and provides services to employers and plan sponsors.

The Ninth Circuit determined a proposed *cy pres* recipient should be "tethered to the nature of the lawsuit and the interest of the silent class members." Nachsin v. AOL, LLC, 663 F.3d 1034, 1039 (9th Cir. 2011). In other words, there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012). Without such tethering, the distribution of funds "may create the appearance of impropriety" by catering "to the whims and self-interests of the parties, their counsel, or the court." Narchasin, 663 F.3d at 1038. Thus, a *cy pres* award should not benefit a group that is "too remote from the plaintiff class." Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1308 (9th Cir. 1990).

In identifying a *cy pres* recipient, the Ninth Circuit directs courts to consider whether an award to the beneficiary will "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." See

Nachsin, 663 F.3d at 1039-40. Courts must also consider whether the *cy pres* distribution is appropriate given the "size and geographic diversity" of the class members. Id. at 1040-41.

Here, Plaintiff alleges claims under ERISA seeking to protect the retirement accounts of plan participants and beneficiaries. The class members are retirement plan participants who reside in California and neighboring Western states. PRC aligns with these interests. As averred by the Executive Director of PRC, the center's "mission [is] largely co-extensive with that of [ERISA], to protect and promote the retirement security of American workers, retirees, and their families." (ECF No. 89-1, Karen Friedman Declaration, ¶ 2.) Consistent with this mission, PRC operates the National Pension Assistance Resource Center which supports a network of pension counseling projects, including the Western States Pension Assistance Project that serves California and handles approximately 400 cases per year. (Id. at ¶¶ 4-5.)

In contrast, the Institute "serves to study models of employee ownership to broaden financial participation and inclusion in organizations, primarily through employee ownership." (ECF No. 90, p. 5.) The Institute organizes several activities, including hosting workshops and conferences, publishing research briefs, and sponsoring a fellowship program. (Id.) Although the Institute may be a suitable *cy pres* recipient, the Court finds that PRC is squarely aligned with the Ninth Circuit's *cy pres* considerations. Further, while the Institute provides support on a national level, PRC maintains a division specifically serving California and Western states. Because the class members reside on the West Coast, PRC provides a closer nexus to their interests.

Defendants argue that selecting PRC would create an appearance of impropriety. However, the Executive Director of PRC declares that Plaintiff's counsel prepared only two amicus curiae briefs, one in 2016 and one in 2020, on a pro bono basis and has not provided any other services to the center. (Id. at ¶¶ 6-9.) Based on the information presented, the Court finds that this limited, pro bono work neither creates an appearance of impropriety nor undermines PRC's suitability as a *cy pres* recipient.

Accordingly, the Court approves PRC as the *cy pres* recipient.

The Court now turns to consideration of the concurrently filed motion for attorneys' fees, expenses, and service award.

**D.      Motion for Attorneys' Fees, Expenses, and Service Award**

Plaintiff also requests attorneys' fees, litigation expenses, settlement administration expenses, and service award to the Class Representative.

1.      Attorneys' Fees

In a certified class action, reasonable attorney fees and costs may be awarded where they are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Even where the parties have agreed to the award of attorneys' fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable[.]" In re Bluetooth, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." In re Mercury Interactive Corp. Secs. Litig., 618 F.3d 988, 994 (9th Cir. 2010); In re Wash. Pub. Power Supply Sys. Secs. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. In re Mercury, 618 F.3d at 994.

The Ninth Circuit has approved two methods for calculating attorneys' fees in common fund cases: the lodestar method or the percentage-of-recovery method. In re Bluetooth, 654 F.3d at 942. The district court has discretion to choose either method. Id. Under the percentage-of-recovery method, the court may award class counsel a given percentage of the common fund recovered for the class. Fischel v. Equitable Life Assurance Soc'y of the U.S., 307 F.3d 997, 1007 (9th Cir. 2002). In the Ninth Circuit, a 25% award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upward or downward if the record shows "special circumstances justifying a departure." Id. Percentage awards between 20 and 30% have also been found reasonable. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

To assess whether the percentage requested is reasonable, courts may consider a number of factors in assessing whether an award is reasonable, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while

> litigating the case (e.g., cost, duration, foregoing other work), and
> whether the case was handled on a contingency basis.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015).

As set forth in the Settlement Agreement, Plaintiff may apply to the Court for attorneys' fees and expenses, which, if approved, will be paid out of the Settlement Fund. (Settlement Agreement §§ VII. 3, VIII. 1.) Plaintiff is requesting attorneys' fees in the amount of $500,000, representing 22% of the gross settlement amount. (ECF No. 86, p. 9.) The Court finds the requested attorneys' fees reasonable in light of the factors discussed above and the applicable benchmark.

First, class counsel achieved substantial results for the class. The Settlement Agreement provides $2.25 million of estimated aggregate economic value to the ESOP and its participants—approximately 45%-75% of the estimated maximum recovery of $3 to $5 million. (ECF No. 86-1, Daniel Feinberg Declaration ("Feinberg Decl."), ¶ 15.) Specifically, Defendants' insurers will pay $1.5 million into a Qualified Settlement Fund for distribution to class members. (Id.) In addition, the principal amount owed on the loan from Douglas W. Hagen to the ESOP will be reduced by $1 million, with a corresponding reduction in the promissory note. (Id.) This reduction is estimated to increase the value of the B-K Lighting stock held by the ESOP by approximately $750,000. (Id.) Class members who terminated employment and sold their shares during the class period will receive a larger cash payment since they will not benefit from the increase in the ESOP value. (Id.) While the amount of relief will vary based on the number of vested shares allocated to each participant's ESOP account, class members can expect to recover, on average, $11,000 in economic benefit per participant before fees and costs. (Id. at ¶ 21.) Considering both the cash and non-cash benefits to the class as well as the results achieved by class counsel, the Court finds these factors weigh in favor of approving the requested fee award.

The Court also finds that the risks and burdens assumed by class counsel weigh in favor of the requested fee award. As discussed above, and in the order granting preliminary approval, ERISA actions are complex and ESOP cases are often cited as the most complex of ERISA cases. "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case

involving complicated legal issues, is a significant factor in the award of fees." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008). Further, class counsel expended over 1,000 hours prosecuting this case. (Feinberg Decl., ¶ 3; ECF No. 86-2, Michelle C. Yan Declaration ("Yan Decl."), ¶ 14.) Class counsel undertook this case on a contingent basis and has received no compensation to date. (Feinberg Decl., ¶ 8.) In doing so, counsel assumed a substantial risk that their time and expenses would not be recouped. (Id.; Yan Decl., ¶ 16.) Given the complexity of the case and the risk associated with continued litigation, these factors weigh in favor of approving class counsel's requested fee award.

In sum, the Court finds the requested attorneys' fee award of $500,000, representing 22% of the gross settlement amount, to be reasonable.

### 2.    Expenses of Class Counsel

Additionally, class counsel seeks to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee-paying client and should be reasonable and necessary." In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); see also Davis v. Cty. of San Francisco, 976 F.2d 1536, 1556 (9th Cir. 1992) (affirming that attorneys' fee awards can include reimbursement for "out-of-pocket expenses" such as "travel, courier, and copying costs").

Class counsel requests reimbursement in the amount of $44,833.94 for the following charges: filing fees, process server fees, expert fees, electronic legal research costs, postage and courier fees, printing costs, and travel/lodging. (Feinberg Decl., ¶ 7; Yan Decl., ¶ 15.) Upon review of the expenses submitted, the Court finds that the expenses sought were reasonable and necessary to the litigation of this action. The Court shall therefore award costs in the amount of $44,833.94.

### 3.    Class Representative Incentive Award

"Incentive awards are fairly typical in class action cases." Rodriguez v. West Publ'g Corp., 563 F.3d 958. (9th Cir. 2009). "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. at

16

958-59.  Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ."  Radcliffe v. Experian Info. Sols., Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).  In assessing the reasonableness of incentive payments, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions" and "the amount of time and effort the plaintiff expended in pursuing the litigation."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).  In the Ninth Circuit, an incentive award of $5,000 is presumptively reasonable.  See Harris v. Vector Mktg. Corp., 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases).

Here, Plaintiff and Class Representative, Linna Chea, seeks a $5,000 service award for the time and effort expended on this case, as well as the risks assumed in pursuing it.  (ECF No. 86, p. 19.)  Class Representative consulted with class counsel numerous times during this litigation and was readily available by telephone or email.  (Feinberg Decl., ¶ 18.)  Additionally, she provided documents and background information to class counsel and participated in conference calls with class counsel to discuss case strategy and the mediation. (Id. at ¶¶ 17-18.)  Moreover, Plaintiff argues that the incentive award is appropriate based on the potential sigma of having sued her former employer. (ECF No. 86, p. 20.)  Counsel represents that Class Representative "played an integral [part] in fact-gathering for this case by providing key documents and gathering information from other members of the Lite Star ESOP." (Id. at ¶ 17.)

As indicated in the Settlement Agreement, Plaintiff may apply to the Court for a Service Award and if approved, the Service Award will be paid out of the Settlement Fund.  (Settlement Agreement §§ VII.4, VIII.1.)  In its prior order granting preliminary approval of the parties' settlement agreement, the Court found that a $5,000 incentive award was reasonable.  (See ECF No. 84, p. 16.)  The Court now approves the requested award.

4.    Settlement Administration and Independent Fiduciary Costs

Class counsel also seeks reimbursement of the settlement administration expenses and the Independent Fiduciary's expense.  (ECF No. 86, p. 18.)  As indicated in the Settlement Agreement, the Settlement Administrator's and Independent Fiduciary's fees will be paid out of the Settlement

Fund.  (Settlement Agreement §§ V.6, VII.1, XI.7.)

The Court previously approved the appointment of Analytics as the settlement administrator.  Analytics anticipates that the final costs of settlement administration will be $12,500.  (Yaun Decl., ¶ 21.)  Class counsel contends Analytics expenses represent only 0.5% of the common fund, consistent with or lower than the administration expenses approved in comparable ERISA settlements.  (See ECF No. 86, p. 18, citing orders approving administration expenses of 1% and 1.2% if the gross settlement value).

Review of the Settlement was also conducted by an Independent Fiduciary pursuant to Section XI of the Settlement Agreement.  The total cost for the Independent Fiduciary's services is $20,000.  (Id. at ¶ 24.)  Class counsel asserts this is reasonable.  (ECF No. 86, p. 19); see also Nado v. John Muir Health, 2026 WL 82232, at *5 (N.D. Cal. Jan. 12, 2026) (approving $15,000 in independent fiduciary costs in an ERISA class action settlement).

Based on the information presented to the Court, the Court finds these costs reasonable and will direct payment from the settlement fund in the requested amount.

## IV.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for final approval of the class action settlement (ECF No. 87), is GRANTED and the settlement is approved as fair, reasonable, and adequate;

2. The class is certified for purposes of settlement and the class is defined as "All participants and beneficiaries of the Lite Star, Inc. Employee Stock Ownership Plan at any time from its inception until December 31, 2024 (unless they terminated employment without vesting), excluding the individual Defendants and their family members or beneficiaries";

3. The Court confirms the prior appointment of Plaintiff Linna Chea as Class Representative and awards her an incentive payment in the amount of $5,000;

4. The Court confirms the prior appointment of law firms Feinberg, Jackson, Worthman & Wasow LLP and Cohen Milstein Sellers & Toll PLLC as class

counsel and awards reimbursement of $44,833.94 in litigation expenses, settlement administration expenses not to exceed $12,500.00, and independent fiduciary fees in the amount of $20,000.00;

5. Plaintiff's request for attorneys' fees (ECF No. 86) is GRANTED in the amount of $500,000.00;

6. The Court approves Prison Rights Center as the *cy pres* beneficiary of any residual payment;

7. The Court shall retain jurisdiction for **six (6) months** from the date of entry of this order for the purpose of taking actions that may be necessary to administer, implement, or enforce the Settlement, including resolving any disputes over administration of the Settlement;

8. By operation of the entry of this final approval order and pursuant to the settlement, Class Representative and each Class Member on behalf of themselves, the Plan, and each of their beneficiaries, heirs, executors, representatives, and assigns shall be absolutely and unconditionally released and forever discharged Defendants and their related entities from all of the released claims, and barred and enjoined from suing Defendants or their related entities in any action or proceeding alleging any of the released claims, either individually or derivatively on behalf of the Plan, even if any Class Member thereafter discovers facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Lawsuit and the released claims, whether or not Class Members received the Class Notice, whether or not Class Members received a payment in connection with this Settlement Agreement, whether or not Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of attorneys' fees and costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

9. Plaintiff, Defendants, and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions;

10.    Upon the Effective Date of this Order, the Parties, the Class, and the Plan shall be bound by the Settlement Agreement and by this Final Settlement Approval Order; and

11.    This action is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated:    **February 11, 2026**    _____

STANLEY A. BOONE
United States Magistrate Judge

20